Appeal No. 14-1465

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

In re:  JEVIC HOLDING CORP., *et al.,* Debtors

---

OFFICIAL COMMITTEE OF UNSECURED CREDITORS on behalf of the
bankruptcy estates of Jevic Holding Corp., *et al.*

v.

CIT GROUP/BUSINESS CREDIT, INC., in its capacity as Agent; SUN CAPITAL
PARTNERS, INC.; SUN CAPITAL PARTNERS IV, LP; SUN CAPITAL
PARTNERS MANAGEMENT IV, LLC.

CASIMIR CZYZEWSKI; MELVIN L. MYERS; JEFFREY OEHLERS;
ARTHUR E. PERIGARD; and DANIEL C. RICHARDS, on behalf of themselves
and all others similarly situated, Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE, CIV. ACTION NOS. 13-104 and 13-105 (SLR)

---

### JOINT APPENDIX
### VOLUME II of III
### (JA-52 through JA-731)

---

LOIZIDES P.A.
Christopher D. Loizides
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 654-0248

OUTTEN & GOLDEN LLP
Jack A. Raisner
Rene S. Roupinian
3 Park Avenue, 29th Floor
New York, NY  10016
(212) 245-1000

ATTORNEYS FOR CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS,
ARTHUR E. PERIGARD, AND DANIEL C. RICHARDS

# TABLE OF CONTENTS

## JOINT APPENDIX - VOLUME I

| JA # | D.I. | Date | Description |
|---|---|---|---|
| 1-4 | 24[1] | 2/21/2014 | WARN Claimants' Notice of Appeal to the U.S. Court of Appeals for the Third Circuit |
| 5-8 | 1539 (Bankr. Case No. 08-11006) | 12/18/2012 | WARN Claimants' Notice of Appeal to the U.S. District Court, District of Delaware |
| 9-12 | 79 (Bankr. Adv. Proc. No. 08-51903) | 12/18/2012 | WARN Claimants' Notice of Appeal to the U.S. District Court, District of Delaware |
| 13-21 | 22 | 01/24/2014 | District Court Memorandum Opinion Dismissing Appeal/Affirming Bankruptcy Court Order dated 11/28/2012 |
| 22 | 23 | 01/24/2014 | District Court Order Dismissing Appeal/Affirming Bankruptcy Court Order dated 11/28/2012 |
| [Tr. pp. 1-20] 23-44 | 1519 (Bankr. Case No. 08-11006) | 12/04/2012 | Transcript regarding Bankruptcy Court Hearing Held 11/28/12 re: ruling on motion to approve settlement. |
| 45-51 | 1520 (Bankr. Case No. 08-11006) | 12/04/12 | Bankruptcy Court Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |

---

[1] Unless otherwise indicated, all docket index references in Volume I of the Joint Appendix are to the District Court, Case No. 13-104 (SLR).

# JOINT APPENDIX - VOLUME II

## *Docket Entries from District Court Case No. 13-104 (SLR)*

| JA # | D.I. | Date | Description |
|------|------|------|-------------|
| 52-65 | 2 | 01/17/2013 | Appellants' Statement of Issues and Designation of Items of Record on Appeal |
| 66-73 | 3 | 01/17/2013 | Joint Counter-Designation of Items to Be Included in the Record on Appeal by the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors |
| 74-112 | 9 | 03/08/2013 | Excerpts from Appellants' Opening Brief (Statement of Issues and Argument sections) |
| 113-173 | 15 | 11/21/2013 | Appellees' Joint Brief in Support of Motion to Dismiss Appeal of Settlement Order as Equitably Moot (including exhibits) |
| 174-294 | 16 | 11/21/2013 | Appendix A to Appellees' Joint Brief in Support of Motion to Dismiss Appeal of Settlement Order as Equitably Moot |
| 295-318 | 19 | 12/12/2013 | Appellants' Memorandum of Law in Opposition to Appellees' Joint Motion to Dismiss Appeal of Settlement Order as Equitably Moot |

## *Bankruptcy Case No. 08-11006 (BLS) Docket Entries*

| JA # | D.I. | Date | Description |
|------|------|------|-------------|
| 319-360 | 118 | 06/20/2008 | Final Order (I) Authorizing Debtors-In-Possession to Obtain Senior Debtor-In-Possession Financing; (II) Granting Liens, Security Interests and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders |
| 361-513 | 1346 | 06/27/2012 | Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of |

| | | | Settlement; and (III) Granting Related Relief |
|---|---|---|---|
| 514-518 | 1353 | 06/28/2012 | Exhibit(s) E relating to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 519-552 | 1389 | 07/25/2012 | U.S. Trustee's Objection to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 553-584 | 1396 | 07/25/2012 | WARN Claimants' Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 585-598 | 1460 | 10/09/2012 | Debtor-In-Possession Monthly Operating Report for Filing Period August 1, 2012 - August 31, 2012 |
| 599-615 | 1465 | 10/23/2012 | Supplement to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and |

| | | | (III) Granting Related Relief |
|---|---|---|---|
| 616-623 | 1479 | 11/07/2012 | WARN Claimants' Objection In Opposition to the Supplement to (1) Joint Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of Order (A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection |
| 624-649 | 1482 | 11/09/2012 | Reply of Debtors to Objections to the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting related Relief |
| 650-653 | 1483 | 11/09/2012 | Joint Response of the CIT Group/Business Credit, Inc., as Agent, and Sun Capital to Objections to, and Statement in Support of, the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 654-678 | 1484 | 11/09/2012 | Response of the Official Committee of Unsecured Creditors to the Objections to Motion for Approval of Settlement Agreement and Dismissal of the Debtors' Chapter 11 Cases |
| 679-681 | 1506 | 11/19/2012 | WARN Claimants' Letter to Court to clarify position re In re Digital Domain Media. |
| 682-708 | 1545 | 01/02/2013 | WARN Claimants' Motion for Stay Pending Appeal |

| 709-729 | 1552 | 01/10/2013 | Joint Objection of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors to WARN Plaintiffs' Motion for Stay Pending Appeal |
| 730-731 | 1567 | 01/23/2013 | Order Denying Motion of Casimir Czyzewski, Melvin L. Myers, Jeffrey Oehlers, Arthur E. Perigard, and Daniel C. Richards, on behalf of themselves and all others similarly situated, for a Stay Pending Appeal |

# JOINT APPENDIX - VOLUME III

## *CIT Adversary Proceeding Docket Entries* (Adv. Proc. No. 08-51903 (BLS))

| JA # | Adv. D.I. | Date | Description |
|---|---|---|---|
| 732-761 | 40 | 09/15/2011 | Opinion Regarding Motion to Dismiss filed by CIT Group/Business Credit, Inc. |
| 762-763 | 41 | 09/15/2011 | Order Relating to Opinion Regarding Motion to Dismiss filed by CIT Group/Business Credit, Inc. |
| 764-856 | 43 | 10/07/2011 | Second Amended Complaint and Objection to Claims |
| 857-972 | 44 | 11/04/2011 | Answer to Second Amended Complaint filed by Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc. |
| 973-1080 | 45 | 11/04/2011 | Answer to Second Amended Complaint, Counterclaim by The CIT Group/Business Credit, Inc. against the Official Committee of Unsecured Creditors on behalf of the bankruptcy estates of Jevic Holding Corp., *et al.* |
| 1081-1086 | 47 | 11/23/2011 | Answer to Complaint with Counterclaim filed by the Official Committee of Unsecured Creditors on behalf of the bankruptcy estates of Jevic Holding Corp., *et al.* |

## *WARN Adversary Docket Entries* (Adv. Proc. No. 08-50662 (BLS))

| JA # | Adv. D.I. | Date | Description |
|---|---|---|---|
| 1087-1099 | 3 | 05/23/2008 | Amended Class Action Adversary Complaint |
| 1100-1113 | 9 | 07/02/2008 | Answer to Amended Complaint and Affirmative Defenses of Jevic Holding Corp. and Jevic Transportation, Inc. |
| 1114-1136 | 10 | 07/07/2008 | Answer to Amended Complaint and Affirmative Defenses of Sun Capital Partners, Inc. |
| 1137-1138 | 28 | 12/10/2008 | Order Granting Class Certification |

| 1139-1158 | 240 | 05/10/2013 | Opinion Regarding Cross-Motions for Summary Judgment on Claims Arising Under the WARN Act |
| 1159-1176 | 241 | 05/10/2013 | Opinion Regarding Motion for Summary Judgment on Claims Arising Under the WARN Act |
| 1177-1178 | 242 | 05/10/2013 | Order that Class Plaintiffs' Motions for Summary Judgment is Granted in Part and Denied in Part |
| 1179-1180 | 243 | 05/10/2013 | Order Relating to Opinion Regarding Cross-Motions for Summary Judgment on Claims Arising Under the WARN Act |

### *Exhibits Introduced at Trial (Not Otherwise Included Above)*

| JA # | Exhibit # | Date | Description |
|------|-----------|------|-------------|
| 1181-1198 | WARN 1 | 06/22/2012 | Settlement Agreement and Release (executed version) |
| 1199-1203 | US Trustee 1 | 11/30/2009 | Proof of Claim of Melvin L. Myers |
| 1204-1206 | US Trustee 2 | 11/28/2009 | Proof of Claim of Jeffrey L. Oehlers |

### *Transcripts of Court Proceedings*

| JA # | D.I. | Date | Description |
|------|------|------|-------------|
| [Tr. pp. 1-172] 1207-1380 | 1514 (Adv. No. 08-50913, D.I. 75) | 11/27/2012 | Transcript regarding Hearing Held 11/13/2012 re: 9019 Motion/Motion to Dismiss. |
| [Tr. pp. 1-143] 1381-1525 | 1555 (Adv. No. 08-50662, D.I. 236) | 01/16/2013 | Transcript regarding Hearing Held 1/11/2013 re: Oral Argument on Summary Judgment Motions |
| [Tr. pp. 1-34] 1526-1561 | 1599 | 02/28/2013 | Transcript regarding Hearing Held 1/18/2013 re: Motion to Stay Pending Appeal |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | Case No. 08-11006 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 1539** |
| Official Committee of Unsecured Creditors, | ) | |
| on behalf of the bankruptcy estates of | ) | |
| Jevic Holding Corp., *et al.,* | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 08-51903 (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| The CIT Group/Business Credit, Inc., in its | ) | |
| capacity as Agent, and Sun Capital Partners IV, LP, | ) | |
| Sun Capital Partners Management IV, LLC, and | ) | |
| Sun Capital Partners, Inc., | ) | **Re: Adversary Docket No. 79** |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF ISSUES
## AND DESIGNATION OF RECORD ON APPEAL
## OF CASIMIR CZYEWSKI, MELVIN L. MYERS,
## JEFFREY OEHLERS, ARTHUR E. PERIGARD, AND DANIEL C. RICHARDS,
## ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED

Casimir Czyzewski, Melvin L. Myers, Jeffrey Oehlers, Arthur E. Perigard, and Daniel C.

Richards, on behalf of themselves and all others similarly situated (the "WARN Claimants")

submit this statement of issues and designation of record on appeal, pursuant to Fed. R. Bankr. P.

8006 with respect to the Notice of Appeal filed on December 18, 2012 (D.I. 1539; A.D.I. 79) to

the United States District Court.

### STATEMENT OF ISSUES

1.      Did the Bankruptcy Court commit legal error in concluding that a bankruptcy

fiduciary may ever, consistent with its fiduciary, statutory and other duties, release a claim which

is property of the estate where the consideration for such release is not paid to the estate, but to trusts or accounts established solely for the benefit of selected creditors, or to other creditors, entities or persons? (Such transactions referred to herein as an "Earmarking Agreement").

2. Assuming, *arguendo*, that the Bankruptcy Court ruled correctly on issue #1 above, did the Bankruptcy Court commit legal error in applying the general standard for the approval settlements under Fed. R. Bankr. R. 9019 to an Earmarking Agreement?

3. Assuming, *arguendo*, that the Bankruptcy Court ruled correctly on issue #1 above, did the Bankruptcy Court commit legal error in fashioning or applying a "no viable alternative" standard to the approval of an Earmarking Agreement?

4. Did the Bankruptcy Court err in the application of the factors set forth in <u>Myers v. Martin</u>, 91 F.3d 389 (3d. Cir. 1996) when it did not compare the result under the settlement to the result that would have occurred if the Committee has been successful in the prosecution of the action against CIT and Sun?

5. Did the Bankruptcy Court err in making a finding that the WARN Claimants were removed from the settlement because they "chose not to participate" given that the testimonial and documentary evidence did not support such finding, but rather, supported a finding that the WARN Claimants were excluded as a result of the way the proponents structured the settlement, the Committee's pecuniary interests and Sun's litigation and negotiation strategy?

6. Did the Bankruptcy Court err in making a finding that the WARN Claimants "chose not to participate" in the settlement in light of the fact that no other creditors were required to grant Sun or CIT releases of separate claims in exchange for receipt of funds under the settlement?

7.      Did the Bankruptcy Court err in finding that the structure of the settlement was the by-product of truly arm's-length negotiations where the record reflects that Sun and the Committee both shared an interest in assuring no payment was made to the WARN Claimants?

8.      Did the Bankruptcy Court err in concluding that a chapter 7 trustee could not settle the CIT/Sun adversary proceeding in the event of a conversion to chapter 7?

9.      Did the Bankruptcy Court err in concluding that Sun and/or CIT would have a claim-back against the estate under 11 U.S.C. § 502(h) in the event that the committee was successful in its prosecution of the litigation against Sun and CIT?

10.      Did the Bankruptcy Court err in concluding that "structured dismissals" are ever permissible under the Bankruptcy Code?

11.      Did the Bankruptcy Court err in concluding that "structured dismissals" are permissible over the objection of an economically interested party?

12.      Did the Bankruptcy Court err in approving a form of releases that protected the creditor trustee from any liability in the event of a legal challenge to the creditor trust or the payments made thereunder following dismissal of the bankruptcy cases?

13.      Did the Bankruptcy Court's ruling violate the WARN Claimants procedural and substantive due process rights by placing any estate assets outside of their reach through the release and other provisions of the settlement?

14.      Did the Bankruptcy Court err in holding that the settlement did not contradict and was not an effort to circumvent or subvert the priority and distribution structure in the Bankruptcy Code as established by Congress?

15.      Did the Bankruptcy Court err in holding that the settlement was not a *sub rosa, de facto* or disguised plan of reorganization approved outside the requirements of the Bankruptcy Code?

16.     Did the Bankruptcy Court err in concluding that transfers need not be returned under 11 U.S.C. § 349(b)?

17.     Did the Bankruptcy Court err in approving what amounts to a "cafeteria style" plan that is not authorized under the Bankruptcy Code?

18.     Did the Bankruptcy Court err in refusing to convert these cases to cases under chapter 7 where the debtors have admitted that no plan of reorganization is possible?

19.     Did the Bankruptcy Court err in concluding that notice of the settlement was sufficient?


## DESIGNATION OF RECORD

The WARN Claimants designate and ask the Court to take judicial notice of the entire docket in this case, and further designate the following items:

### *Main Case Docket Entries*

| D.I. | Date | Description |
|------|------|-------------|
| 118 (also WARN trial exhibit) | 6/20/2008 | FINAL ORDER (I) AUTHORIZING DEBTORS-IN-POSSESSION TO OBTAIN SENIOR DEBTOR-IN-POSSESSION FINANCING; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL; AND (IV) AFFORDING ADEQUATE PROTECTION TO PREPETITION LENDERS. (related document(s)<u>37</u>, <u>32</u>, <u>11</u> ) Order Signed on 6/20/2008. (Attachments: <u>1</u> Final DIP Order Part 2<u>2</u> Final DIP Order Part 3<u>3</u> Final DIP Order Part 4<u>4</u> Exhibit A) (REB, ) (Entered: 06/20/2008) |
| 1346 | 6/27/2012 | Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief Filed by Jevic Holding Corp.. Hearing scheduled for 8/1/2012 at 09:30 AM at US Bankruptcy Court, 824 Market St., 6th |

| | | Fl., Courtroom #1, Wilmington, Delaware |
|---|---|---|
| 1353 | 6/28/2012 | Exhibit(s) E-Relating to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 1389 | 7/25/2012 | Objection to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief (related document(s)1346) Filed by United States Trustee (Attachments: # 1 Certificate of Service) (Kenney, Mark) (Entered: 07/25/2012) |
| 1390 | 7/25/2012 | Objection of Naysha Berrios, Individually and as Executrix, to Joint Motion of the Debtors et al to Approve Settlement and Dismiss Bankruptcy (related document(s)1346) Filed by Nayasha Berrios (Attachments: # 1 Certificate of Service) (Hughes, Peter) (Entered: 07/25/2012) |
| 1391 | 7/24/2012 | Response to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief Filed by Jevic Holding Corp. (related document(s)1346) Filed by JC Graphic Solutions, LLC (MML) (Entered: 07/25/2012) |
| 1392 | 7/25/2012 | Objection to Joint Motion (related document(s)1346) Filed by New York State Department Of Taxation And Finance (Attachments: # 1 Certificate of Service) (Fivel, Norman) (Entered: 07/25/2012) |
| 1393 | 7/25/2012 | Objection to the Joint Motion of Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors (related document(s)1346, 1389) Filed by Ohio Department of Taxation, Ohio Bureau of Worker's Compensation (Doty, Robert) Modified text on 7/25/2012 (MML). (Entered: 07/25/2012) |
| 1394 | 7/25/2012 | Joinder of Cabarrus County Tax Collector to the Objection of the United States Trustee to the Joint |

| | | |
|---|---|---|
| | | *Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (i) Approving Settlement Agreement and Releasing Claims; (ii) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (iii) Granting Related Relief* (related document(s)1346, 1389) Filed by Cabarrus County Tax Collector. (Attachments: # 1 Certificate of Service) (Gellert, Ronald) (Entered: 07/25/2012) |
| 1396 | 7/25/2012 | Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief (related document(s)1346) Filed by CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS, ARTHUR E. PERIGARD, and DANIEL C. RICHARDS, on behalf of themselves and all others similarly situated (Attachments: # 1 Certificate of Service) (Loizides, Christopher) Modified text on 7/26/2012 (MML). (Entered: 07/25/2012) |
| 1397 | 7/25/2012 | Objection *to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief Filed by Jevic Holding Corp* (related document(s)1346) Filed by UNITED STATES OF AMERICA (Attachments: # 1 Exhibit 101) (Kunofsky, Ari) (Entered: 07/26/2012) |
| 1436 | 9/19/2012 | Affidavit/Declaration of Service (related document(s)1346) Filed by Epiq Bankruptcy Solutions LLC. (Pacitti, Domenic) (Entered: 09/19/2012) |
| 1460 | 10/9/2012 | Debtor-In-Possession Monthly Operating Report for Filing Period August 1, 2012 - August 31, 2012 *{08-11008}* Filed by Jevic Holding Corp.. (Yurkewicz, Michael) (Entered: 10/09/2012) |
| 1465 | 10/23/2012 | Supplement to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an |

| | | Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief (related document(s)1346) Filed by Jevic Holding Corp.. (Pacitti, Domenic) Modified text on 10/24/2012 (MML). (Entered: 10/23/2012) |
|---|---|---|
| 1467 | 10/23/2012 | Notice of Supplement to Joint Motion (related document(s)1465) Filed by Jevic Holding Corp.. Hearing scheduled for 11/13/2012 at 11:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/7/2012. (Pacitti, Domenic) Modified text on 10/24/2012 (MML). (Entered: 10/23/2012) |
| 1479 | 11/7/2012 | Objection In Opposition to the Supplement to (1) Joint Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of Order (A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection (related document(s)1346, 1396, 1465, 1467, 1468) Filed by CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS, ARTHUR E. PERIGARD, and DANIEL C. RICHARDS, on behalf of themselves and all others similarly situated (Attachments: # 1 Certificate of Service) (Loizides, Christopher) Modified text on 11/8/2012 (MML). (Entered: 11/07/2012) |
| 1482 | 11/9/2012 | Reply of Debtors to Objections to the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting related Relief (related document(s)1346, 1389, 1390, 1391, 1392, 1393, 1394, 1396, 1397, 1465, 1479) Filed by Jevic Holding Corp. (Pacitti, Domenic) Modified text on 11/13/2012 (MML). (Entered: 11/09/2012) |
| 1483 | 11/9/2012 | Joint Response *of the CIT Group/Business Credit, Inc., as Agent, and Sun Capital to Objections to, and Statement in Support of, the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a),* |

Statement of Issues and Designation of Record.DOCX      7

| | | *349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (related document(s)1346, 1465, 1482) Filed by Sun Capital Partners, Inc., Sun Capital Partners Management IV, LLC, Sun Capital Partners IV, LP (Miller, Curtis) Modified text on 11/13/2012 (MML). (Entered: 11/09/2012) |
| 1485 | 11/9/2012 | Response *of the Official Committee of Unsecured Creditors to the Objections to Motion for Approval of Settlement Agreement and Dismissal of the Debtors' Chapter 11 Cases* (related document(s)1346, 1396, 1465, 1467, 1479, 1482, 1483) Filed by The Official Committee of Unsecured Creditors (Attachments: # 1 Certificate of Service and Service List) (Makowski, Kathleen) (Entered: 11/09/2012) |
| 1491 | 11/13/2012 | Stipulation with State of New Jersey - Division of Taxation - JTI Claim Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1492 | 11/13/2012 | Stipulation with State of New Jersey - Division of Taxation - Creek Road Claim Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1493 | 11/13/2012 | Stipulation with Cabarrus County Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1494 | 11/13/2012 | Stipulation with Ohio Bureau of Workers Compensation Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1495 | 11/13/2012 | Stipulation with Ohio Department of Taxation Claim 68 Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1496 | 11/13/2012 | Stipulation with Ohio Department of Taxation - Claim 455 Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1497 | 11/13/2012 | Stipulation with MetLife - Claim 1033 Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1497 | 11/13/2012 | Stipulation with MetLife - Claim 1134 Filed by Jevic Holding Corp.. (Yurkewicz, Michael) Modified text on 11/15/2012 (MML). (Entered: 11/13/2012) |
| 1506 | 11/19/2012 | Letter *to Court to clarify position re In re Digital* |

| | | |
|---|---|---|
| | | *Domain Media.* Filed by CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS, ARTHUR E. PERIGARD, and DANIEL C. RICHARDS, on behalf of themselves and all others similarly situated. (Loizides, Christopher) (Entered: 11/19/2012) |
| 1520 | 12/4/2012 | Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief. (Related Doc # 1346, 1465) Order Signed on 12/4/2012. (LCN) (Entered: 12/04/2012) |
| 1539 | 12/18/2012 | Notice of Appeal *of Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief.* Fee Amount $298. (related document(s)1520) Filed by CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS, ARTHUR E. PERIGARD, and DANIEL C. RICHARDS, on behalf of themselves and all others similarly situated. Appellant Designation due by 01/2/2013. (Attachments: # 1 Certificate of Service) (Loizides, Christopher) (BAP-12-68) Modified to add appeal number on 1/2/2013 (MML). (Entered: 12/18/2012) |

**CIT Adversary Proceeding Docket Entries** *(*Adv. Proc. No. 08-51903 (BLS))

| Adv. D.I. | Date | Description |
|---|---|---|
| 40 | 9/15/2011 | Opinion Regarding Motion to Dismiss filed by CIT Group/Business Credit, Inc. |
| 41 | 9/15/2011 | Order Relating to Opinion Regarding Motion to Dismiss filed by CIT Group/Business Credit, Inc. |
| 43 (Also WARN Exhibit 1) | 10/7/2011 | Second Amended Complaint and Objection to Claims |

**WARN Adversary Docket Entries** (Adv. Proc. No. 08-50662 (BLS))

| Adv. D.I. | Date | Description |
|---|---|---|
| 1 | 5/21/2008 | Complaint |
| 28 (also WARN trial exhibit) | 12/10/2008 | Order Granting Class Certification |

**JA-60**

*Exhibits Introduced at Trial (Not Otherwise Included Above)*

| Exhibit No. | Date | Description |
|---|---|---|
| WARN 1 | 6/22/2012 | Settlement Agreement and Release (Executed Version) |
| US Trustee 1 | 11/30/2009 | Proof of Claim of Melvin L. Myers |
| US Trustee 2 | 11/28/ 2009 | Proof of Claim of Jeffrey L. Oehlers |

## Transcripts of Court Proceedings

| D.I. | Date | Description |
|---|---|---|
| 1514 | 11/27/2012 | Transcript regarding Hearing Held 11/13/2012 RE: 9019 Motion/Motion to Dismiss. Remote electronic access to the transcript is restricted until 2/25/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Veritext, Telephone number (888)706-4576.] (RE: related document(s) 1486). Notice of Intent to Request Redaction Deadline Due By 12/4/2012. Redaction Request Due By 12/18/2012. Redacted Transcript Submission Due By 12/28/2012. Transcript access will be restricted through 2/25/2013. (BJM) (Entered: 11/27/2012) |
| 1519 | 12/4/2012 | Transcript regarding Hearing Held 11/28/2012 RE: Ruling on the motion to approve settlement. Remote electronic access to the transcript is restricted until 3/4/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Reliable, Telephone number 302-654-8080.] Notice of Intent to Request Redaction Deadline Due By 12/11/2012. Redaction Request Due By 12/26/2012. Redacted Transcript Submission Due By 1/4/2013. Transcript access will be restricted through 3/4/2013.(DM) (Entered: 12/04/2012) |

DATED: January 2, 2013

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:     loizides@loizides.com

- and -

Statement of Issues and Designation of Record.DOCX          10

Jack A. Raisner (NY No. JR 6171)
René S. Roupinian (NY No. RSR 3884)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone:     (212) 245-1000
Facsimile:     (646) 509-2081

*Counsel for Appellants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | CHAPTER 11 |
|  | ) |  |
| JEVIC HOLDING CORP., *et al.*, | ) | Case No. 08-11006 (BLS) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
| _____ | ) |  |
| Official Committee of Unsecured Creditors, | ) |  |
| on behalf of the bankruptcy estates of | ) |  |
| Jevic Holding Corp., *et al.,* | ) |  |
|  | ) |  |
| Plaintiff, | ) | Adv. Proc. No. 08-51903 (BLS) |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| The CIT Group/Business Credit, Inc., in its | ) |  |
| capacity as Agent, and Sun Capital Partners IV, LP, | ) |  |
| Sun Capital Partners Management IV, LLC, and | ) |  |
| Sun Capital Partners, Inc., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

### CERTIFICATE OF SERVICE

I, Christopher D. Loizides, hereby certify that on January 2, 2013, I did cause to be served true and correct copies of the foregoing **STATEMENT OF ISSUES AND DESIGNATION OF RECORD ON APPEAL OF CASIMIR CZYZEWSKI, MELVIN L. MYERS, JEFFREY OEHLERS, ARTHUR E. PERIGARD, AND DANIEL C. RICHARDS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED** on the parties listed on the attached service list as indicated thereon.

DATED: January 2, 2013

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

Statement of Issues and Designation of Record.DOCX

**JA-63**

**SERVICE LIST**

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Domenic E. Pacitti, Esquire
Michael W. Yurkewicz, Esquire
Margaret M. Manning, Esquire
KLEHR HARRISON HARVEY & BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Fax:    (302) 426-9193
*Counsel for Debtors and Debtors-in-Possession*

Bruce Grohsgal, Esquire
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Fax:    (302) 652-4400
*Counsel for Official Committee of Unsecured Creditors*

Robert Feinstein, Esquire
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue
New York, NY 10017-2024
Fax: (212) 561-7700
*Counsel for Official Committee of Unsecured Creditors*

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Fax:    (302) 658-3989
*Co-counsel for Sun Capital Partners IV LP, Sun Capital Partners Management IV LLC, and Sun Capital Partners, Inc.*

James P. Gillespie, Esquire
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
Fax:    (202) 879-5200
*Co-counsel for Sun Capital Partners IV LP, Sun Capital Partners Management IV LLC, and Sun Capital Partners, Inc.*

James A. Stempel, Esquire
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Fax:    (312) 862-2000
*Co-counsel for Sun Capital Partners IV LP, Sun Capital Partners Management IV LLC,*
*and Sun Capital Partners, Inc.*

Stephen M. Miller, Esquire
Eric J. Monzo, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Fax:    (302) 571-1750
*Co-counsel for The CIT Group/Business Credit, Inc.*

Benjamin C. Ackerly, Esquire
Tara L. Elgie, Esquire
HUNTON & WILLIAMS LLP
951 E. Byrd Street
Richmond, VA 23219
Fax:    (804) 788-8218
*Co-counsel for The CIT Group/Business Credit, Inc.*

Richard P. Norton, Esquire
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, NY 10166
Fax:    (212) 309-1100
*Co-counsel for The CIT Group/Business Credit, Inc.*

Mark S. Kenney, Esquire
OFFICE OF THE U.S. TRUSTEE
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801
Fax:    (302) 573-6497

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*,[1] | ) | Case No. 08-11006 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to D.I. 1539 and 1547** |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, on behalf of the bankruptcy estates of | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | Adv. Pro. No. 08-51903 (BLS) |
| CIT GROUP/BUSINESS CREDIT, INC., | ) | |
| in its capacity as Agent, and SUN CAPITAL | ) | |
| PARTNERS IV, LP, SUN CAPITAL PARTNERS | ) | |
| MANAGEMENT IV, LLC, and SUN CAPITAL | ) | |
| PARTNERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **Related to D.I. 79 and 83** |

## JOINT COUNTER-DESIGNATION OF ITEMS TO BE INCLUDED
## IN THE RECORD ON APPEAL BY THE DEBTORS, CIT, SUN CAPITAL
## AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Jevic Holding Corp. ("<u>JHC</u>"), Jevic Transportation Inc. ("<u>Jevic</u>") and Creek Road

Properties LLC ("<u>Creek Road</u>") (collectively the "<u>Debtors</u>"); the Official Committee of

Unsecured Creditors (the "<u>Committee</u>"); Sun Capital Partners IV, LP, Sun Partners Management

IV, LLC and Sun Capital Partners, Inc. (collectively, "<u>Sun</u>"); and The CIT Group/Business

Credit, Inc. as agent ("<u>CIT</u>") for the lenders (the "<u>Lender Group</u>") under the loan facilities

described in the complaint filed in the above-captioned adversary proceeding (all hereinafter

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Jevic Holding Corp. (8738), Creek Road Properties, LLC (9874), and Jevic Transportation, Inc. (3402).

referred to as a "Party" or collectively, the "Parties"), by and through their respective undersigned counsel, hereby submit this Counter-Designation of Items to be Included in the Record on Appeal of this Court's December 4, 2012 *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [Case Docket No. 1520; Adversary Proceeding Docket No. 78] (the "9019 Order") filed by Casimir Czyzewski, Melvin L. Meyers, Jeffrey Oehlers, Arthur E. Perigard, and Daniel C. Richards, on behalf of themselves and all others similarly situated (the "WARN Plaintiffs").

The Parties hereby designate the following items in the Main Bankruptcy Case; Case No. 08-11006 (BLS):

| Date | Case No. 08-11006 Docket No. | Description |
|------|------------------------------|-------------|
| 08/21/2008 | 217 | Order (1) Authorizing Debtors-in-Possession to Enter Into First Amendment to Debtor-in-Possession Credit, Guaranty, and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders |
| 10/16/2008 | 290 | Order (1) Authorizing Debtors-in-Possession to Enter Into Second Amendment to Debtor-in-Possession Credit, Guaranty and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders |
| 12/19/2008 | 368 | Order (1) Authorizing Debtors-in-Possession to Enter Into Third Amendment to Debtor-in-Possession Credit, |

| | | |
|---|---|---|
| | | Guaranty and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (Ii) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders |
| 04/09/2009 | 477 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 09/17/2009 | 582 | Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection |
| 01/26/2010 | 654 | Order (A) Authorizing The Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 05/07/2010 | 715 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 08/10/2010 | 862 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection) |
| 03/07/2011 | 1017 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 07/25/2011 | 1103 | Order (A)Authorizing the Debtors' Use of Cash Collateral, and (B)Granting Adequate Protection |
| 11/14/2011 | 1166 | Order (A)Authorizing the Debtors' Use of Cash Collateral and (B)Granting Adequate Protection |
| 05/24/2012 | 1312 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 07/30/2012 | 1405 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |
| 11/26/2012 | 1511 | Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection |

3

The Parties hereby designate the following items in Adversary Proceeding No. 08-51903

(BLS):

| Date | Adv. Pro. No. 08-51903 Docket No. | Description |
|------|-----------------------------------|-------------|
| 11/04/2011 | 44 | Answer to Second Amended Complaint Filed by Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, Sun Capital Partners, Inc. |
| 11/04/2011 | 45 | Answer to Second Amended Complaint, Counterclaim by The CIT Group/Business Credit, Inc. against Official Committee of Unsecured Creditors on behalf of the bankruptcy estates of Jevic Holding Corp, et al. |
| 11/23/2011 | 47 | Answer to Complaint with Counterclaim Filed by Official Committee of Unsecured Creditors on behalf of the bankruptcy estates of Jevic Holding Corp, et al. |
| 06/27/2012 | 67 | Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 10/23/2012 | 69 | Supplement to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 10/23/2012 | 70 | Notice of Supplement to Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting |

4

| | | Related Relief |
|---|---|---|
| 11/09/2012 | 71 | Reply of Debtors to Objections to the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting related Relief |
| 11/09/2012 | 72 | Joint Response of the CIT Group/Business Credit, Inc., as Agent, and Sun Capital to Objections to, and Statement in Support of, the Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors Cases Upon Implementation of Settlement; and (III) Granting Related Relief |
| 11/09/2012 | 73 | Response of the Official Committee of Unsecured Creditors to Objections to Motion for Approval of Settlement Agreement and Dismissal of the Debtors' Chapter 11 Cases Filed by Official Committee of Unsecured Creditors on behalf of the Bankruptcy Estates of Jevic Holding Corp, et al. |

Dated: January 16, 2013
Wilmington, Delaware

KLEHR HARRISON HARVEY BRANZBURG LLP

_/s/ Domenic E. Pacitti_
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

_Counsel to the Debtors and Debtors in Possession_

5

Dated:  January 16, 2013          PACHULSKI STANG ZIEHL & JONES LLP
Wilmington, Delaware

       */s/ Kathleen P. Makowski*
Kathleen P. Makowski (DE Bar No. 3648)
Robert J. Feinstein
919 N. Market Street, 17th Floor
P O Box 8705
Wilmington DE 19899-8705 (Courier 19801)
Telephone:  302.652.4100
Facsimile:  302.652.4400
Email:  bgrohsgal@pszjlaw.com
       rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated: January 16, 2013
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Curtis S. Miller*_____
Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
cmiller@mnat.com

-and-

James P. Gillespie, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
Email: james.gillespie@kirkland.com

and

James A. Stempel
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Telephone: (312) 862-2440
Facsimile: (312) 862-2000
Email: jstempel@kirkland.com

*Counsel to Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc.*

7

Dated: January 16, 2013
Wilmington, Delaware

MORRIS JAMES LLP

_____/s/ Stephen M. Miller_____
Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box  2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com
Email: emonzo@morrisjames.com


-and-

Benjamin C. Ackerly, Esq.
Tara L. Elgie, Esq.
HUNTON & WILLIAMS LLP
Riverfront Plaza, Easter Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Email: backerly@hunton.com
Email: telgie@hunton.com

Richard P. Norton, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
Telephone:  (212) 309-1000
Email: rnorton@hunton.com

*Attorneys for The CIT Group/Business Credit, Inc.
as agent for the Lender Group*

PHIL1 2582971v.3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | Bankr. No. 08-11006 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | BAP Appeal Nos. 12-68 and 12-69 |
| | ) | |
| Casimir Czyzewski, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Civil Action Nos. 13-104 SLR and |
| | ) | 13-105 SLR |
| Jevic Holding Corp., *et al.*, | ) | (Consolidated) |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

## APPELLANTS' BRIEF

Christopher D. Loizides (No. 3968)
1225 King Street, Suite 800
Wilmington, DE 19801
Tele: (302) 654-0248
Fax:  (302) 654-0728
E-mail: loizides@loizides.com

Jack A. Raisner (NY No. JR 6171)
René S. Roupinian (NY No. RSR 3884)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY  10016
Telephone:    (212) 245-1000
Facsimile:    (646) 509-2081

*Counsel for Appellants*

Dated: March 8, 2013

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear appeals from all "final judgments, orders, and decrees" of a bankruptcy court, pursuant to 28 U.S.C. § 158(a)(1). "Finality" under section 158(a)(1) is given "a more pragmatic and less technical" meaning than it has under 28 U.S.C. § 1291. *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir.1988). "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes within the larger case.*" *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (quoting *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983) (majority opinion of Breyer, J.)) (emphasis in original). A bankruptcy court's approval of an estate's settlement agreement over the objections of a creditor is a final order under 28 U.S.C. § 158(a)(1). *In re Nutraquest, Inc.*, 434 F.3d 639, 643-44 (3d Cir. 2006).

## STATEMENT OF THE ISSUES PRESENTED
## AND APPLICABLE STANDARD OF APPELLATE REVIEW

I. **ISSUES PRESENTED**

A. *Central Issue Presented: Can a Bankrupt Debtor, as a Fiduciary Subject to the Restrictions of the Bankruptcy Code, Divert the Proceeds of a Settlement of an Estate Cause of Action for the Benefit of a Third Party?*

This is a momentous case involving a trend that threatens to eviscerate the core concepts of the bankruptcy code.

The essential facts of this case are simple and undisputed. A lawsuit was filed on behalf of a bankrupt debtor against two defendants. The parties to the suit entered into a settlement. The settlement grants the defendants a general release on behalf of the debtor. The settlement also requires the defendants to pay money in exchange for the releases. If that's all there were to it, this appeal would not have been brought.

But the settlement goes on to provide that the defendants pay the settlement funds not to debtor, but to a bank account earmarked mostly for the benefit of professionals and a non-debtor trust for other selected creditors. That's the problem. The settlement raises a fundamental issue of bankruptcy law and policy: there is no authority in the bankruptcy code to permit settlement funds to be diverted from the bankruptcy estate to a third party—even where that third party is a trust for the benefit of some creditors. Indeed, such diversion of funds fundamentally violates the core principle of bankruptcy law – that the estate is a fiduciary for the benefit of all of its creditors.

B. *Issue: Does the Fact That the Settlement was Paid by Releasing a Lien on Estate Funds Rather Than With Cash Permit the Diversion of the Settlement Proceeds Away from the Estate?*

It appears that the lynchpin of both the bankruptcy court's decision and the appellees' argument is that part of the settlement is being paid by the defendants, not with new cash, but rather through the release of a defendant's liens on cash in the possession of the debtor. The argument is that the defendant lienholder is free to do what it wants with its cash collateral, including making a gift to third parties. That is erroneous. Once the lien on the cash is released, the cash becomes property of the bankruptcy estate. The defendant then no longer has the right to dictate who that cash goes to. The defendant could have given its collateral to a third party as a gift. But in that case, it cannot not expect to receive a release from the debtor's estate, for which it has paid *nothing*.

C. *Issue: Does the Fact that Beneficiaries of the Trust and Account are Selected Creditors Provide Justification of the Diversion of Funds Away From the Estate?*

Both the bankruptcy court and the appellees appear to believe that the fact that the beneficiaries of the trust and account are certain creditors of the debtor is sufficient justification

for the diversion of the settlement proceeds. However, neither the bankruptcy court nor the appellees have ever articulated a legal basis for making that distinction. To the extent that the appellees rely on Bankruptcy Rule 9019, such reliance has no basis. That rule governs the reasonableness of the amounts of settlement, but cannot authorize the diversion of settlement funds. Indeed, if Rule 9019 permitted such diversions, the priority scheme of the bankruptcy code would be rendered meaningless.

### D. *Issue: Was There a Basis for the Bankruptcy Court to Hold That the Appellants Had "Chosen" Not to Participate in the Settlement and Was any Such "Choice" Relevant to the Issues Before the Court?*

The bankruptcy court held that the appellants had chosen not to participate in the settlement. However, there is insufficient evidence in the record to support that conclusion, which appears to be based mostly on the representations of counsel rather than on the testimony. Also, the conclusion makes no sense—why would any creditor chose not to receive a payment on account of its claim? To the extent that appellees rely on the fact that the appellants would presumably have had to grant the defendants a general release to participate in the settlement, appellants stress that *no other creditor* was required to grant such a general release in connection with the settlement. Indeed, the beneficiaries of the settlement are not required to do *anything*. The only conclusion that can be made is that the appellees chose to exclude the appellants from the settlement, not that the appellants chose not to be included.

Moreover, what occurred during the negotiations is irrelevant to the issues below. The question before the bankruptcy court was whether it was proper for the committee to negotiate a settlement which earmarked settlement proceeds for the benefit of professionals and its own constituency, rather than for the estate. Negotiations among the parties are irrelevant to that issue.

**E.  *Issue: Was the Committee's Loyalty Divided in Negotiating the Settlement?***

The bankruptcy court also gave no consideration to the fact that the committee, the nominal plaintiff in the settled lawsuit, was conflicted. In so far as the committee was attempting to get the highest number possible, the committee was a proper estate representative. But, as to the second part of the deal—*who gets the money*—the committee's interest was contrary to that of the estate and completely in line with that of one of the defendants. It was the committee's interest to divert the settlement funds for the benefit of its own constituency—general unsecured creditors—rather than for the estate in general, and in particular, priority claimants such as appellants. Because one of the defendants is in litigation with the appellants, it was also in the interest of that defendant to divert the settlement funds from the estate. Hence, although the defendants and the committee were appropriately adverse as to the amount of the settlement, they had the *identical* interest as to who would actually get the money—*i.e.* not the estate and the appellants.

**F.  *Issue: Does the Settlement Violate the Priority Scheme of the Bankruptcy
Code?***

If the settlement proceeds were properly given to the debtors' estate, the bankruptcy code sets out precisely how the funds must be distributed. That priority scheme, embodied in 11 U.S.C. § 507, applies in any chapter of the code and may not be circumvented through Rule 9019, which again simply authorizes the court to approve compromises of estate causes of action.

**G.  *Issue: When, if ever, are "Structured Dismissals" Proper?***

The settlement also provides for a so-called 'structured dismissal'. Under the settlement, the chapter 11 bankruptcy cases would be dismissed following implementation of the settlement. No plan would be filed or confirmed. No trustee would be appointed. For the reasons detailed

below, there is, however, no "fourth option" in a chapter 11 case – one can confirm a plan, convert to chapter 7, or dismiss the case without strings attached. Indeed, the procedure appealed from here amounts to a *sub rosa* plan of reorganization forbidden by the bankruptcy code.

## II.  APPLICABLE STANDARD OF APPELLATE REVIEW

This Court has articulated the standard of appellate review from the bankruptcy court as follows:

> In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. . . .With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'". . .. The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a *de novo* basis bankruptcy court opinions.

*In re Catholic Diocese of Wilmington, Inc.*, 484 B.R. 629, 631 (D. Del. 2012) (internal citations omitted).

## STATEMENT OF THE CASE

## I.  NATURE OF CASE, COURSE OF PROCEEDINGS, DISPOSITION BELOW

The appellants are class representatives of about 1,200 former truck drivers and other employees of the debtors who were terminated without 60 days notice as required under the Worker Adjustment and Retraining Notification Act. Appellants appeal from the bankruptcy court's approval of a settlement of an estate cause of action under which the settlement proceeds are diverted for the benefit of a trust and selected creditors—notably excluding appellants whose claims represent the largest group of claims against the debtor both in number and amount.

The debtors filed petitions under chapter 11 of title 11 of the United States Code (the "Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

On December 4, 2012, the Bankruptcy Court entered an order approving the settlement (DI 1520, the "Approval Order"), which granted the Settlement Motion over the objections of the US Trustee and the WARN Claimants.  On December 18, 2012, the WARN Claimants timely filed their notice of appeal (D.I. 1539) of the Approval Order.

## ARGUMENT

## I.    THE SUN FUNDS ARE PROPERTY OF THE ESTATE AND DO NOT REPRESENT A "GIFT"

Before turning to the core issue before this Court—namely, whether an estate fiduciary may negotiate a settlement which diverts the settlement proceeds from the estate--it is important to eliminate two red herrings.  The first is to make clear that the Committee was a fiduciary to all creditors in this case, and hence had a duty not to favor any constituency over any other.  Second, when Sun agreed to release its lien on the Sun Settlement Funds, such funds would of necessity become property of the Debtors' estate just as if Sun had paid cash in exchange for the releases it received.  None of these issues really ought to be controversial.

### A.  In Producing the Settlement, the Committee Was Acting in its Capacity as an Estate Representative

Creditor committees play a unique role in bankruptcy cases.  The Code expressly authorizes the appointment of creditor committees under 11 U.S.C. § 1102.  The duty of the committee is to protect the interests of general unsecured creditors.  *In re Garden Ridge Corp.,* 04-10324 (DDS), 2005 WL 523129 at *2 (Bankr. D. Del., Mar. 2, 2005. ("Specifically, the members of an official committee owe a fiduciary duty to the committee's constituents, *i.e.,* the entire class of general unsecured creditors.").  Perhaps Congress understood that creditors who have statutory priorities—such as former employees with wage claims—do not need their own

representative. Congress has protected those creditors by granting them priority claims under 11 U.S.C. § 507.

There is at least one scenario, however, under which a committee becomes a fiduciary not for its own constituency—*i.e.* unsecured creditors--but for the bankruptcy estate itself. That occurs where the committee is appointed as an estate representative under the Third Circuit's landmark decision in *In re Cybergenics, Official Comm. Of Unsecured Creditors v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ("*Cybergenics*"). Under *Cybergenics*, if a debtor does not pursue an estate cause of action, the committee may, under appropriate circumstances, be granted standing to bring and prosecute such actions on behalf of the estate. *Id.* at 568. In other words, when the committee files an action after being clothed with *Cybergenics* standing, it is as if the debtor itself had filed the action. *Cybergenics* itself is clear that when a committee is granted such standing, it acts as an *estate* fiduciary. *Id.* at 568-69 ("But [section 544] does not foreclose a bankruptcy court's equitable power to substitute itself as gatekeeper when the trustee is delinquent, and to allow a creditors' committee *to pursue an avoidance action for the estate's direct benefit rather than its own.*) (emphasis supplied).

In this case, the Committee was granted *Cybergenics* standing under the Final DIP Order. That is very typical. As a condition of extending financing to a debtor, a lender who has a pre-existing debt owed to it will normally extract an admission by the debtor that the lender's claims and liens are valid. However, to assure that the estate is not deprived of possible causes of action, such orders usually provide for the committee to be appointed as an *estate representative* for the purpose of challenging the liens or claims of the lender or bringing affirmative claims against the lender.

That is precisely what happened here.  Under the Final DIP Order, the Debtors released

CIT and admitted the validity of CIT's claims and liens.   Final DIP Order at ¶39.   The

Committee, however, was granted standing *as an estate representative* to bring any appropriate

claims against CIT, including claims to avoid CIT's liens or claims.  *Id.* During oral argument on

the Settlement Motion, counsel to the Committee acknowledged that the Committee was acting

as an estate representative as to its pursuit of the Fraudulent Conveyance Action:

> It's not a gift. It's an assignment. It's a settlement of litigation and we candidly
> admit, Your Honor, it's a settlement of a litigation against them brought on behalf
> of the estate

Tr., p. 101 ll. 12-15.

It is important to stress not merely that the Committee was an estate representative, but

what that entails.  As an estate representative, the Committee became a *fiduciary* to *all* creditors

of the Debtors' estate.  *In re Turner-Dunn Homes, Inc.,*  4-06-BK-00961-JMM,  2007  WL

3244105 (Bankr. D. Ariz. Nov. 1, 2007)   ("A Trustee is the representative of the estate, 11

U.S.C. § 323, and is charged with a fiduciary duty to act in the best interests of all creditors.").

As with any fiduciary, the Committee had a duty to act for the interest of the estate itself, and not

its usual constituency.   As a fiduciary, it had a duty to treat all parties-in-interest fairly and

equably.  *In re Tubular Technologies, LLC*, 372 B.R. 820, 823 (Bankr. D.S.C. 2007) ("Trustees

appointed under all chapters of the Code, their attorneys and other professionals, among others,

are all fiduciaries to the estate, owing the duty of the utmost good faith and fair dealing to the

estate and its beneficiaries.") (citations omitted); And the Committee was absolutely barred from

taking any action to favor any beneficiary or group of beneficiaries over any other. *In re Taub*,

427 B.R. 208, 230 (Bankr. E.D.N.Y. 2010) *aff'd,* 10 CV 5717 RJD, 2011 WL 1322390

(E.D.N.Y. Mar. 31, 2011) ("A trustee can fulfill the Debtor's fiduciary obligations to the estate

and its creditors without any prospect of favoritism or animus."); *In re Lurie Bros., Inc.,* 267 F.2d 33, 34 (7th Cir. 1959) ("'It is true that the creditors have a right to select a trustee, and it is also true that that trustee, by whomever he may be nominated, must be neutral as between all the parties to a proceeding . . .'") (citations omitted).  None of this ought to be at issue.

**B. Sun's Release of Its Lien Represents the Consideration Sun is Paying for the Release of Estate Claims Under the Settlement: Hence the Settlement Funds are Property of the Estate**

In its Opinion, the Bankruptcy Court held that the Sun Settlement Funds were property of the estate, although subject to a lien challenge. Opinion, p. 11, ll. 7-8.  Appellants are not contesting that factual finding.  But if that factual finding was meant to support the conclusion that the Settlement is appropriate because Sun is free to do what it pleases with its own collateral, the Bankruptcy Court erred.

Preliminarily, despite suggestions that this is a 'gifting' case, it appears that the Committee, at least, does not view it that way.  At oral argument, Committee counsel candidly conceded that from Sun's release of its liens on the Sun Settlement Funds was *not* intended to be a gift, but rather was being made *in exchange* for the release Sun was receiving under the Settlement. Tr. p. 101.  Any other interpretation of the Settlement is not credible.  Sun has no reason to make a gift to unsecured creditors.  Sun was being sued.  Sun is paying the Sun Settlement Funds to receive the release of the claims asserted by the Committee in the LBO Action. Settlement, ¶2(c)(1).

Once the notion of "gifting" is put aside, it is clear that after Sun releases its lien on the Sun Settlement Funds, those funds become property of the Debtors' estate and must be used for the benefit of the estate.  Instead, under the Settlement, the Sun Settlement Funds are diverted

from the Debtors' estate to a trust that by its terms excludes the WARN Claimants from participating.

The result here is no different than if Sun were paying cash. It would not be proper for a debtor to settle a cause of action by permitting the defendant to pay a third party, rather than the estate. But if the "gifting" argument is taken seriously, that is exactly what could happen here. There is no reason why, for example, the trust beneficiary couldn't be Sun's current CEO. It's Sun's money. It can do what it wants with it. But if it Sun's money and it's a third-party gift, Sun can't get a release from the estate. It's that simple.

In other words, while a secured creditor is free to do what it wants with its collateral, an estate representative cannot trade an estate cause of action for a settlement which will not be treated as general property of the estate. The problem flows from the fact that the Committee and Debtors traded an estate cause of action to earmark benefits for professionals and the Committee's constituency, *i.e.* general unsecured creditors.[8]

In the briefing below on the Settlement Motion, Appellees relied on the First Circuit case of *In re SPM Manufacturing Corporation,* 984 F.2d 1305 (lst Cir. 1993). Settlement Motion, p.16. But *SPM* does not support Appellees' position here. In *SPM,* the committee and a secured creditor agreed to cooperate in pursuing mutually beneficial objectives in a chapter 11 case. In consideration for the committee's cooperation, the secured party agreed that it would share with the unsecured creditors' committee's constituency, out of the secured lender's collateral, proceeds realized from the reorganization according to a formula in their agreement. *Id.* at 1308. Significantly, in *SPM,* the committee did not release or relinquish estate causes of action -- a fact which completely distinguishes the *SPM* case from what occurred below. The *SPM* case dealt

---

[8] The fact that the Settlement was later amended, through the Supplement, to include certain priority claimants, but *not* the WARN Claimants does not solve this problem, but adds insult to injury.

with a situation in which a secured creditor exercised its right to pay over to other creditors proceeds from its collateral, *without obtaining a release* from claims held by the estate. *SPM* is not comparable to what happened below, in which the Committee took from the WARN Claimants in order to obtain a benefit for itself.

### C. If the Sun Funds are Not Property of the Estate and Represent a "Gift", Sun is Paying Nothing Under the Settlement

Even if the Appellees were correct that the release of liens on the Sun Funds for the benefit of the Trust is a gift, the Settlement does not withstand scrutiny. If Sun is making a gift to a third party, then Sun is providing *zero* consideration under the Settlement in exchange for the release. Even under Rule 9019, that is manifestly unreasonable. But the overriding point here is that there is no gift. Sun is paying the Sun Settlement Funds in exchange for the release. But under the Settlement, the wrong party is receiving the funds—the estate gives a release, but the Settlement Trust gets the money.

### II. THE DIVERSION OF SETTLEMENT FUNDS FOR THE BENEFIT OF A THIRD PARTY IS WITHOUT STATUTORY SUPPORT AND RUNS AFOUL OF CENTRAL PRINCIPLES OF THE BANKRUPTCY CODE, INCLUDING THE RESPONSIBILITIES OF AN ESTATE FIDUCIARY AND THE PRIORITY OF DISTRIBUTION AMONG CREDITORS

#### A. There Is No Statutory Authority To Permit The Fiduciary of a Bankruptcy Estate To Divert Settlement Funds Away From The Estate: Bankruptcy Rule 9019 Addresses The Amount Of Settlements And Does Not Authorize The Diversion Of Funds.

The Bankruptcy Court itself conceded that there is no express statutory authority for earmarking settlements of the type involved here ("There is no expressed provision in the code for distribution and dismissal contemplated by the settlement motion.", Opinion, p. 9). Against that background, it is important to stress that a bankruptcy filing engenders a "regime change." Outside of bankruptcy, as the old joke goes, a "French" system of law governs: anything is

permitted except that which is prohibited. A company can do what it likes unless there is a law that says it can't. But in bankruptcy, that presumption is revered, and the joke's "German" rule pervades: everything is prohibited except that which is permitted. A bankrupt debtor, seeking to walk away from its debt obligations, is held to a higher standard and is subject to careful oversight by the Bankruptcy Court.

This reversed presumption is evinced, for example, by section 549 of the Code.[9] That section states that *any* post-bankruptcy transfer of funds that is not authorized *either by the bankruptcy code or the court* may be recovered from the transferee. *Id.* Throughout these proceedings, Appellees have acted as if it is the burden on Appellants to show what in the Code *prohibits* earmarking settlements. But the shoe is on the other foot. It is up to the Appellees to point to authority for diverting estate settlement proceeds.

The Bankruptcy Court, at least, was candid about this issue in conceding that there is no express statutory authority for these kinds of settlements. Opinion, p. 9. The Bankruptcy Court also acknowledged that approval of these kinds of settlements should be considered extraordinary. Opinion, p. 9.[10]

The Bankruptcy Court implicitly relied on other cases in which earmarked settlements have been approved. Appellants stress that the case law in this area contains little in the way of reasoned opinions and is generally of relatively recent origin. Cases that have generated written opinions are distinguishable on their facts or provide little in the way of legal analysis.

---

[9] "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –(1) that occurs after the c commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court."

[10] "However, I do observe that while the practice is certainly neither favored nor commonplace the record does reflect that this, sort of, relief has been granted by this and other Court's in appropriate occasions in the past. And I find that the dire circumstances that are present in this case."

The Bankruptcy Court expressly relied on the case of *In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006) ("*World Health*") in reaching its decision. *World Health*, however, is distinguishable on its facts and, in any event, is not binding on this Court. In *World Health*, a DIP financing order was entered, in broad terms similar to the Final DIP Order here, which permitted parties-in-interest to commence actions to avoid the liens of the debtors' secured lenders by a certain deadline. *Id.* at 293. That deadline was extended for the committee, but expired as to all other parties. *Id.* Contemporaneously, an auction was held on a motion to sell substantially all of debtors' assets. *Id.* Before the hearing on the sale motion, the committee conducted extensive negotiations with the debtors and their lenders. Those negotiations lead to a global settlement under which (i) the committee agreed to withdraw its informal objections to the sale motion and to release the lenders from any avoidance claims and (ii) the lenders agreed to a $1.625 million carve-out from their collateral "to be (a) distributed to the holders of allowed general unsecured claims after payment of any unpaid professional fees and expenses of the Committee and/or (b) used to investigate and prosecute estate causes of action against parties other than [lenders]." *World Health* at 294-95. The committee was also given standing to pursue various avoidance actions on behalf of the estate. *Id.* at 295.

The US Trustee filed a lone objection to the settlement. The basis of the objection was that the settlement violated the priority structure of the Code by permitting a distribution to general unsecured creditors ahead of priority claimants. *Id.* However, no creditor holding a priority claim objected to the settlement. The debtors and the committee argued that under the *SPM* case, the lenders were free to give their collateral to the committee. However, the US Trustee emphasized the crucial distinction between *World Health* and *SPM*. In *World Health*, unlike *SPM*, the estate was giving up a cause of action against the lenders in exchange for the

collateral carve-out.  In response to the US Trustee's argument, the Bankruptcy Court went out

of its way to stress that the principal consideration for the release was *not* the surrender of an

inchoate cause of action, but rather, the withdrawal of any objections to the sale of the debtors'

assets for the benefit of the lenders:

> [I]t is important to note that giving up estate causes of action against CapSource is
> not the only consideration that CapSource receives under the Letter Agreement.
> The Committee gave up *its* right [emphasis in original] to pursue its objection to
> the sale motion. This right belonged exclusively to the Committee. . . . With
> respect to the concept of a quick sale, the facts surrounding the marketing effort
> and timing of the sale, the Committee vigorously opposed the Debtors and
> CapSource from the outset of its appointment. The only substantive objections to
> the auction procedures motion and the sale motion were those raised by the
> Committee. The Letter Agreement allowed the sale motion to go forward, and of
> course, the sale closed at the end of April 2006. Obviously, if the Debtors lost the
> sale motion or if there were a serious delay to the approval of that motion, the
> value of CapSource's collateral could have been seriously jeopardized. Thus, the
> $1,625,000 carve out payment is not only in exchange for the release of estate
> causes of action against CapSource, but for the removal of the only serious
> challenge (by the Committee) to the Debtors' and CapSource's joint goal at the
> outset of the case to effect a quick sale that would likely provide little, if any,
> benefit to any party other than CapSource.

<center>* * *</center>

In a footnote . . ., the Committee comments as follows:

> One arrow that the Committee did *not* have in its quiver was a credible
> threat to challenge the validity and perfection of CapSource's liens, since it
> could discern no infirmity in those liens. *See* Tr. at 22:18–20. Thus, as in
> *SPM,* the lender had a first priority secured claim in the proceeds of its
> collateral.

*World Health,* 344 B.R. at 299-300.

The distinctions between this case and *World Health* could not be clearer.  In this case,

the Committee filed a significant lawsuit against CIT and Sun to challenge the LBO.  That suit

sought to unwind a highly questionable set of transactions involving over $100 million.  The

lawsuit was prosecuted for three years.  While it did not move beyond the pleadings phase, the

Committee successfully defeated the defendants' motion to dismiss. While the Committee's witness stressed many of the legal and practical impediments to victory in the LBO Action, he clearly believed that the action was meritorious, even if faced with challenges.[11] Moreover, CIT and Sun are receiving *nothing* under the Settlement other than the release of the LBO Action.[12]

Contrast these facts to *World Health*. There, the committee never even filed a cause of action—much less took it through significant pleading and briefing. The committee even *admitted point blank* that it had not come up with any plausible challenge to the validity of the lenders' liens. By contrast, the committee had vigorously pursued significant and potentially meritorious challenges to the expedited sale process, which existed for the sole benefit of the lenders. As the Bankruptcy Court found, no other party-in-interest had mounted a serious challenge to the sale. It is plain from the Bankruptcy Court's findings in *World Health* that the real consideration for the carve-out was not any credible challenge to the lenders' lien position; rather, it was a serious challenge to the highly expedited and potentially questionable sales process that the debtors and the lenders had put in place. And unlike an estate cause of action, an objection to the sale was made in the committee's own name, and *not* as an estate representative.

While not expressly relied on by the Bankruptcy Court, the case of *In re Kainos Partners Holding Co., LLC*, 09-12292 BLS, 2012 WL 6028927 (D. Del. Nov. 30, 2012) ("*Kainos*") was also mentioned below. In *Kainos*, the Bankruptcy Court approved a global settlement under

---

[11] "Q: Do you believe that is a -- that represents a frivolous complaint?
A: No, not at all.
Q: Okay. And you've been involved in many bankruptcy- related litigations before; is that correct?
A: Yes.
Q: Okay. And -- including against large sophisticated parties, such as Sun and CIT?
A: Yes.
Q: Is it typical in these situations that they roll over or do they usually put up a good fight?
A: I will tell you that it is -- in my experience it would be rare to see a case like this litigated out to conclusion, mostly because of the time and complexity, also because of the extreme lack of certainty as to the outcome . . ." Tr. pp. 87-88.

[12] It is true they are receiving a general release from the estate, as is typical in settlements such as this, but any such causes of action would belong to the estate in any event.

which a $250,000 carve-out from the secured lenders' collateral would be split between the Committee's professionals and general unsecured creditors. *Kainos* at *1. The delivery of that carve-out was conditioned on the closing on the sale of at least one of the debtor's stores *with the support of the committee. Id.* It also appears that the carve-out was granted, in part, in exchange for the release of estate causes of action. *Id.*

First and foremost, the principal holding in *Kainos* was that the appeal was equitably moot and virtually all of the Court's opinion goes to that issue. *Kainos* at *1-*2. It is only in the very last paragraph of the opinion that the Court makes an "alternative" ruling on the merits of the appeal, noting that the distribution to unsecured creditors arose "from a carve-out from the secure creditors' collateral." *Id.* at *4. The Court presents no analysis as to the basis of its conclusion or why it was even relevant to the issue.

In addition, while it appears that the release of causes of action was part of the consideration granted for the carve-out, the section of the asset purchase agreement quoted in the opinion refers to the carve-out being conditioned on the committee's support for a sale transaction. To the extent that the carve-out was based on the committee's support for a sale, *Kainos* is on all fours with *World Health.* However, if *Kainos* means that an estate cause of action may be compromised by earmarking the proceeds of collateral for the benefit of an entity other than the debtor's estate, Appellants respectfully submit that the last paragraph of *Kainos* was not correctly decided.

*World Health* is also consistent with the Bankruptcy Court's decision in *In re TSIC, Inc.*, 393 B.R. 71 (Bankr. D. Del. 2008). There, the Bankruptcy Court upheld a settlement under which $500,000 from the sale of the debtors' assets, that were subject to an unchallenged lien of debtors' secured lender, were earmarked for the benefit of general unsecured creditors, in

exchange for the committee's withdrawal of its objection to the sale. As in *World Health*, and *Kainos*, the committee in *TSIC* was acting for its own constituency in withdrawing the objection, rather than as an estate representative. *In re TSIC, Inc.*, 393 B.R. at 78. *But see In re Distributed Energy Sys. Corp.*, 08-11101KG, 2009 WL 1458175 (Bankr. D. Del. May 18, 2009) (court approves settlement, over the objection of the US Trustee and two other parties, that entailed transfer of collateral proceeds for the sole benefit of general unsecured creditors).[13]

The Appellees, however, believe that Rule 9019 gives the court all the authority it needs to approve the Settlement. It does not. While Rule 9019 provides that the bankruptcy court "may approve a compromise or settlement", any such settlement must be one under which the bankrupt estate is both giving something (like a release) and receiving something (like money). To put it another way, Rule 9019 has as its premise that if an estate representative is releasing an estate cause of action, it is the estate that should benefit from such release.

The limited scope of Rule 9019 was addressed in *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455 (Bankr. E.D. Pa. 1998). There, a group of creditors on the committee filed a motion for the appointment of a chapter 11 trustee based on alleged fraudulent conduct of management. Those creditors entered into a global settlement under which they would withdraw their motion and sell their claims to an insider of the debtor, who then agreed to subordinate those claims for the benefit of other creditors. The bankruptcy court was doubtful that Rule 9019 even applied to these circumstances:

> The standard for the application of Rule 9019(a), just discussed, presupposes the compromise by a bankruptcy fiduciary of claims belonging to or raised against specific individuals or entities. *See, e.g., In re Martin*, 91 F.3d at 391. The dispute which the debtor proposes to settle in this instance does not involve a claim or

---

[13] The Bankruptcy Court in a footnote notes that the secured lenders liens were subject to challenge by the committee, but does not even touch on whether the committee was properly acting for its own constituency or for the benefit of the estate as an estate representative. *In re Distributed Energy Sys. Corp.*, 08-11101 KG, 2009 WL 1458175 at n.6

interest belonging to the seven petitioning creditors. Nor is it clear that the participation of the debtor in the trustee litigation is as a fiduciary on behalf of all creditors and other interested parties in this bankruptcy case. Further, the settlement agreement, as a whole, involves agreements of claims assignment, releases and subordination which extend to issues and parties beyond those involved in the trustee litigation. *See In re Louise's, Inc.,* 211 B.R. 798 (D.Del.1997) (compromise was not approved, pursuant to R. 9019(a), where it encompassed issues unrelated to pending exclusivity motion for which compromise was sought). For these reasons, the provisions of Rule 9019(a) may not be germane.

*Nationwide Sports,* 227 B.R. at 460.

The court in *Nationwide Sports* also emphasized that approval of a settlement depended on benefit to the estate as a representative of creditors, rather than to any particular creditor constituency: "[t]he decision to approve or disapprove a settlement pursuant to Bankr. R. 9019(a) looks only to whether the proposed settlement is in the best interests of the bankruptcy estate." *Nationwide,* 227 B.R. at 461. Despite the fact that all creditors would benefit under the proposed settlement (the petitioning creditors by receiving money from the insider; other creditors by having the claims of the petitioning creditors subordinated to theirs), the court rejected approval of the settlement. Among the court's concerns was that the remaining creditors would receive a significantly lower dividend than the petitioning creditors.

The point here is that Rule 9019 must address settlement of estate causes of action or claims against the estate—it can't apply to any "settlement" in the world. And again, the fundamental problem with the Settlement is not its amount—it's where the money is going—or not going, the Debtors' estate.

### B. The Diversion of Settlement Proceeds From the Estate is Contrary to the Fiduciary Obligations of an Estate Representative and is Contrary to Fundamental Bankruptcy Policy

At oral argument before the Bankruptcy Court, the U.S. Trustee made an analogy between what the Committee had done here and the action of a *guardian at litem* in

compromising a claim belonging to their charges for the benefit not of their charges, but for themselves:

> [I]magine if a guardian ad litem files a lawsuit for damages on behalf of his ward. After the defendant files an answer and threatens to litigate it to death, the guardian ad litem approaches the debtor and says . . . Don't worry about the kid . . . just give me money for myself and I've got to make this lawsuit disappear.

Tr., p. 115, ll. 13-19.

While the Bankruptcy Court did not find this an apt analogy, it is. Rather than compromising an estate cause of action for the benefit of the estate (it's "ward"), the Committee negotiated a settlement under which the entire amount of the settlement was earmarked either for administrative creditors, including the Committee's professionals, or its own constituency, general unsecured creditors. In so doing, the Committee breached its fiduciary duty as an estate representative.

One of the key foundations of the bankruptcy system is that estate representatives—debtors in possession, chapter 11 trustees, chapter 7 trustees and, where appointed by the Court as such, committees of unsecured creditors—have the *same* fiduciary duty to act for the benefit of the estate as a whole and may not favor any particular creditor or constituency. *See Argument, section I.A. supra.* A fiduciary must act with perfect neutrality. A bankruptcy fiduciary, in addition, is bound by its obligations under the Code itself. Among those obligations is the duty to maximize value for the estate.

Take a simple illustration. A chapter 7 trustee is negotiating a claim against a defendant in the face amount of $100,000. The defendant makes two alternative proposals: (1) $50,000, but the funds are earmarked to pay creditors who happen to be business associates of the defendant; or (2) $1,000 with no strings attached. In some sense, the $50,000 sounds like a better offer—more money is better than less money. Defendant's business associates are real

creditors. But under that offer, the only creditors who benefit are those chosen by the defendant. The defendant, having no fiduciary duty to anyone, may make any offer it pleases. But as should be apparent, the trustee is not in a position to accept the $50,000 proposal regardless of its magnitude.

This raises an additional question. Appellants believe that no trustee appointed under title 11 would ever have accepted the Settlement that Appellees are proposing as it is a plain breach of fiduciary duty. But if the law is changed such that earmarked settlements are *acceptable*, when might they be *mandatory*? Under current law, a bankruptcy trustee confronted with the two scenarios above has an easy choice—the $50,000 is off the table. Defendants have no business telling bankruptcy trustees how to discharge their statutory and fiduciary duties. But if the trustee must instead engage in this kind analysis, the trustee might actually be *duty bound* to accept an earmarking settlement. Appellants submit that opening this Pandora's box can only lead to mischief and uncertainty.

There is another more practical reason why such earmarked settlement should never be acceptable—the presumptive key predicate of their approval, that the defendant won't do it any other way, is just too easy to prove. If the defendant *says* it won't pay unless the settlement is earmarked, who is to doubt that? And where the interest of the estate representative and the defendant *coincide*, there is no practical way for a third party to challenge the representative's judgment that the defendant won't settle on any other terms.

The case at bar is illustrative. Sun represented to the Bankruptcy Court that it wouldn't pay one nickel if the WARN Claimants received any part of the settlement.[14]   We can assume

---

[14] "Sun probably does care where the money goes because you can take judicial notice that there's a pending WARN action against Sun by the WARN plaintiffs. And if the money goes to the W ARN plaintiffs, then you're funding somebody who is suing you who otherwise doesn't have funds and is doing it on a contingent fee basis." Tr. pp. 157-58.

Sun took the same position in negotiations. But was this position *unwelcome* by the Committee? If WARN participated in the Settlement according to the statutory priorities set out by Congress, general unsecured creditors would receive *nothing*. Sun's reason for not wanting to pay WARN is tactical/visceral—it doesn't want to fund its enemy. On the other hand, the Committee's interest is excluding WARN is concrete–every dollar that goes to WARN is one less dollar that goes to the Committee's constituency.

The Committee, however, appears to argue that absent the Settlement, there is *no* other alternative because the Committee counsel would not prosecute the action any further. Tr. pp. 104-105.[15] Think about that. Why would Sun or CIT agree to pay one red cent to settle a case where the plaintiff has announced its intention not to prosecute the action? But if the Committee says it, who is to doubt that?

The overriding point here is that holding an estate fiduciary to a strict standard that does not permit that fiduciary to favor one constituency over another will eliminate this type of machination. The Committee would have no choice in the negotiation but to reject any offer that would earmark the settlement funds—just as a chapter 7 trustee would reject any such proposal as contrary to their statutory and fiduciary duty. The Committee must be held to the same standard.

Finally, the Bankruptcy Court's ruling effectively allows collateral holders to use the Code to retaliate against and punish creditors such as their employees who dare to sue them in for corporate misconduct having nothing to do with the bankruptcy itself. Such conduct should be discouraged rather than rewarded.

---

[15] " I mean, this case has run in Chapter 11 through human capital, meaning myself and Mr. Gavin, who have run out over the edge of the cliff for two years incurring fees with no means of payment because we believed in the lawsuit."

C. **The Diversion of Settlement Proceeds for the Benefit of General Unsecured Creditors Violates the Priority System Congress Established in the Bankruptcy Code**[16]

1. **The Comprehensive Priority Scheme Expressly Applies Without Limitation in Chapter 11 and Chapter 7 Cases, and This Court Should Not Imply a More Restrictive Reading.**

"Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990). And the Code sets forth a comprehensive scheme establishing the order in which claims will be paid. *E.g.* 11 U.S.C. §§ 503, 506, 507, 510, 547, 726. Section 506 governs the extent to which a claim is secured. U.S.C. Section 507 specifies ten types of claims that will receive special priority among unsecured claims and the order in which those claims will be paid. Section 503 details the types of expenses that can be paid as administrative expenses. The interlocking provisions that establish the priority scheme are included in chapter 5 of the Code, and that chapter applies to cases under chapters 11 and 7. 11 U.S.C. § 103(a).

The Bankruptcy Court concluded that the Code's priority scheme did not have to be strictly observed because the payment was made in the context of a settlement rather than a plan. But no equitable or legal basis exists for disregarding the Code's priority scheme here simply because the claims were paid outside of a chapter 11 plan.

The Supreme Court has rejected attempts to alter the statutory priorities set forth in the Code based on equitable considerations, finding such actions usurp the legislative function. *See, e.g., United States v. Noland*, 517 U.S. 535 (1996). *Accord Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 796-797 (4th Cir. 1998); *Air Pilots Ass'n v. Shugrue (In re Ionosphere Clubs, Inc.)*, 22 F.3d 403, 408 (2d Cir. 1994). *See also* 4 Alan N. Resnick & Henry J. Sommer,

---

[16] Significant portions of this section of the brief are taken directly from the brief of the US Trustee in the *Kainos* case.

COLLIER ON BANKRUPTCY ¶ 507.02[3] (16th ed. 2010) (court may not substitute its judgment for Congress's by exercising its discretion in a way that impacts the priority in which claims are paid from the estate). Further, Congress plainly knew how to expressly limit the Code's priority scheme to chapter 11 plans. For example, Congress expressly exempted railroad reorganizations from some provisions of chapter 3, 11 U.S.C. §§ 103(a), 1161, but it did not expressly limit application of the priority scheme to chapter 11 plans. Accordingly in the absence of an express limitation, this Court should decline to adopt a restrictive reading of when the priority scheme must be followed.

### 2. Other Circuit Courts Have Rejected Attempts to Circumvent the Statutory Distribution Scheme Through Settlement in Chapter 11.

Other circuit courts have rejected attempts by parties to enter into settlements in chapter 11 that circumvent the statutory priority scheme. The Fifth Circuit reversed the district court's approval of a pre-plan settlement of litigation involving the debtor and a junior unsecured creditor in *In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984). Senior unsecured creditors argued that the settlement could jeopardize their priority position by depleting estate assets. *Id.* at 298. The appellate court held that "a bankruptcy court abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected." *Id.* It rejected out of hand the notion that the Code's comprehensive priority scheme was only implicated in chapter 11 plans, explaining "[a]s soon as a debtor files a petition for relief, fair and equitable settlement of creditors' claims becomes a goal of the proceedings. The goal does not suddenly appear during the process of approving a plan of compromise." *Id.*

Applying similar logic, the Second Circuit vacated a bankruptcy court's approval of a preplan settlement that distributed estate assets directly to the official committee of unsecured creditors instead of distributing them pursuant to the Code's priority rules. *In re Iridium*

*Operating LLC,* 478 F.3d 453 (2nd Cir 2007). The court held that whether a pre-plan settlement complies with the Code's distribution scheme is the most important, and often the dispositive factor in determining whether the settlement is "fair and equitable." *Id.* at 464.

Here the Appellees have attempted to evade the Code's priority scheme by causing general unsecured claims and the claims of professionals to be paid through the Settlement to the exclusion of the WARN Claimants. That attempt, like those rejected by the Second and Fifth Circuits, cannot be sanctioned. Consequently, the provisions of the Settlement directing that the settlement proceeds go to the Administrative Claims Fund and the Settlement Trust should be excised from the Settlement. As argued above, the CIT Settlement Fund and the Sun Settlement Funds belong to the estate because they are proceeds of the LBO Action—which is unquestionably an asset belonging to the *estate* and *not* to the Committee or its constituency.

The proceeds of the Settlement were the consideration for the releases in the Settlement. Tr. p. 101. Hence, those released estate causes of action were also property of the estate. *Bd. of Trustees of Teamsters Local 863 Pension Fund,* 296 F.3d at 169 (*citing United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.9 (1983)). Proceeds from the sale of estate causes of action are likewise property of the estate. 11 U.S.C. § 541(a)(6); see *In re Martin,* 91 F.3d at 394-95 (compromise of estate claim constituted sale of asset).

### 3. Prior Decisions of this Circuit Establish That the Code's Comprehensive Priority Scheme Is Not Limited to Plan Confirmation in Chapter 11.

If the earmarking provisions of the Settlement were included in a chapter 11 plan, there is no question that the Third Circuit would find it violates the Code's priority scheme. *In re Armstrong World Indus., Inc.,* 432 F.3d 507 (3d Cir. 2005). Although the Third Circuit has not

yet addressed the precise issue on appeal, its decisions in *Armstrong* and other cases strongly suggest that the Third Circuit would reach the same result here.

The chapter 11 debtor in *Armstrong* filed a reorganization plan that proposed to distribute warrants to the debtor's equity holders even though all of the unsecured creditors' claims would not be paid in full. *Id.* at 509. The district court refused to confirm the plan because it contemplated the transfer of warrants to a junior class–equity holders–even though more senior classes of unsecured creditors would not be paid in full. *Id.* at 510-11. The Third Circuit affirmed, noting that "[a]llowing this particular type of transfer would encourage parties to impermissibly sidestep the carefully crafted strictures of the Code, and would undermine Congress's intention . . . ." *Id.* at 514. The Circuit Court further rejected the idea that equitable considerations or time constraints could justify a different result. *Id.* at 517. *Accord In re DBSD N. Am.*, 634 F.3d 79 (2d Cir. 2010) (reversing the bankruptcy court's confirmation of a reorganization plan that proposed to give the existing shareholder shares and warrants in the reorganized entity without full payment of the general unsecured creditors claims).

Further, the Third Circuit has addressed the standards for approving chapter 11 settlements and held that settlements in chapter 11, like plans and other aspects of reorganization must be fair and equitable. *In re Nutraquest*, 434 F.3d at 645 (*citing Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Under that standard, the court must consider whether the settlement is fair to all creditors regardless of whether anyone objects. *Id.* at 645. A creditor alleged in *Nutraquest* the settlement could not be approved because it prevented the creditor from asserting claims for contribution against the debtor. In affirming the settlement, the court was careful to explain that the disparate treatment alleged by the complaining creditor was not due to the terms of the settlement. *Id.* at 646.

These cases establish that the Code's comprehensive priority scheme applies throughout a chapter 11 case–not just in the context of a plan. This Court should not deviate from the Code's comprehensive priority scheme. Congress decided the order in which different types of deserving claimants should be paid. And by codifying its policy choices, it ensured that those specific priorities would be applied uniformly in bankruptcy cases, so that individual bankruptcy judges did not have to make such choices.

Moreover, universally following a single, express priority scheme makes chapter 11 easier and more certain. Creditors know in what rank order they will be paid and can more accurately predict the amount, if any, they will be paid. Parties will neither need to litigate cases like this one nor fear that bankruptcy courts will decide payment priorities on an *ad hoc* basis in the context of agreements between other parties.

This problem is especially acute nowadays because deadlines to challenge a pre-petition lenders' lien are boilerplate in DIP financing orders. A priority claimant should not have to think about fighting the committee for the right to bring such actions for fear that the committee will act not for the benefit of the estate but for its own constituency. Indeed, absent forming committees of *priority* creditors, it is difficult to see how individual creditors—such as the truck rivers laid off by Jevic in this case—would have any serious chance of stopping deals under which estate assets are diverted for the benefit of constituencies "at the table." Indeed, as things stand today, priority claimants do not have a "seat at the table" and there is an overwhelming incentive for secured lenders and official committees to negotiate deals that cut-out the much resented middle-man—priority creditors.

### D. The Fact that Certain Creditors are Beneficiaries of the Trust Does not Provide a Basis Upon Which to Approve the Settlement

When the issue of Sun's lien on the Sun Funds and the notion that Rule 9019 alone affords a sufficient basis to approve the Settlement are cast aside as distractions, as they should be, we finally get to the crux of this case – is there some doctrine which authorizes the approval of earmarking settlements in extraordinary cases where there appears to be no other alternative. The Bankruptcy Court, if not the Appellants, appeared to recognize that this was *not* a straightforward or unexceptional issue governed by Rule 9019. Rather, it was the "dire" nature of the circumstances that was critical. Opinion, p. 9.

The Bankruptcy Court plainly put significant weight on the fact that the settlement proceeds would benefit *some* of the creditors in this case (Opinion, p. 10)[17], even if they are not the ones who are supposed to benefit under the Code. The Courts' comments at oral argument are telling: " . .if they're estate claims . . to approve a settlement are you suggesting that I need to find that *every estate claimant. . ., sees a benefit from that*'?." Tr. p .130. Later, the Court states "[a]s a practical matter, isn't this actually a more favorable economic structure than we usually see?" Tr., p. 137. And in the Opinion itself, the Court rules that "[t]he fact that the Committee stands in the shoes of the Debtor here does not give *every creditor here a veto* over the chosen course of action." Opinion, p. (emphasis supplied).

Preliminarily, it must be stressed that the WARN Claimants do not represent a single, difficult creditor. They represent over 1,200 truck drivers who were laid off without any notice, in direct contravention of federal law. The total number of claims in the Jevic bankruptcy, according to the claims register, is 3,972. Hence, the WARN Claimants represent approximately

---

[17] "As previously noted through the settlement there is the prospect of a meaningful distribution to unsecured creditors, and to some but admittedly not all administrative priority creditors. In the absence of this  entitlement there is no realistic prospect for such a distribution."

a quarter of the claims in this case. Moreover, they also represent the single largest creditor constituency. According to the Settlement Motion, non-WARN unsecured claims in this case are approximately $25 million. Settlement Motion, Exhs. C and D. The WARN Claims are asserted for approximately $20 million. Hence, the WARN Claimants also represent almost half of the unsecured claims in this case by dollar amount as well.

But the legal point here is that however many creditors benefitted from the Settlement in this case is irrelevant. For the reasons discussed above, there is no statutory authority for permitting an estate representative to enter into a settlement that diverts the settlement proceeds for the benefit of third parties, even if that third party is a trust for the benefit of selected creditors.

Permitting such settlements under any terms opens a Pandora's box of legal issues. If the identity of the beneficiaries is relevant, how is the Court to determine whether an earmarked settlement is appropriate? Presumably, if only a single creditor received all of the funds, that wouldn't be permissible. Moreover, the WARN Claimants represent the single largest group of claims (approximately 1,200 out of approximately 5,000) and in amount (approximately $20 million out of approximately $25 million). The fact is that no court has articulated a standard under which of such earmarking settlements are judged.

In finding the circumstances of this case appropriately "dire" to approve the earmark, the Bankruptcy Court placed great weight on the fact that all of the estate's assets were subject to the (challenged) liens of CIT and Sun. In contemporary bankruptcy practice, however, that is unfortunately *not* an unusual circumstance. Quite the contrary, cases where the debtor is underwater on a *secured* basis have increasingly become the norm. But where it is clear that a

plan cannot be confirmed, the proper course of action is to convert the case, and not invent a new way out of bankruptcy.

Appellants submit that the formulation of a standard under which earmarked settlements may be approved is both unworkable and contrary to the central policies of the Bankruptcy process. It is difficult to think how any settlement that excludes certain claimants because of the litigation strategy of a defendant in an unrelated action could possibly be fair and equitable. It is also impossible to see how any distribution which excludes some creditors and favors others—in direct contravention of the terms of the Code—could ever be proper. Appellants submit that this Court should simply not go there. There is, again, nothing in the Code that permits earmarking settlements to begin with. The idea that the Court must accept earmarking settlements on some basis as a matter of practical necessity is a solution for a problem that does not exist. This case exemplifies the kind of "necessity" which produces earmarking settlements. The coincidence of Sun's litigation priorities with the Committee's pecuniary interest produced a settlement *engineered* to eliminate any benefit for the truck drivers who lost their jobs.

## III.    THE PROVISION OF THE SETTLEMENT PROVIDING FOR THE DIVERSION OF SETTLEMENT FUNDS FOR THE BENEFIT OF THE TRUST WAS NOT THE PRODUCT OF GOOD FAITH, ARM'S LENGTH NEGOTIATION

As noted above, Rule 9019 simply does not give the bankruptcy court authority to approve a settlement which earmarks proceeds for the benefit of a particular constituency. But even within the confines of that Rule, the Bankruptcy Court gave no weight to the fact that the Committee was indisputably in a conflicted position in its negotiation with Sun.

"Compromises are a 'normal part' of the [bankruptcy] process." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson* ("*TMT Trailer*"), 390 U.S. 414, 424 (1968) (citation omitted). However, like every "important determination" in a bankruptcy

case, compromises are subject to the "informed, independent judgment" of the bankruptcy court," which is charged with determining whether the compromise is "fair and equitable." *Id.* (citations omitted). While settlements are favored, "the unique nature of the bankruptcy process means that judges must *carefully examine* settlements before approving them." *Nutraquest,* 434 F.3d at 644 (citing *TMT Trailer*) (emphasis added).

The Bankruptcy Court did not refer to this duty of careful examination or to *Nutraquest,* but instead described the legal standard governing its review of the settlement as "not a heavy burden." Opinion, p. 8. That such a limited non-rigorous review falls short of the "careful examination" mandated by *Nutraquest* is clear from a deeper reading of that Third Circuit decision. According to *Nutraquest,* the ultimate question that must be answered in the mandated "careful examination" is whether the settlement is "fair and equitable," and that means, primarily, whether the settlement is fair "to other persons, *i.e., **the parties who did not settle.***" *Id.* at 645 (citing *TMT Trailer*). *See also In re Nat'l Org. For Children, Inc.,* 2007 WL 1577753, *6 (Bankr. E.D. Pa. May 31, 2007) (noting that when a bankruptcy court is deciding under *Nutraquest* whether a settlement is "fair and equitable" the proper reference is the interest of the non-settling creditors) (emphasis supplied).

In this case, those "other persons" are the WARN Claimants. Yet the Bankruptcy Court's ruling never considered whether the Settlement was fair and equitable to *them*. Instead, the ruling rested on the supposed absence of resources of the estate to litigate the LBO Action and the fact that some creditors would benefit--the estate professionals and the Committee's constituency.

Not only did the Bankruptcy Court approach the facts here with an articulated bias towards approving the Settlement, it ignored two factors that should have triggered *skepticism* towards the settlement and *heightened* scrutiny, rather than deference:   (1) evidence raising

doubts about the *bona fides* of the negotiation process that produced the Settlement and (2) the opposition of the WARN Claimants. As one Court of Appeals has noted, "[t]he court's scrutiny must be great when the settlement is between insiders and an overwhelming majority of creditors in interest oppose such settlement . . ." *In re Foster Mortgage Corp.*, 68 F.3d 914, 919 (5th Cir. 1995). In *Foster Mortgage,* the settlement being reviewed was between the debtor corporation and its non-debtor parent, and it was actively opposed by creditors holding 95% of the unsecured claims. Those two factors alone made the settlement inherently suspicious and warranted reversal. *Id.* at 918-19 (finding that the failure to make any finding with regard to the "nearly unanimous" opposition of the creditors was "itself an abuse of discretion" and that the relationship between the two settling parties "troubles us as well"). Here, as in *Foster Mortgage,* the Bankruptcy Court made no explicit findings regarding opposition of the single largest group of unsecured creditors—the WARN Claimants. It was also confronted with evidence of collusion between the settling parties as in *Foster Mortgage.*

The Committee here did not discharge its duty to negotiate in good faith and at arm's length. Lest there be any confusion about it, the WARN Claimants do not and have never argued that the *amount* of the Settlement was the by-product of bad faith. The sole issue here is that the Settlement provides that all of its proceeds are directed to the benefit of a select group of creditors. The Committee was clearly conflicted as to *that* issue. The Committee's constituency would receive nothing under any settlement for less than the amount needed to pay the WARN Claimants and other priority claimants in full–a figure probably over $20 million. Hence, it was the paramount interest of the Committee to negotiate a deal under which WARN was excluded, as the WARN Claims represented the largest set of priority claims in the case. Obviously, Sun's interest was the same, if not as stark, because Sun did not want to fund its adversary in the

WARN Action. The fact that the Bankruptcy Court concluded that the Settlement was negotiated at arm's-length is undermined by the common interests of the Committee and Sun to leave WARN out in the cold, and most clearly, by the terms of the Settlement itself, which did just that.

**IV.   THE RECORD DOES NOT SUPPORT THE BANKRUPTCY COURT'S FINDING THAT THE WARN CLAIMANTS CHOSE NOT TO PARTICIPATE IN THE SETTLEMENT, WHICH IS IRRELEVANT IN ANY EVENT**

The Bankruptcy Court concluded, without identifying in the record what exactly supported its conclusion, that the WARN Claimants had "chosen" not to participate in the settlement. Committee counsel certainly represented as much. But the representation of counsel is not evidence upon which the Court may make a factual finding. To support any such finding, the record itself must be examined.

It appears that the basis of the Bankruptcy Court's decision was based on proffered testimony by Mr. Dooley[18] and Mr. Gavin. Tr., p. 68, ll. 11-22. Mr. Gavin later admitted that he was not even part of the discussions that led to the establishment of a separate trust for the Sun Funds. Tr. p. 94. Mr. Gavin was certainly not aware of all of the settlement discussions that occurred. For example, he admitted that even at the settlement meeting that occurred in March, 2012, he had to leave the meeting early. *Id.* at pp. 82-83. As to the specific issue of the WARN Claimants' purported insistence that any settlement had to include a settlement of the WARN Action, Mr. Gavin conceded that "[t]here may have been other discussions that happened that -- that are not consistent with that that I wasn't a party to." *Id.* He further conceded that he was not aware of any direct discussions between the WARN Claimants and Sun. *Id.* at pp. 86-87.

---

[18] ". . . despite numerous efforts by the debtors to include the WARN plaintiffs in this settlement, the debtors were unable to reach a resolution with the WARN Plaintiffs." Tr., p. 31, ll. 18-31.

The record simply does not support the Bankruptcy Court's conclusion that the WARN Claimants somehow chose not to be part of the settlement. At most, the record reflects that there were discussions among the parties that did not lead to a resolution, for whatever reason.

The real point here, however, is that these settlement discussions are simply not germane to any issue before the Court. The notion that the WARN Claimants, as a result of alleged and unproven demands, somehow chose not to be part of the settlement presupposes that the Appellees had the right to divert the estate assets to the Administrative Claims Fund and the Settlement Trust. As creditors of the Debtors estate, the WARN Claimants did not need to do anything to 'participate' in the Settlement other than prove up their claims and stand in line. Creditors are not required to do anything else to receive a distribution. The entire issue is a red herring.

## V.    THE SETTLEMENT COMPRISES A SUB ROSA PLAN OF REORGANIZATION[19]

The Settlement embodies what is commonly referred to as a "structured dismissal." The Settlement provides that following the filing a certification that all of the remaining assets in the estates have been "administered" through payment of administrative claims and payment of the carve-out to the trust, these cases  be dismissed under 11 U.S.C. §§ 105 and 1112(b), with a proviso that all orders entered by the court beforehand remain in full force and effect, notwithstanding 11 U.S.C. § 349. The Sun Settlement Funds would then be distributed  among the Selected Creditors post-dismissal, with no provision for oversight by the Court.

Congress has established three avenues for exit from a chapter 11 case: plan confirmation, conversion and dismissal. Appellees admit that the Debtors cannot propose a confirmable chapter 11 plan. Thus, conversion and dismissal are the only legal routes for the

---

[19] Significant portions of this section of the brief are taken from the US Trustee's opposition to the settlement below.

Debtors to exit these cases. Under section 1112(b)(1), once cause is found this Court "shall" convert these cases to chapter 7 or dismiss them, whichever is in the best interests of creditors and the estates.

Code section 1112(b) contains no options for dismissal "with strings attached"; upon a showing of cause, a case must simply be either converted or dismissed. Congress articulated the statutory effect of conversion in section 348 and of dismissal in section 349. Upon dismissal, unless the Court orders otherwise, estate property revests in the entity in which the property was vested immediately before the commencement of the case. *See* 11 U.S.C. § 349(b)(3). Congress intended the effect of dismissal to be "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." See H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977).

The Settlement would have effects not contemplated by Congress in that it would allow the Debtors' estates to be stripped of all remaining property that might be subject to the WARN Claims, thus depriving such creditors of the state law remedies to which they would otherwise be entitled following dismissal. This would, in effect, grant the Debtors a *de facto* discharge that they cannot receive in a liquidation under either Chapter 7 or Chapter 11.

Nothing in Section 349 provides for the distribution of estate funds after dismissal. Under Section 348 and Fed. R. Bankr. P. 1019(4), however, all assets in the estates would be turned over to the chapter 7 trustee, who would then liquidate and distribute them pursuant to the priority scheme established by Congress.

Furthermore, unlike the trustee under the Trust under the Settlement, a chapter 7 trustee would be subject to a bond conditioned on the faithful performance of his or her official duties. 11 U.S.C. § 322(a). The chapter 7 trustee would have statutory duties including the duties to (i)

account for all estate assets; (ii) object to claims; (iii) make a final report addressing the assets liquidated, claims quantified, and distribution proposed; and (iv) file a final account after making the approved distribution. 11 U.S.C. § 704(a)(2), (5), (9). Further, unlike the trustee of the Trust to be established under the Settlement, a chapter 7 trustee's performance of his or her duties would be subject to the U.S Trustee's supervision, and he or she would be subject to removal upon a showing of cause. See 28 U.S.C. § 586(a)(3), 11 U.S.C. § 324(a).

The proposed structured dismissal would provide for the disbursement of funds that are currently estate assets without affording any of the safeguards established by Congress in chapter 7. In drafting the Code, Congress only provided two avenues for disbursing estate funds to unsecured creditors: pursuant to a confirmed chapter 11 plan under section 1129 or pursuant to a chapter 7 trustee's final report under section 704. Structured dismissals create a third option: a "cafeteria style" dismissal whereby the parties select some parts of the chapter 11 plan process (*e.g.*, compromise of the estates' claims and a liquidating trust for the benefit of general unsecured creditors), even though a chapter 11 plan cannot be confirmed, and then selects some parts of the chapter 7 process (*e.g.*, disbursement of funds to creditors), even though the parties do not seek conversion. The structured dismissal then adds features that are not provided in either chapter 7 or chapter 11, *e.g.*, adjudication of creditor claims by someone other than the Court. This *a la carte* approach to bankruptcy relief violates the comprehensive and coherent chapter 11 and chapter 7 constructs established by Congress, and would, if adopted, establish a troubling precedent whereby parties feel emboldened to pick and choose favored portions of the Code to cobble together new kinds of bankruptcy relief never contemplated by Congress.

Appellees rely on 105(a) and 1112(b) of the Code. As Section 1112(b) mentions only dismissal and not "structured dismissal," and as the add-ons sought purport to rewrite 349 to suit

their desires, it is clear that the Appellees are asking this Court to use Section 105(a) to graft a "structured dismissal" option onto the Code that Congress did not choose to include. Under Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The words "'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000). In the intricately-woven tapestry of the Code, Congress provided for only three ways to exit chapter 11: (i) by confirming a plan of reorganization or liquidation under Section 1129; (ii) by converting to another chapter of the Code under Section 1112(b); and (iii) by dismissing the case under Section 1112(b), without any of the *a la carte* add-ons sought by the trustee.

The structured dismissal is actually a part-confirmation, part-conversion, part-dismissal hybrid that is not contained in the Code enacted by Congress. Section 105(a) cannot be used to create such a statutory "work-around" – because Congress has enacted three specific ways to exit chapter 11, no court can legislate from the bench to create a fourth way. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 286 (3d Cir. 2004) (equitable power afforded by Section 105(a) "cannot trump specific provisions of the Bankruptcy Code," "must be exercised within the parameters of the Code itself," and "is cabined by the Code"); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("the power conferred by § 105(a) is one to implement rather than override"); *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.") (*citing In re Morristown & Erie R.R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989)).

Section 105(a) does not afford bankruptcy courts "a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be." *See U.S. v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992). Thus, equitable principles cannot be used to rewrite Code provisions to allow for "structured dismissal," as "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). If Congress had wanted to provide for "structured dismissal" it would have done so, in its most recent comprehensive overhaul of the Code in 2005, if not before. Creating a new way to exit chapter 11 that was not created by Congress "would go beyond the authority granted in § 105, which allows [bankruptcy] courts to use their equitable powers only as necessary to enforce the provisions of the Code, not to add on to the Code as they see fit." *See In re Fesco Plastics Corp.*, 996 F.2d at 156 (*citing In re Morristown & Erie R.R. Co.*, 885 F.2d at 100). As "section 105 does not 'give the court the power to create substantive rights that would otherwise be unavailable under the Code,'" it cannot be used to create a judge-made "structured dismissal" option. *See U.S. v. Pepperman*, 976 F.2d at 131 (*quoting In re Morristown & Erie R.R. Co.*, 885 F.2d at 100).

Section 105(a) is not "a roving commission to do equity." *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *see also U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994) (Alito, J.) ("bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language"). Appellees essentially ask this Court to make a policy determination about whether it is better to follow the code's chapter 7 option and have a portion of the estates' remaining funds used to pay the administrative expenses for liquidation, or instead to create a new "structured dismissal" option which reduces administrative expenses by

dispensing with the statutory safeguards built into the code. However, "[a]chieving a better policy outcome . . . is a task for Congress, not the courts." *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13-14 (2000).

## CONCLUSION

Appellants request that the order of the Bankruptcy Court be vacated in its entirety. Alternatively, Appellants request that the Settlement be reformed such that the Settlement Proceeds go directly to the Jevic bankruptcy estate rather than to the CIT Settlement Fund and the Sun Settlement Funds.

DATED: March 8, 2013

<div style="margin-left:50%">

_____/s/ Christopher D. Loizides_____
Christopher D. Loizides (No. 3968)
1225 King Street, Suite 800
Wilmington, DE 19801
Tele: (302) 654-0248
Fax: (302) 654-0728
E-mail: loizides@loizides.com

Jack A. Raisner (NY No. JR 6171)
René S. Roupinian (NY No. RSR 3884)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone:    (212) 245-1000
Facsimile:    (646) 509-2081

*Counsel for Appellants*

</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Jevic Holding Corp., *et al.*,<br><br>Debtors.<br>———————————————————— | Chapter 11<br><br>Bankr. No. 08-11006 (BLS)<br>(Jointly Administered)<br><br>BAP Appeal Nos. 12-68 and 12-69 |
| Casimir Czyzewski, *et al.*,<br><br>Appellants,<br><br>v.<br><br>Jevic Holding Corp., *et al.*,<br><br>Appellees. | Adv. Pro. No. 08-51903 (BLS)<br><br><br><br>Civil Action Nos. 13-104 (SLR) and<br>13-105 (SLR)<br>(Consolidated) |

## JOINT BRIEF IN SUPPORT OF JOINT MOTION OF THE DEBTORS, CIT, SUN CAPITAL, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISMISS APPEAL OF SETTLEMENT ORDER AS EQUITABLY MOOT

Dated: November 21, 2013

Robert J. Feinstein
Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email: bgrohsgal@pszjlaw.com
            rfeinstein@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

Domenic E. Pacitti (DE Bar No. 3989)
Linda Richenderfer (DE Bar No. 4138)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193
Email: dpacitti@klehr.com
            lrichenderfer@klehr.com

*Counsel to the Debtors*

6814127

Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone:     (302) 658-9200
Facsimile:     (302) 658-3989
Email: rdehney@mnat.com
        cmiller@mnat.com

-and-

James A. Stempel
James P. Gillespie, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone:     (312) 862-2440
Facsimile:     (312) 862-2000
Email: jstempel@kirkland.com
        james.gillespie@kirkland.com

*Counsel To Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, And Sun Capital Partners, Inc.*

Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:     (302) 888-6800
Facsimile:     (302) 571-1750
Email: smiller@morrisjames.com
        emonzo@morrisjames.com

-and-

Benjamin C. Ackerly
Richard P. Norton
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:     (804) 788-8200
Facsimile:     (804) 788-8218
Email: backerly@hunton.com
        rnorton@hunton.com

*Counsel To The CIT Group/Business Credit, Inc., As Agent For The Lender Group*

6814127

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.  NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II.  SUMMARY OF ARGUMENT ......................................................................... 3

III.  FACTUAL BACKGROUND ............................................................................. 5

  A.  The Commencement of the Chapter 11 Cases ......................................... 5

  B.  The Settlement Agreement and the Bankruptcy Court's Approval After an
      Evidentiary Hearing and Careful Consideration ...................................... 5

  C.  The Settlement Parties Have Expended Cash Collateral and the CIT
      Settlement Payment in Implementing the Settlement .............................. 8

IV.  ARGUMENTS AND AUTHORITIES ............................................................. 9

  A.  The Court Should Dismiss the Appeal Because the Settlement Agreement
      Has Been Fully Consummated ................................................................ 10

  B.  The Court Should Dismiss the Appeal Because the WARN Plaintiffs
      Failed to Obtain a Stay or Even Seek One from This Court .................. 12

  C.  The Court Should Dismiss the Appeal Because Vacating the Settlement
      Order Would Materially Prejudice the Rights of Numerous Parties Not
      Before the Court ..................................................................................... 14

  D.  The Court Should Dismiss the Appeal Because the Relief Requested by
      the WARN Plaintiffs Would Destroy the Settlement ............................ 15

  E.  The Court Should Dismiss the Appeal Because Dismissal Is in the Public
      Interest .................................................................................................... 17

V.  REQUEST FOR COURT TO TAKE JUDICIAL NOTICE OF DOCKETS,
    FILED PLEADINGS AND UNCONTESTED FACTS ................................ 18

VI.  CONCLUSION AND REQUESTED RELIEF .............................................. 19

EXHIBIT A - Affidavit of Daniel F. Dooley in Support of the Joint Motion of the
    Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors to
    Dismiss Appeal of Settlement Order as Equitably Moot ................................. A-1

EXHIBIT B - Affidavit of Edward T. Gavin in Support of the Joint Motion of the
    Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors to
    Dismiss Appeal of Settlement Order as Equitably Moot ................................. B-1

6814127

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

CASES

*Ad Hoc Committee of Class 7 Creditors v. Northwestern Corp., et al. (In re Northwestern Corp.)*, No. 03-12872, 2009 WL 2399120 (D. Del. Aug. 4, 2009) ..................................4, 14

*Allstate Ins. Co. v. Hughes*,
174 B.R. 884 (S.D.N.Y. 1994).................................................................................13

*Cadle Company II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*,
No. CV-06-1935 (SJF), 2008 WL 199457 (E.D.N.Y. Jan. 17, 2008) .................................4, 13

*CFI Class Action Claimants v. Singley (In re SCH Corp.)*,
No. CV-12-1577-SLR, 2013 WL 3380440 (D. Del. Jul. 8, 2013) ......................................4, 15

*Deangelis v. Official Committee of Unsecured Creditors (In re Kainos Partners Holding Co., LLC)*, No. 09-12292, 2012 WL 6028927 (D. Del. Nov. 30, 2012)..............1, 4, 13, 14, 17

*First Union Real Estate Equity & Mort. Inv. v. Club Assocs. (In re Club Assocs.)*,
956 F.2d 1065 (11th Cir. 1992) .............................................................................3

*Grand Union Co. v. Saul, Ewing, Remick & Saul (In re Grand Union)*,
200 B.R. 101 (D. Del. 1996)................................................................................13

*In re Chateaugay Corp.*,
988 F.2d 322 (2d Cir. 1993)............................................................................3, 10

*In re Continental Airlines*,
91 F.3d 553 (3d Cir. 1996) (en banc)......................................................4, 10, 12, 16, 17

*In re Global Vision Products, Inc.*,
2009 WL 2170253 (S.D.N.Y. 2009)........................................................................17

*In re Manges*,
29 F.3d 1034 (5th Cir. 1994) .......................................................................3, 11, 12

*In re Specialty Equip. Cos.*,
3 F.3d 1043 (7th Cir. 1993) ..................................................................................3

*In re Voip, Inc.*,
461 B.R. 899 (S.D. Fla. Oct. 31, 2011)......................................................................4

*Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*,
374 B.R. 516 (S.D.N.Y. 2007)........................................................................4, 15, 16

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.,*
258 F.3d 180 (3d Cir. 2001)................................................................4, 10, 13, 14, 16

*Rochman v. Ne. Util. Serv. Group (In re Public Serv. Co. of N.H.)*
963 F.2d 469 (1st Cir. 1992)........................................................................................3

*Samson Energy Resources Co., et al. v. SemCrude, L.P., et al. (In re SemCrude, L.P., et al.)*, 728 F.3d 314 (3d Cir. Aug. 27, 2013) (Ambro, J.)......................................4, 14, 15, 16, 18

**STATUTES**

11 U.S.C. § 105.............................................................................................................6

11 U.S.C. § 1101(2)......................................................................................................11

11 U.S.C. § 1127(b)......................................................................................................11

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9019.................................................................................................6

Jevic Holding Corp., Jevic Transportation, Inc. and Creek Road Properties, LLC (collectively the "Debtors"); Sun Capital Partners IV, LP, Sun Partners Management IV, LLC and Sun Capital Partners, Inc. (collectively, "Sun");  The CIT Group/Business Credit, Inc., as agent ("CIT") for the lenders (the "Lender Group"); and the Official Committee of Unsecured Creditors of Jevic Holding Corp. *et al.* (the "Committee") (collectively referred to herein as the "Appellees"), by and through their respective undersigned counsel, hereby file this brief in support of their motion to dismiss (the "Motion") the appeal by certain former employees of the Debtors (the "Appellants" or the "WARN Plaintiffs") of the Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order; (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief (the "Settlement Order") entered on December 4, 2012, by the United States Bankruptcy Court for the District of Delaware (the Honorable Brendan L. Shannon presiding) (the "Bankruptcy Court").  (D.I. 1520).[1]  The Appellees respectfully request that the appeal be dismissed in its entirety with prejudice because it is equitably moot and respectfully represent as follows:

## I.      NATURE AND STAGE OF PROCEEDINGS

This appeal arises out of the Bankruptcy Court's approval of a settlement agreement (the "Settlement Agreement") entered into by the Debtors, the Committee, the Lender Group, CIT, and Sun resolving an adversary proceeding (the "Adversary Proceeding") brought by the Committee against CIT and Sun, the Debtors' senior and junior secured lenders respectively.

---

[1]      References to the Record will be as follows:  Filings made in the Chapter 11 Bankruptcy Case 08-11006 will be referred to as "D.I. __" and filings made in this Court will be referred to as "Dist. Ct. D.I. __".  For the convenience of the Court, Appellees have included in the Appendix accompanying this Brief a list of the Bankruptcy and District Court Docket Items cited herein.

6814127

On June 27, 2012, the Appellees filed their joint motion requesting that the Bankruptcy Court issue an order approving the Settlement Agreement and the dismissal of the chapter 11 cases upon implementation of the settlement (the "Joint Motion"). (D.I. 1346). The WARN Plaintiffs and the United States Trustee objected to the Joint Motion (as did certain taxing authorities whose objections were subsequently withdrawn after the Settlement Agreement was modified to provide distributions to them). The matter was briefed, and a full-day evidentiary hearing was conducted by the Bankruptcy Court on November 13, 2012. (D.I. 1514). On November 28, 2012, the Bankruptcy Court delivered an oral ruling approving the Settlement Agreement (D.I. 1519, p. 4, lines 18-20). Subsequently, on December 4, 2012, the Settlement Order was entered. (D.I. 1520). On December 18, 2012, the WARN Plaintiffs appealed the Settlement Order. (D.I. 1539). On January 2, 2013, the WARN Plaintiffs filed with the Bankruptcy Court their Motion for Stay Pending Appeal (the "Stay Motion") (D.I. 1545), which was fully briefed and argued on January 18, 2013, at which time the Bankruptcy Court denied the Stay Motion. (D.I. 1567). The WARN Plaintiffs did not seek a stay pending appeal from this Court in the ensuing ten (10) months.

After the parties proceeded to mandatory mediation, Magistrate Judge Mary Pat Thynge recommended that the appeal be withdrawn from mandatory mediation (Dist. Ct. D.I. 7), and the Court entered an Order Withdrawing the Bankruptcy Appeal from Mediation and set a briefing schedule in the appeal. (Dist. Ct. D.I. 8). Briefing in the appeal has been completed.

Because the Settlement Order was not stayed, the Debtors, CIT, Sun and the Committee implemented a series of transactions (the "Settlement Transactions") commencing on August 28, 2013, to consummate the Settlement Agreement. As a result, the Settlement Agreement has been

fully consummated, all funds have been distributed, and as reflected on the Bankruptcy Court's docket, the Debtors' chapter 11 cases were dismissed on October 11, 2013.

## II. SUMMARY OF ARGUMENT

Now that the settlement has been effectuated and the bankruptcy cases dismissed, the Appellees seek to dismiss this appeal of the Settlement Order on the grounds that the appeal is equitably moot[2] because the Appellees, in reliance on the unstayed Settlement Order, have fully consummated the Settlement Agreement. Among other things, pursuant to the Settlement Agreement, CIT paid $2 million to the Debtors, and Sun released its liens on the Debtors' cash collateral in consideration of the dismissal of the Adversary Proceeding with prejudice and the exchange of releases. As contemplated by the Settlement Agreement, the settlement funds were used to pay allowed administrative claims, priority tax claims, and unsecured claims held by approximately a thousand creditors.

The Third Circuit has recognized the following five factors that courts should consider when evaluating whether to dismiss an appeal of a plan of reorganization under equitable mootness principles, factors, which as set forth below, are relevant to settlement orders as well:

(1) whether the reorganization plan has been substantially consummated;

(2) whether a stay of the order has been obtained pending the appeal;

(3) whether the relief requested would affect the rights of parties not before the court;

(4) whether the relief requested would affect the success of the plan; and

(5) the public policy of affording finality to bankruptcy judgments.

---

[2]  Dismissing an appeal on grounds of equitable mootness is well-established in this Circuit and elsewhere. *See also In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993); *In re Manges*, 29 F.3d 1034 (5th Cir. 1994); *In re Specialty Equip. Cos.*, 3 F.3d 1043 (7th Cir. 1993); *Rochman v. Ne. Util. Serv. Group (In re Public Serv. Co. of N.H.)* 963 F.2d 469 (1st Cir. 1992); *First Union Real Estate Equity & Mort. Inv. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065 (11th Cir. 1992).

6814127

- 3 -

*In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (en banc);[3] *compare Samson Energy Resources Co., et al. v. SemCrude, L.P., et al. (In re SemCrude, L.P., et al.)*, 728 F.3d 314, 320-21 (3d Cir. Aug. 27, 2013) (Ambro, J.) (acknowledging that an appellate court should assess the "five prudential factors," but stating that "[i]n practice, it is useful to think of equitable mootness as proceeding in two analytical steps: (1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation."). It is well settled that the same analysis applies to appeals of settlement agreement approval orders.[4]

For reasons more fully set forth in the Argument (*see infra* pages 10-18), whether evaluating the "five prudential factors" or applying the two analytical steps, the facts compel dismissal of the WARN Plaintiffs' appeal of the Settlement Order.

---

[3]    *See also Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001).

[4]    *See Deangelis v. Official Committee of Unsecured Creditors (In re Kainos Partners Holding Co., LLC)*, No. 09-12292, 2012 WL 6028927, at *3 (D. Del. Nov. 30, 2012), *motion for rehearing denied*, Case No. 10-560-LPS (Nov. 19, 2013) (appeal from settlement order was equitably moot because the settlement was substantially consummated as the settlement order was unstayed, distributions had been made, and the relief requested by the appellant would injure the debtors' unsecured creditors and threaten the success of the settlement); *Ad Hoc Committee of Class 7 Creditors v. Northwestern Corp., et al. (In re Northwestern Corp.)*, No. 03-12872, 2009 WL 2399120, at *2 (D. Del. Aug. 4, 2009) (appeal from unstayed settlement order was equitably moot because "[t]he settlement was a complex and integrated resolution of the many claims including the parties, and . . . relief [could] not be granted to Appellant without causing adverse consequences to numerous parties"); *Cadle Company II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, No. CV-06-1935 (SJF), 2008 WL 199457 at *5 (E.D.N.Y. Jan. 17, 2008) (doctrine of equitable mootness also applies to settlement orders); *Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*, 374 B.R. 516, 522-25 (S.D.N.Y. 2007) (appeal of settlement order was equitably moot). *See also CFI Class Action Claimants v. Singley (In re SCH Corp.)*, No. CV-12-1577-SLR, 2013 WL 3380440, at *3 (D. Del. Jul. 8, 2013) (courts may extend the doctrine of equitable mootness to appeals of settlement orders); *In re Voip, Inc.*, 461 B.R. 899 (S.D. Fla. Oct. 31, 2011) (noting that the doctrine of equitable mootness has been applied to settlement order appeals).

6814127

- 4 -

## III.   FACTUAL BACKGROUND

### A.   The Commencement of the Chapter 11 Cases

On May 20, 2008 (the "Petition Date"), the Debtors each filed in the Bankruptcy Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On June 4, 2008, the United States Trustee appointed the Committee.

Immediately prior to the Petition Date, the Debtors commenced a wind-down process pursuant to which they ceased substantially all of their operations and terminated approximately 90% of their employees.  Post-petition, all of the Debtors' tangible assets were liquidated, and the proceeds were used to repay the outstanding obligations owed to CIT.  Once the Debtors sold their remaining business assets, the chapter 11 cases essentially focused on litigation.[5]

### B.   The Settlement Agreement and the Bankruptcy Court's Approval After an Evidentiary Hearing and Careful Consideration

Though not a simple task, CIT, Sun, the Committee, and the Debtors were able to build a consensus approach to settle the Adversary Proceeding and dispose of the chapter 11 cases.  The Settlement Agreement resolved all claims among the Debtors and their estates, the Committee, CIT, the Lender Group and Sun and provided for (a) the exchange of releases, (b) the payment of $2 million by CIT to the Debtors, to be used to satisfy unpaid chapter 11 administrative claims, (c) the dismissal with prejudice of the Adversary Proceeding, (d) the assignment by Sun of its lien on the estates' remaining assets to the Jevic Holding Corp. Liquidating Trust (the "Creditors Trust") for the benefit of the Debtors' unsecured creditors and certain priority tax claimants, (e) the reconciliation of administrative and unsecured claims, and (f) finally, the dismissal of the chapter 11 cases.  *See* Settlement Agreement at Ex. A to the Joint Motion (D.I. 1346 and 1353).

---

[5]   A summary of the Committee's Adversary Proceeding, the WARN Litigation, and the events leading up to the execution of the Settlement Agreement is set forth in the Appellees' Joint Brief (the "Joint Brief") and incorporated herein by reference.  (Dist. Ct. D.I. 11).

6814127

The WARN Plaintiffs objected to the settlement on a variety of grounds. The Bankruptcy Court approved the Joint Motion over the WARN Plaintiffs' objection based on the uncontradicted evidentiary record described in Appellees' Joint Brief. (D. Ct. D.I. 11). The Bankruptcy Court heard undisputed testimony that the possibility of recovering anything from the Adversary Proceeding in the event that the Bankruptcy Court did not approve the Settlement Agreement and the chapter 11 cases were converted to Chapter 7 (as the WARN Plaintiffs advocated), was highly remote at best. (D.I. 1514, p. 73, lines 2-20). The testimony supported the Bankruptcy Court's conclusion that the Adversary Proceeding would take years to resolve, and would be at a significant expense for which no funding was available. (D.I. 1514, lines 23-25 and p. 69, lines 1-5). Notably, the WARN Plaintiffs proffered <u>no</u> testimony or evidence of their own to challenge the settlement.

The evidence proved that it was not realistic or even possible for the Debtors to confirm a chapter 11 plan because the Debtors had sold or liquidated their assets, resolved all pending litigation that would result in a recovery to the Debtors' estates, and any remaining assets were designated for specific administrative claims or constituted the proceeds of Sun's collateral. There simply was no prospect of distributions to any creditors, other than Sun, except from the funds provided under the Settlement Agreement.

Based on the evidence, the Bankruptcy Court concluded that the settlement met the appropriate legal standards under Fed. R. Bankr. P. 9019, 11 U.S.C. § 105, and relevant case law.

The Bankruptcy Court's Opinion was delivered orally on November 28, 2012. (D.I. 1519). The Bankruptcy Court specifically found, based on the record before it, that:

- After pending for years, there is no reasonable prospect of a confirmable plan in these chapter 11 cases;
- The Debtors have no assets or funds not subject to Sun's liens;

- The Debtors (and thus also the Committee) lack resources to prosecute the Adversary Proceeding, which would be expensive, and to wrap up the chapter 11 cases;

- In the absence of the settlement, "it is a virtual certainty there will be no distribution to unsecured creditors…and a substantial shortfall for distributions to administrative creditors;"

- Sun and CIT have stated unequivocally and credibly that they would not enter into the settlement of the Adversary Proceeding in a subsequent chapter 7 case;

- The WARN Plaintiffs are not unfairly prejudiced as their claim is effectively worthless against the estates as unencumbered funds are not available to satisfy it even if it were allowed; and

- The Court was faced with two options - a meaningful return or zero.

See D.I. 1519, p. 8, lines 6-21; p. 10, lines 7-10; p. 11, lines 18-22; p. 13, lines 6-20; and p. 14, lines 4-19.

Subsequently, on December 4, 2012, the Bankruptcy Court entered the Settlement Order. (D.I. 1520). The WARN Plaintiffs filed the Stay Motion for a stay pending appeal of the Settlement Order, which the Bankruptcy Court denied. Following the Bankruptcy Court's denial of the Stay Motion and in an effort to avoid the need for the District Court to confront, on a fire-drill basis, an emergency motion to stay the Settlement Order, the Bankruptcy Court instructed the Debtors to refrain from consummating the settlement for a short period (ten (10) days to two (2) weeks). The Debtors complied with this instruction.[6] The WARN Plaintiffs did not file a motion for a stay pending appeal from this Court, or any motion in the Bankruptcy Court to reconsider its denial of the Stay Motion or otherwise seek relief from that decision.

Therefore, in August 2013, in reliance on the Settlement Order, the Debtors, the Committee, CIT, and Sun proceeded as follows:

---

[6] In fact, at a hearing on February 20, 2013, Committee Counsel sought further clarification that the parties to the Settlement Agreement were now free to close the Settlement Transactions without any notice requirement to the WARN Plaintiffs, which they were actively considering. The Bankruptcy Court confirmed unequivocally that "there is no stay, and there is not from my point of view an ongoing obligation of the Debtor to give me notice or provide an interval because, functionally, that would be a stay." (Tr. of Feb. 20 Hearing, p. 13, lines 2-5). The WARN Plaintiffs' Counsel said it would be seeking a stay, but in the ensuing eight months never did so.

6814127

- 7 -

- In preparing to take the steps necessary to consummate the settlement, the Debtors continued to use, and have no means of replenishing, Sun's cash collateral.

- CIT, in consideration of releases for it and the Lender Group and the dismissal with prejudice of the Adversary Proceeding, paid $2 million to the Debtors, which has been used by the Debtors to pay expenses and claims;

- CIT on the one hand, and the Debtors and Committee on the other hand, have exchanged general releases that have become effective;

- In consideration of the $2 million paid to the Debtors, the Debtors and Committee released any claims they had against the Lender Group.

- Sun, on the one hand, and the Debtors and the Committee, on the other hand, have exchanged general releases that have become effective;

- The parties caused the Adversary Proceeding to be dismissed with prejudice;

- Sun, in consideration of releases for it and the dismissal with prejudice of the Adversary Proceeding, has transferred its first priority lien on the Debtors' cash collateral to fund the Creditors Trust for the benefit of holders of unsecured claims and certain taxing authorities holding priority claims;

- The Creditors Trust in turn has made final distributions in the amount of $834,175.74 to holders of unsecured claims and $285,565.07 to holders of priority unsecured claims and, as of November 19, 2013, all of these distribution payments have been deposited by the creditors and cleared the Creditors Trust's bank account except for approximately $90,422.58 in outstanding checks; and

- The Debtors' chapter 11 cases were dismissed on October 11, 2013.

Any attempt to undo these transactions and events and return to the status quo that existed before the Bankruptcy Court entered the Settlement Order and the parties consummated the Settlement Agreement would be virtually impossible.

**C.     The Settlement Parties Have Expended Cash Collateral and the CIT Settlement Payment in Implementing the Settlement**

Between January 1, 2013, and October 1, 2013, the Debtors continued to use Sun's cash collateral in reliance on the unstayed Settlement Order. On January 1, 2013, the Debtors had approximately $1.53 million in cash collateral, and between January 1, 2013 and September 30, 2013, the Debtors collected another $21,000. Expenditures during that same time period equaled $856,000. Therefore, without taking into account the settlement proceeds, on September 30,

6814127

- 8 -

2013, the Debtors' cash collateral was $695,320. (*See* Affidavit of Daniel F. Dooley ("<u>Dooley Aff.</u>"), attached hereto as <u>Exhibit A</u>, ¶ 4).

As contemplated by the Settlement Agreement, the Debtors finalized their reconciliation of chapter 11 administrative claims, and in consultation with the Committee, reconciled unsecured claims. The Debtors received $2 million from CIT on August 28, 2013 pursuant to the Settlement Agreement. (Dooley Aff. ¶ 6). As of September 30, 2013, the Debtors held $2.69 million. (Dooley Aff. ¶ 8). Approximately $1.525 million was paid to fully satisfy administrative claims, expenses and fees. (Dooley Aff. ¶ 8). On October 1, 2013, the Debtors transferred their remaining funds, in the amount of $1,169,740.82, to the Creditors Trust. (Dooley Aff. ¶ 8; Affidavit of Edward T. Gavin ("<u>Gavin Aff.</u>"), attached hereto as <u>Exhibit B</u>, ¶ 3).

In turn, the Creditors Trust distributed 1,039 final disbursement checks in the aggregate amount of $834,175.74 to holders of allowed general unsecured claims and 29 final disbursement checks in the aggregate amount of $285,565.07 to holders of allowed unsecured priority tax claims (Gavin Aff. ¶ 4). Of the 1,039 checks, 39 checks in the aggregate amount of $5,406.75 were returned to the Creditors Trust as undeliverable with no available forwarding address. (Gavin Aff. ¶ 5). As of November 19, 2013, $90,422.58 in checks have not been negotiated by the payees, which amount consists of (i) 231 checks to holders of allowed general unsecured claims in the aggregate amount of $89,273.09 and (ii) one check to a holder of an allowed unsecured priority tax claim in the amount of $1,149.49. (Gavin Aff. ¶ 5).

## IV. ARGUMENTS AND AUTHORITIES

### The Principles of Equitable Mootness Justify Dismissal of This Appeal

The doctrine of equitable mootness allows appellate courts, through the application of equitable principles, to reject an appeal as moot "to prevent a court from unscrambling complex

6814127

bankruptcy transactions when the appealing party should have acted before the transaction became extremely difficult to retract." *Nordhoff*, 258 F.3d at 185; *see also Chateaugay*, 988 F.2d at 325 ("Such a dismissal is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal.") (internal quotation omitted). As set forth on pages 3-4 above, courts in the Third Circuit apply the five prudential factors outlined in *Continental* when considering whether to dismiss a bankruptcy appeal as equitably moot.

The appeal taken by the WARN Plaintiffs has been rendered equitably moot due to the full consummation of the Settlement Agreement, the WARN Plaintiffs' failure to obtain (or even seek from this Court) a stay pending appeal, and the effect that consummation of the Settlement Agreement has had on third parties. Thus, dismissal of the appeal on equitable mootness grounds is required under the five-factor analysis or the two-pronged practical analysis outlined in *SemCrude*. *See, e.g., Nordhoff*, 258 F.3d at 185 (reasoning that an appeal should "be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable") (internal citations omitted); *Continental*, 91 F.3d at 553 (dismissing an appeal as moot since there were no prudential considerations that support an attempt to fashion even a limited remedy for appellants).

### A. <u>The Court Should Dismiss the Appeal Because the Settlement Agreement Has Been Fully Consummated.</u>

The first, and most important, question for the mootness analysis is whether the settlement has been substantially consummated. *See Continental*, 91 F.3d at 560-61 (citing *In re Public Serv. Co.*, 963 F.2d at 473-74) (explaining that "the foremost consideration has been whether the reorganization plan has been substantially consummated. This is especially so

where the reorganization involves intricate transactions,…or where outside investors have relied on the confirmation of the plan.") "'Substantial consummation' is a statutory measure for determining whether a reorganization plan may be amended or modified by the bankruptcy court." *Manges*, 29 F.3d at 1040; *see also* 11 U.S.C. § 1127(b). Section 1101(2) of the Bankruptcy Code defines "substantial consummation" as:

(A)    transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)    commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Here, there can be no question that Appellees have met the statutory requirements for "substantial consummation" of the Settlement Agreement. Each transaction contemplated by the Settlement Agreement has been completed. CIT paid $2 million to the Debtors on August 28, 2013, Sun assigned its lien on the estates' remaining assets to the Creditors Trust, and the Debtors transferred cash to the Creditors Trust in exchange for the releases and dismissal with prejudice of the Adversary Proceeding. (Dooley Aff. ¶ 6). The releases became effective by their terms on payment of the $2 million, and the Adversary Proceeding was dismissed with prejudice on August 29, 2013. (Dooley Aff. ¶ 6). The Debtors have fully satisfied all administrative claims. (Dooley Aff. ¶ 8). The Creditors Trust has mailed checks totaling approximately $1.12 million in distributions to 29 holders of priority tax claims and 1,039 holders of unsecured claims. (Gavin Aff. ¶ 4). Of the checks distributed to priority tax claimants, one check remains outstanding. Of the checks mailed to unsecured creditors, 39 checks were returned as undeliverable and 231 checks remain outstanding. (Gavin Aff. ¶ 5). Finally, the Debtors, on October 11, 2013, filed a certification of counsel certifying that all of the

6814127

conditions set forth in the Settlement Order had been satisfied, and the cases were deemed dismissed pursuant to the Settlement Order.  (Dooley Aff. ¶ 9).

A reversal of the Settlement Order would deprive CIT, the Lender Group, and Sun of their bargained-for exchange of consideration and require the reversal of distributions made months ago to hundreds of creditors.  Moreover, it likely is impossible to put CIT, the Lender Group, and Sun back in the position they occupied before they relied on the unstayed Settlement Order.

Because the Settlement Agreement has been not just substantially consummated, but fully consummated, reversal of the Settlement Order at this late stage would be highly inequitable. The first factor, consequently, weighs heavily in favor of applying the equitable mootness doctrine and dismissing the appeal.

### B.  The Court Should Dismiss the Appeal Because the WARN Plaintiffs Failed to Obtain a Stay or Even Seek One from This Court.

The second factor examined in an equitable mootness analysis is whether the appellant obtained a stay of the order at issue.  *See, e.g., Continental*, 91 F.3d at 559-60 (noting that "the failure to seek a stay coupled with a substantial change of circumstances would justify dismissal of the appeal for lack of equity") (internal citations omitted); *see Manges*, 29 F.3d at 1040 ("the failure or inability to obtain a stay pending appeal carries the risk that review might be precluded on mootness grounds").

To satisfy the second factor, the appellant must actually *obtain* a stay, rather than just seek a stay.  *Continental*, 91 F.3d at 562 (citing *UNR Indus*, 20 F.3d at 770).  To protect investors, lenders and other third parties against changes in the status quo, the Third Circuit has recognized that "it is *obligatory* upon appellant to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit

6814127

- 12 -

Justice for relief), if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Nordhoff*, 258 F.3d at 186-87 (emphasis added) (internal quotation omitted). Consequently, "the existence or absence of a stay is a critical factor in determining whether to dismiss an appeal under the doctrine of equitable mootness." *Grand Union Co. v. Saul, Ewing, Remick & Saul (In re Grand Union)*, 200 B.R. 101, 105 (D. Del. 1996) (citing *Continental*, 91 F.3d at 553); *see also Kainos*, 2012 WL 6028927, at *3 (critical to the district court's decision to dismiss the appeal as equitably moot was the fact that the settlement order remained unstayed).

The Bankruptcy Court denied the Stay Motion on January 18, 2013. (D.I. 1567). The WARN Plaintiffs did not seek relief from the Bankruptcy Court in the form of a motion to reconsider, or seek a stay from this Court. Tellingly, in the over ten (10) months that have elapsed since the Bankruptcy Court denied the WARN Plaintiffs' request to stay the Settlement Order, the WARN Plaintiffs have not sought relief from this Court even though they were put on notice that consummation of the Settlement Agreement was planned to occur. Their inactivity for such an extended time period strongly supports dismissal of this appeal. *See Nordhoff*, 258 F.3d at 186-187 (holding that the appellants' failure to seek a stay during a 10-day time period between their receipt of notice of the consummation of a plan and the occurrence of the most complex and irreversible element of the plan weighed in favor of a finding of equitable mootness). Similarly, there can be no question whether there has been a comprehensive change in circumstances since the Bankruptcy Court's approval of the Settlement Agreement. *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888-89 (S.D.N.Y. 1994) (noting that courts consider such factors as whether funds were distributed to creditors when analyzing whether there has been a "comprehensive change in circumstances"); *PC Liquidation Corp.*, 2008 WL 199457, at

*5 (finding that a "comprehensive change of circumstances" had occurred where the settlement orders had been fully implemented and all funds had been distributed under such orders). The completion of all of the Settlement Transactions described on pages 7-8 above undoubtedly constitutes a comprehensive change in circumstances supporting dismissal of the WARN Plaintiffs' appeal.

### C. The Court Should Dismiss the Appeal Because Vacating the Settlement Order Would Materially Prejudice the Rights of Numerous Parties Not Before the Court.

The third factor a court must consider in the equitable mootness analysis is whether the relief requested in the appeal would affect the rights of parties not before the court.[7] Whether evaluated as the third factor of the traditional Third Circuit five-factor analysis or under the *SemCrude* formulation, the Appellees meet their burden to justify dismissal of the appeal.

In discussing this factor, courts have protected a variety of parties from the adverse consequences imposed by unwinding transactions consummated pursuant to unstayed orders. *See, e.g. Dura Auto Sys.,* 403 B.R. at 307 (listing various parties that had "acted in reliance on the plan's confirmation," including lenders in the exit facility, holders of the new common stock, customers, and suppliers,); *Nordhoff*, 258 F.3d at 188 (identifying lenders, bondholders, retailers, suppliers, distributors, equity holders in the reorganized company, and the company's former minority shareholders as constituencies whose interests would be undermined by reversal of the confirmation order); *Northwestern Corp.,* 2009 WL 2399120, at *6 (identifying numerous parties, including unsecured creditors not before the Court who were still awaiting distributions, who would be harmed by the relief requested); *Kainos*, 2012 WL 6028927, at *10 (overturning the settlement order "would impact numerous third parties not before the Court, namely …

---

[7]    Under the condensed, two-step analysis articulated in *SemCrude*, the Third Circuit uses a form of this factor in step two and focuses on whether granting the relief requested in the appeal will significantly harm third parties who have justifiably relied on plan confirmation or settlement consummation. *SemCrude*, 728 F.3d at 320-21.

unsecured creditors…"); *Delta Air Lines*, 374 B.R. at 524 ("Courts have found that the effect on creditors who are not a party to an appeal in analogous circumstances weighs in favor of finding an appeal moot.") (internal citations omitted); *SCH Corp.*, 2013 WL 3380440, at \*8-9 (identifying class claimants in related litigation and professionals who had already received distributions as parties that would be harmed by the relief requested).

Reversal of the Settlement Order after consummation of the settlement would materially prejudice the rights and obligations of hundreds of parties not before the Court, and would fundamentally alter the basis for the transactions entered into in reliance on the unstayed Settlement Order, detailed *supra* at pages 7-8. If the appeal were to proceed and the Appellants were to succeed, the benefits to all of these parties not before the Court would be erased, assuming it were feasible to reverse the Settlement Transactions entered into in reliance on the unstayed Settlement Order. As the Bankruptcy Court properly concluded, "based on the record, the Court was faced with two options - a meaningful return or zero." (D.I. 1519, p. 14, lines 18-19). In reliance on the unstayed Settlement Order:

- Checks totaling $834,175.74 have been mailed to 1,039 unsecured creditors, of which 39 were returned as undeliverable and 231 are outstanding. Unsecured creditors would not have received such funds but for the Settlement Agreement.
- Checks totaling $285,565.08 have been mailed to 29 priority tax claimants, of which 1 remains outstanding. Priority tax claimants would not have received such funds but for the Settlement Agreement.
- All administrative claims have been fully satisfied, and these claims likely would not have been satisfied but for the Settlement Agreement.

Because any reversal of the Settlement Order at this late stage would irreparably harm third parties not before the Court by requiring them to return distributions they have already received, the third factor weighs heavily in favor of dismissal of the appeal as equitably moot and the Appellees satisfy the second prong of the *SemCrude* two-stage analysis.

**D.** **The Court Should Dismiss the Appeal Because the Relief Requested by the**

### WARN Plaintiffs Would Destroy the Settlement

The fourth factor in the equitable mootness analysis is whether the relief requested would affect the settlement. *See Continental*, 91 F.3d at 560; *see also Nordhoff*, 258 F.3d at 190; *Delta*, 374 B.R. at 524 (concluding that overturning the settlement order could destroy the settlement, which would complicate the debtor's rights to an important hub and risk the debtor's vitality as a reorganized entity). *Compare SemCrude*, 728 F.3d at 320-21 (identifying as a part of the Third Circuit's two-step analytical process, a determination of whether granting the relief requested in the appeal will fatally scramble the plan). In this case, the relief requested in the appeal would be fatal to the settlement's success because the Settlement Transactions would have to be reversed and every party returned to the status quo ante. Assuming, *arguendo*, that this Court could unwind the Settlement Transactions and somehow reinstate the chapter 11 cases, the Debtors cannot confirm a chapter 11 plan because they would have no unencumbered assets to satisfy their obligations. (D.I. 1519, p. 8, lines 7-12). The settlement also could not be reconstructed if the cases were converted to chapter 7 cases. (D.I. 1519, p. 10, lines 7-8, 10-20). Finally, reversal would eradicate the benefits to creditors derived from the Settlement Agreement because even if the Debtors could recover the funds transferred to the Creditors Trust, the Debtors would be left with substantially less cash than they possessed in December 2012 (*See* Dooley Aff. ¶ 7), when the Bankruptcy Court approved the Settlement Agreement after concluding that it was faced with two options - a meaningful return or zero. (D.I. 1519, p. 14, lines 18-19). Moreover, in the unlikely event that the WARN Plaintiffs are successful on appeal, Sun and CIT will not agree to a comparable settlement. (D.I. 1514, p. 157, lines 15-19; p. 161, lines 6-10). Based on the foregoing, the fourth factor weighs in favor of dismissal because granting the relief requested by the WARN Plaintiffs in their appeal will fatally scramble the settlement.

6814127

- 16 -

### E.    The Court Should Dismiss the Appeal Because Dismissal Is in the Public Interest

The final factor is whether dismissal would bolster a public interest or public policy objective.  *Continental*, 91 F.3d at 560.  The primary public policy that courts consider is the public policy in affording finality to bankruptcy judgments.  *See, e.g. Box Bros*., 194 B.R. at 32.  Reversal of an order confirming a plan or an integrated settlement as present here, "knocks the props out" from under the authorization for every transaction which has taken place, and does nothing other than "create an unmanageable, uncontrollable situation for the Bankruptcy Court."  *Continental*, 91 F.3d at 561 (internal citations omitted); *see also Kainos*, 2012 WL 6028927, at *10-11 (finding that the complexity of the litigation, the number of parties involved in the negotiation and implementation of the settlement, and the risk of catastrophic loss if the settlement were not implemented all weighed in favor of leaving the settlement order undisturbed); *In re Global Vision Products, Inc.*, 2009 WL 2170253, at *4 (S.D.N.Y. 2009) (citing *Chateaugay II*, 10 F.3d at 952-53 (internal citations omitted).  Here, public policy favors leaving the Settlement Order undisturbed because the settlement resolves complex litigation among multiple parties, the settlement has been fully consummated, parties have relied on the Settlement Order for more than ten (10) months, distributions have been made to hundreds of creditors months ago, and reversal would prejudice all constituents without benefiting the Appellants.[8]  *See Kainos*, 2012 WL 6028927, at *11.  To overrule the Settlement Order would greatly undermine public confidence in orders of the bankruptcy courts, and would cause constituents hesitation to enter into complex, problem-solving settlements while worrying about

---

[8]    The Bankruptcy Court specifically found that the Settlement Agreement does not unfairly prejudice Appellants because their claims are, effectively, worthless against the Debtors' estates because there are insufficient unencumbered funds to satisfy the Appellants' claims, even if they were allowed.  *See* Transcript of Nov. 20, 2012 Hearing at D.I. 1519, p. 14, lines 11-17.

parties challenging the settlement transactions without obtaining a stay. In weighing policy considerations, the Third Circuit in *SemCrude* held that "preserving the finality of plan confirmation to encourage parties to move forward with plan execution justifies forbearing the exercise of jurisdiction only where precluding the appeal will prevent a perverse outcome." *SemCrude*, 728 F.3d at 326. The evidence demonstrates that granting the relief the WARN Plaintiffs request in the appeal will result in just such a perverse outcome. Upholding the settlement and dismissing the appeal allows the administrative, unsecured priority tax and unsecured creditors to retain their distributions and the parties to the Settlement Agreement to retain the benefit of their bargain after relying on the unstayed Settlement Order. Moreover, such parties likely cannot be returned to the positions they were in ten (10) months ago when the Settlement Order was approved. Most importantly, as the Bankruptcy Court found, the WARN Plaintiffs will not even benefit from a reversal of the Settlement Order. (D.I. 1599, p. 27, lines 15-22). Therefore, granting the relief will have the effect of harming all the other constituencies and not benefiting the Appellants. This would truly constitute a perverse outcome. Accordingly, the public policy of affording finality to bankruptcy court judgments weighs in favor of dismissal of the appeal as moot.

## V. REQUEST FOR COURT TO TAKE JUDICIAL NOTICE OF DOCKETS, FILED PLEADINGS AND UNCONTESTED FACTS

Appellees hereby respectfully request that the Court take judicial notice of the docket entries, pleadings, and documents listed on Appendix A filed contemporaneously with this Joint Brief, all of which are relevant to the mootness of the WARN Plaintiffs' appeal. *See* Fed. R. Evid. 201; *see also Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1992) (judicial notice of docket entries); *Comm. of Equity Sec. Holders of Federal-Mogul Corp. v. Official Comm. of Unsecured Creditors (In re Federal-Mogul, Inc.)*, 348 F.3d 390, 407

6814127

- 18 -

(3d Cir. 2003) (judicial notice of "facts that are not subject to reasonable dispute"); *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197, 205 (3d Cir. 1994) ("the filings of documents in the case record provides competent evidence of certain facts - that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made"); *In re Long Shot Drilling, Inc.*, 224 B.R. 473, 477 n.3 (10th Cir. BAP 1998) (accepting debtor's affidavit in light of duty to bring those facts to the appellate court's attention).[9]

## VI.    CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, the Appellees respectfully pray that the WARN Plaintiffs' appeal be dismissed in its entirety with prejudice as moot.

[Remainder of Page Intentionally Left Blank]

---

[9]    The Appendix containing the list of items of which the parties respectfully request the Court take judicial notice includes evidence of (i) payment of the $2 million by CIT, (ii) the releases, (iii) the dismissal of the adversary proceeding including the docket entry thereof, (iv) dismissal of the chapter 11 case including applicable docket entry, and (v) payment of administrative expenses, priority tax claims, unsecured claims and estate professionals, etc.

Dated:  November  21, 2013

/s/ Bruce Grohsgal
Robert J. Feinstein
Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:      (302) 652-4400
Email: bgrohsgal@pszjlaw.com
Email: rfeinstein@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

/s/ Linda Richenderfer
Domenic E. Pacitti (DE Bar No. 3989)
Linda Richenderfer (DE Bar No. 4138)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone:    (302) 426-1189
Facsimile:      (302) 426-9193
Email: dpacitti@klehr.com
              lrichenderfer@klehr.com

*Counsel to the Debtors*

/s/ Curtis S. Miller
Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone:    (302) 658-9200
Facsimile:      (302) 658-3989
Email: rdehney@mnat.com
              cmiller@mnat.com

-and-

James A. Stempel
James P. Gillespie, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone:    (312) 862-2440
Facsimile:      (312) 862-2000
Email: jstempel@kirkland.com
              james.gillespie@kirkland.com

*Counsel To Sun Capital Partners IV, LP, Sun
Capital Partners Management IV, LLC, And
Sun Capital Partners, Inc.*

/s/ Stephen M. Miller
Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:    (302) 888-6800
Facsimile:      (302) 571-1750
Email: smiller@morrisjames.com
              emonzo@morrisjames.com

-and-

Benjamin C. Ackerly
Richard P. Norton
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:    (804) 788-8200
Facsimile:      (804) 788-8218
Email: backerly@hunton.com
              rnorton@hunton.com

*Counsel To The CIT Group/Business Credit,
Inc., As Agent For The Lender Group*

6814127

- 20 -

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,<br><br>Debtors.<br>_____<br><br>Casimir Czyzewski, *et al.*,<br><br>Appellants,<br><br>- v. -<br><br>Jevic Holding Corp., *et al.*,<br><br>Appellees. | Chapter 11<br><br>Bankr. No. 08-11006 (BLS)<br>(Jointly Administered)<br><br>BAP Appeal Nos. 12-68 and 12-69<br><br>Adv. Pro. No. 08-51903 (BLS)<br><br><br><br><br>Civil Action Nos. 13-104 (SLR) and<br>13-105 )SLR)<br>(Consolidated) |

## AFFIDAVIT OF DANIEL F. DOOLEY IN SUPPORT OF THE JOINT MOTION OF THE DEBTORS, CIT, SUN CAPITAL, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISMISS APPEAL OF SETTLEMENT ORDER AS <u>EQUITABLY MOOT</u>

I, Daniel F. Dooley, having been duly sworn on oath this 20th day of November 2013, state as follows:

1.    I am the CEO and a Principal of MorrisAnderson and a Certified Turnaround Professional.  I have been the Chief Restructuring Officer for Jevic Holding Corp., Jevic Transportation, Inc. and Creek Road Properties, LLC (collectively, the "Debtors") since early May 2008.

2.    I make this Declaration in support of the *Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors to Dismiss Appeal of Settlement Order as Equitably Moot*.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and my review of the Debtors' books and records, relevant

A-1

documents and other information prepared or collected at my direction. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

3.      The Settlement Agreement and Release dated June 22, 2012 (the "Settlement Agreement"),  by and among the Debtors, the Official Committee of Unsecured Creditors, Sun Capital Partners IV, LP and Sun Capital Partners Management IV, LLC, and The CIT Group/Business Credit, Inc., as Agent, was approved by the *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order; (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Settlement Order") entered by the United States Bankruptcy Court for the District of Delaware on December 4, 2012.

4.      On January 1, 2013, the Debtors' estates contained approximately $1.53 million, and an additional $21,000 was collected between that date and the end of September 2013. Expenditures during that same time period equaled $856,000.  Therefore, without taking into account settlement proceeds, on September 30, 2013, the Debtors had cash collateral of approximately $695,320.

5.      Commencing on August 28, 2013, the Debtors,  Sun Capital Partners IV, LP, Sun Partners Management IV, LLC and Sun Capital Partners, Inc. (collectively, "Sun"), The CIT Group/Business Credit, Inc., as agent ("CIT") for the lenders (the "Lender Group") and the Official Committee of Unsecured Creditors ("Committee") implemented a series of transactions to consummate the Settlement Agreement.

A-2

6.      On or about August 28, 2013, the Debtors received $2 million from CIT, paid in consideration of the releases granted CIT and the Lender Group and the dismissal with prejudice of the underlying Adversary Proceeding.  The Adversary Proceeding was dismissed with prejudice on August 29, 2013.  CIT, on the one hand, and the Debtors and the Committee, on the other hand, exchanged general releases that have become effective.  Further, the Debtors and the Committee released any claims they had against the Lender Group.

7.      In addition, Sun, on the one hand, and the Debtors and the Committee, on the other hand, exchanged general releases that have become effective.  In consideration of the releases it received and the dismissal with prejudice of the Adversary Proceeding, Sun transferred its first priority lien on the Debtors' cash collateral to fund the Jevic Holding Corp. Liquidating Trust (the "<u>Creditors Trust</u>") for the benefit of holders of unsecured claims and certain taxing authorities holding priority claims.

8.      As of September 30, 2013, the Debtors held $2.69 million.  Approximately $1.525 million was paid in full satisfaction of administrative claims, expenses and fees.  On October 1, 2013, the Debtors transferred the remaining amount of $1,169,740.82, to the Creditors Trust.

9.      On October 11, 2013, upon completion of all conditions set forth in the Settlement Agreement and the Settlement Order, the Debtors' Chapter 11 cases were dismissed and closed.  Attached hereto is a true and correct copy of the Certification of Counsel Regarding Satisfaction of Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and The Official Committee Of Unsecured Creditors Pursuant to 11 U.S.C. § 105(A), 349 and 1112(B) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement;

A-3

and (III) Granting Related Relief (the "Certification") filed by Debtors' counsel on October 11,

2013.  As of the filing of the Certification, the Debtors' cases were dismissed by the Court.

<div align="center">[Remainder of Page Intentionally Left Blank]</div>

A-4

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: November 20 2013

Daniel F. Dooley

STATE OF ILLINOIS :

COUNTY of DuPAGE:

Subscribed and sworn before me by Daniel F. Dooley, this ___20___ day of November,

2013.

By: _____
Notary Public

OFFICIAL SEAL
DONALD G SKOGSBERG
NOTARY PUBLIC · STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/22/16

A-5

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | Case No. 08-11006 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, on behalf of the bankruptcy estates | ) | |
| of JEVIC HOLDING CORP., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | Adv. Pro. No. 08-51903 (BLS) |
| | ) | |
| The CIT GROUP/BUSINESS CREDIT, INC., in its | ) | |
| capacity as Agent, and SUN CAPITAL PARTNERS | ) | |
| IV, LP, SUN CAPITAL PARTNERS | ) | |
| MANAGEMENT IV, LLC, and SUN CAPITAL | ) | |
| PARTNERS, INC. | ) | |
| | ) | |
| Defendants. | ) | **Related to Docket No. 1520** |

**CERTIFICATION OF COUNSEL REGARDING SATISFACTION OF CONDITIONS IN
ORDER APPROVING JOINT MOTION OF THE DEBTORS, CIT, SUN CAPITAL AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11
U.S.C. § 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN
ORDER: (I) APPROVING SETTLEMENT AGREEMENT AND RELEASING CLAIMS;
(II) DISMISSING THE DEBTORS' CASES UPON IMPLEMENTATION
OF SETTLEMENT; AND (III) GRANTING RELATED RELIEF**

The undersigned hereby certifies that, on June 27, 2012, the above captioned debtors and

debtors-in-possession (collectively, the "Debtors"), The Official Committee of Unsecured Creditors

(the "Committee"), Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC and Sun

Capital Partners, Inc. (collectively, "Sun"); and The CIT Group/Business Credit, Inc. as agent

("CIT") for the lenders (the "Lender Group") under the loan facilities described in the complaint filed

in the above-captioned Adversary Proceeding (all hereinafter referred to as a "Party" or collectively,

the "Parties"), filed the Joint Motion of The Debtors, CIT, Sun Capital and the Official Committee of

Unsecured Creditors Pursuant to 11 U.S.C. § 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief [Docket No. 1346] (the "Joint Motion").

The undersigned further certifies that on December 4, 2012 the Court entered an order granting the Joint Motion [Docket No. 1520] (the "Settlement and Dismissal Order").

The undersigned further certifies all conditions to the Settlement and Dismissal Order have been satisfied, specifically: (a) that all quarterly fees of the U.S. Trustee have been paid in full; (b) that all Allowed Administrative Expense Claims[1] have been paid in full; (c) a schedule of all allowed 503(b)(9) Claims and allowed Admin Taxes that have been paid is attached hereto as Exhibit A; (d) a schedule of all Allowed Resolved Priority Claims is attached hereto as Exhibit B; (e) a schedule of all Allowed GUC Claims is attached hereto as Exhibit C; and (f) that all remaining funds in the estates, which are subject to Sun's lien, have been transferred to the Trust to make pro rata distributions to holders of Allowed Resolved Priority Claims and Allowed GUC Claims after dismissal of the Chapter 11 Cases, all as contemplated by the Settlement Agreement and the Settlement and Dismissal Order.

Dated: October 11, 2013
Wilmington, Delaware

Respectfully Submitted,

KLEHR HARRISON HARVEYBRANZBURG LLP

By:   /s/ Michael W. Yurkewicz
      Domenic E. Pacitti, Esq. (DE Bar No.3989)
      Michael W. Yurkewicz, Esq. (DE Bar No. 4165)
      919 Market Street, Suite 1000
      Wilmington, DE 19801
      Telephone: (302) 426-1189
      Facsimile: (302) 426-9193

      *Counsel for the Debtors and Debtors-in-Possession*

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Joint Motion.

PHIL1 2198879v.3

# Exhibit A

| Exhibit A | | | | |
|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | |
| Allowed 503(b)(9) Claims FINAL | | | | |
| | | | | |
| | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Admin Amt** |
| | | | | |
| **Allowed Claims:** | | | | |
| | | | | |
| GOODYEAR TIRE & RUBBER COMPANY, THE | 446 | 8011290 | JEVIC TRANSPORTATION, INC. | $ 41,115.33 |
| ACTION CALENDAR & SPECIALTY CO., INC. | 211 | 8021390 | JEVIC TRANSPORTATION, INC. | $ 6,818.30 |
| IRVING OIL CORPORATION | 234 | | JEVIC TRANSPORTATION, INC. | $ 126,803.09 |
| | | | | |
| Total Allowed Claims | | | | $ 174,736.72 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total 503(b)(9) Claims | | | | $ 174,736.72 |

| Exhibit A | | | | | |
|---|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | | |
| Allowed Administrative Claims -FINAL | | | | | |
| | | | | | |
| | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Admin Amt** |
| | | | | | |
| **Allowed Claims:** | | | | | |
| | | | | | |
| NEW JERSEY DEPARTMENT OF LABOR AND | 853 | | JEVIC TRANSPORTATION, INC. | $ | 8,398.67 |
| STATE OF NEW JERSEY | 1137 | | JEVIC HOLDING CORP. | $ | 7,655.72 |
| DEPARTMENT OF THE TREASURY | 1141 | | JEVIC HOLDING CORP. | $ | 2,253.32 |
| INTERNAL REVENUE SERVICE | 1144 | | JEVIC HOLDING CORP. | $ | 120.36 |
| Ohio Department of Taxation | 1243 | | Jevic Transportation, Inc. | $ | 3,674.00 |
| | | | | | |
| Total Allowed Claims | | | | $ | 22,102.07 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total All Administrative Tax Claims | | | | $ | 22,102.07 |

Page 1 of 1

| Claimant Name | Claim # | Schedule # | Debtor | Admin Amt |
|---|---|---|---|---|
| Exhibit A | | | | |
| Jevic Holding Corp., et al. | | | | |
| Allowed Administrative Claims - Other FINAL | | | | |
| | | | | |
| **Allowed Claims:** | | | | |
| | | | | |
| HARTFORD FIRE INSURANCE COMPANY | 237 | | JEVIC HOLDING CORP. | $ 8,562.61 |
| ILLUMINATING COMPANY, THE | 468 | | JEVIC TRANSPORTATION, INC. | $ 7,251.92 |
| PITNEY BOWES CREDIT CORPORATION | 1146 | | JEVIC TRANSPORTATION, INC. | $ 3,393.25 |
| WILLIAMS SCOTSMAN, INC. | 1225 | | JEVIC TRANSPORTATION, INC. | $ 804.23 |
| SUNGARD AVAILABILITY SERVICES LP | 34 | | JEVIC HOLDING CORP. | $ 36,856.00 |
| METROPOLITAN LIFE INSURANCE COMPANY | 1034 | 8017180 | JEVIC HOLDING CORP. | $ 14,705.74 |
| | | | | |
| Total Allowed Claims | | | | $ 71,573.75 |
| | | | | |
| | | | | |
| | | | | |
| Total All Administrative Other Claims | | | | $ 71,573.75 |

# Exhibit B

| | | | | |
|---|---|---|---|---|
| Exhibit B | | | | |
| Jevic Holding Corp., et al. | | | | |
| Allowed Priority Claims Included in Settlement FINAL | | | | |
| | | | | |
| | | | | |
| **CLAIM NUMBER** | **CLAIM NAME** | **Priority Amount** | **Net Claim Amt** | **Settlement** |
| 27 | TENNESSEE DEPARTMENT OF REVENUE | $20,234.77 | $0.00 | $0.00 |
| 62 | STATE OF FLORIDA DEPT. OF REVENUE | $171.08 | $0.00 | $0.00 |
| 68 | OHIO DEPARTMENT OF TAXATION | $31,511.12 | $31,511.12 | $7,877.78 |
| 80 | R.I. DIVISION OF TAXATION | $1,000.00 | $1,000.00 | $1,000.00 |
| 82 | STATE OF LOUISIANA | $4.83 | $0.00 | $0.00 |
| 126 | STATE OF MAINE | $835.10 | $802.10 | $802.10 |
| 154 | ILLINOIS DEPARTMENT OF REVENUE | $5,294.31 | $5,294.31 | $5,294.31 |
| 156 | NORTH CAROLINA DEPARTMENT OF REVENUE | $4,597.94 | $4,597.94 | $1,149.49 |
| 168 | GEORGIA DEPARTMENT OF REVENUE | $229.54 | $0.00 | $0.00 |
| 176 | DIVINE ENTERPRISES | $3,850.00 | $0.00 | $0.00 |
| 179 | PENNSYLVANIA DEPARTMENT OF REVENUE | $15,362.00 | $0.00 | $0.00 |
| 188 | U.S. DEPARTMENT OF LABOR - EBSA | $0.00 | $0.00 | $0.00 |
| 191 | OREGON DEPARTMENT OF TRANSPORTATION | $480.41 | $480.41 | $480.41 |
| 218 | FARKAS, JACK | $820.92 | $0.00 | $0.00 |
| 223 | ILLINOIS DEPT OF REVENUE, | $327.00 | $327.00 | $327.00 |
| 224 | BROADVIEW NETWORKS | $2,008.05 | $2,008.05 | $0.00 |
| 230 | CUYAHOGA COUNTY TREASURER | $784.90 | $784.90 | $784.90 |
| 243 | DAYS INN CLEVELAND AIRPORT | $388.08 | $0.00 | $0.00 |
| 244 | MISSISSIPPI STATE TAX COMMISSION | $412.50 | $412.50 | $412.50 |
| 250 | STATE OF CALIFORNIA | $351.12 | $0.00 | $0.00 |
| 254 | NEW PIG CORP. | $220.00 | $0.00 | $0.00 |
| 260 | ARKANSAS DEPT. OF FINANCE AND ADMIN. | $250.73 | $250.73 | $250.73 |
| 442 | STATE OF NEW JERSEY | $837,322.17 | $165,115.63 | $41,278.91 |
| 442 | STATE OF NEW JERSEY | $133,272.00 | $133,272.00 | $0.00 |
| 455 | OHIO DEPARTMENT OF TAXATION | $85,597.40 | $85,597.40 | $21,399.35 |
| 464 | LOUISIANA DEPARTMENT OF REVENUE | $14.08 | $14.08 | $14.08 |
| 466 | DEPARTMENT OF THE TREASURY | $17,853.02 | $17,853.02 | $4,463.26 |
| 471 | NY STATE DEPT OF TAXATION & FINANCE | $192,625.86 | $0.00 | $0.00 |
| 477 | COMMONWEALTH OF MASSACHUSETTS | $471.71 | $471.71 | $471.71 |
| 478 | COMMONWEALTH OF MASSACHUSETTS | $279.09 | $150.00 | $150.00 |
| 482 | STATE OF CALIFORNIA | $1,651.37 | $1,600.00 | $1,600.00 |
| 521 | CLAYTON COUNTY TAX COMM | $2,617.98 | $2,617.98 | $2,617.98 |
| 559 | PUSATERE, ROSS | $4,834.80 | $0.00 | $0.00 |
| 621 | DELANCO SEWERAGE AUTHORITY, THE | $1,318.47 | $0.00 | $0.00 |
| 633 | OHIO DEPT OF JOB & FAMILY SERVICES | $4.28 | $4.28 | $4.28 |
| 678 | CLERK OF THE SUPERIOR COURT | $152.00 | $152.00 | $152.00 |
| 691 | WISCONSIN DEPARTMENT OF REVENUE | $824.83 | $744.00 | $744.00 |
| 739 | STATE OF VIRGINIA DEPARTMENT OF REVENUE | $15,000.00 | $0.00 | $0.00 |
| 828 | SLADE, GARY R | $393.38 | $0.00 | $0.00 |
| 893 | BULTER COUNTY TREASURER | $0.00 | $268.07 | $268.07 |
| 955 | STATE OF NEW MEXICO | $4,607.64 | $4,607.64 | $4,607.64 |
| 959 | CABARRUS COUNTY TAX COLLECTOR | $54,493.24 | $24,146.99 | $6,036.75 |
| 996 | CRAWFORD & COMPANY | $0.00 | $0.00 | $0.00 |

| CLAIM NUMBER | CLAIM NAME | Priority Amount | Net Claim Amt | Settlement |
|---|---|---|---|---|
| 1033 | METROPOLITAN LIFE INSURANCE COMPANY | $23,284.09 | $23,284.09 | $5,821.02 |
| 1049 | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | $1,000.00 | $1,000.00 | $1,000.00 |
| 1134 | METROPOLITAN LIFE INSURANCE COMPANY | $5,000.00 | $5,000.00 | $1,250.00 |
| 1138 | OHIO BUREAU OF WORKERS' COMPENSATION | $302,001.09 | $302,001.09 | $75,500.27 |
| 1145 | NY STATE DEPT OF TAXATION & FINANCE | $190,161.86 | $19,851.08 | $0.00 |
| 1146 | PITNEY BOWES GLOBAL FINANCIAL SERVICES | $3,393.25 | $3,393.25 | $0.00 |
| 1163 | STATE OF MICHIGAN, DEPT OF TREASURY | $104,987.15 | $99,806.54 | $99,806.54 |
|  |  |  |  |  |
| Total Priority Claims Included in Settlement |  |  |  | $285,565.07 |



# Exhibit C

| | | | | | |
|---|---|---|---|---|---|
| Exhibit C | | | | | |
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Unsecured Amt** | |
| | | | | | |
| **Allowed Claims:** | | | | | |
| | | | | | |
| 4C FOODS CORP | | 8000070 | JEVIC TRANSPORTATION, INC. | $ | 33.00 |
| 501 HOES LANE, INC. | 241 | | JEVIC HOLDING CORP. | $ | 5,553.20 |
| A & S TRUCKING SERVICE INC | 514 | 8000110 | JEVIC TRANSPORTATION, INC. | $ | 450.00 |
| A 1 PLASTICS | | 8000120 | JEVIC TRANSPORTATION, INC. | $ | 64.81 |
| A EXCELLENCE TOWING CO | 500 | 8000220 | JEVIC TRANSPORTATION, INC. | $ | 3,918.92 |
| A2Z FREIGHT SERVICES | | 8000350 | JEVIC TRANSPORTATION, INC. | $ | 813.36 |
| AABBOTT MECHELLI TECHNOLOGIES | | 8000360 | JEVIC TRANSPORTATION, INC. | $ | 868.70 |
| AARON DAVIS | | 8000370 | JEVIC TRANSPORTATION, INC. | $ | 850.00 |
| A-B TRUCK SERVICE, INC. | | 8000340 | JEVIC TRANSPORTATION, INC. | $ | 2,000.00 |
| ABCO FIRE PROTECTION INC | | 8000410 | JEVIC TRANSPORTATION, INC. | $ | 204.90 |
| ABEST SCALE REPAIR & SERVICE | 730 | 8000420 | JEVIC TRANSPORTATION, INC. | $ | 1,986.50 |
| ABRAHAM, JOHN R | 1016 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 6,222.89 |
| AB'S 24 HOUR ROAD SERVICE | | 8000380 | JEVIC TRANSPORTATION, INC. | $ | 1,214.33 |
| ABSOLUTE BEST CLEANING SERVICE | 999 | 8000450 | JEVIC TRANSPORTATION, INC. | $ | 16,047.00 |
| ACCESS INTELLIGENCE LLC | | 8000480 | JEVIC TRANSPORTATION, INC. | $ | 1,500.00 |
| ACCOUNTEMPS DIV. OF ROBERT HALF INT. | 1127 | 8000500 | JEVIC TRANSPORTATION, INC. | $ | 8,339.76 |
| ACCURATE LIFT TRUCK INC | | 8000520 | JEVIC TRANSPORTATION, INC. | $ | 13,459.84 |
| ACCU-TECH POLYMERS INC. | | 8000510 | JEVIC TRANSPORTATION, INC. | $ | 614.00 |
| ACE EXTERMINATING CO | | 8000540 | JEVIC TRANSPORTATION, INC. | $ | 276.47 |
| ACHESON COLLOIDS | | 8000580 | JEVIC TRANSPORTATION, INC. | $ | 432.10 |
| ACHESON COLLOIDS CO | | 8000600 | JEVIC TRANSPORTATION, INC. | $ | 122.10 |
| ACTION CALENDAR & SPECIALTY CO., INC. | 211 | 8021390 | JEVIC TRANSPORTATION, INC. | $ | 91,318.52 |
| ADP INC | | 8000670 | JEVIC TRANSPORTATION, INC. | $ | 9,091.42 |
| ADT SECURITY SYSTEMS | | 8000680 | JEVIC TRANSPORTATION, INC. | $ | 574.16 |
| ADVANCED TRANSPORTATION SYSTEM | | 8000740 | JEVIC TRANSPORTATION, INC. | $ | 440.71 |
| ADVANTAGE MILLWORK COMPANY | | 8000760 | JEVIC TRANSPORTATION, INC. | $ | 538.02 |
| ADVOCATE OCCUPATIONAL HEALTH | 988 | 8000770 | JEVIC TRANSPORTATION, INC. | $ | 8,878.81 |
| AEP INDUSTRIES | | 8000780 | JEVIC TRANSPORTATION, INC. | $ | 796.20 |
| AFA PROTECTIVE SYSTEMS INC | | 8000800 | JEVIC TRANSPORTATION, INC. | $ | 2,003.04 |
| AGSON INC. | | 8000830 | JEVIC TRANSPORTATION, INC. | $ | 3,294.19 |
| AID RADIATOR COMP-CORE DIST | | 8000840 | JEVIC TRANSPORTATION, INC. | $ | 1,420.72 |
| AIN PLASTICS | | 8000860 | JEVIC TRANSPORTATION, INC. | $ | 169.12 |
| AIR PRODUCTS | | 8000920 | JEVIC TRANSPORTATION, INC. | $ | 957.81 |
| AIR PRODUCTS & CHEMICAL INC. | | 8000960 | JEVIC TRANSPORTATION, INC. | $ | 813.13 |
| AIRGAS NATIONAL WELDERS | | 8001000 | JEVIC TRANSPORTATION, INC. | $ | 315.66 |
| AIRGAS SAFETY | 715 | 8001010 | JEVIC HOLDING CORP. | $ | 1,775.12 |
| AIR-TEMP MECHANICAL INC | | 8000980 | JEVIC TRANSPORTATION, INC. | $ | 1,923.97 |
| AJ GATES COMPANY INC | | 8001030 | JEVIC TRANSPORTATION, INC. | $ | 30,756.63 |
| AKZO NOBEL | | 8001040 | JEVIC TRANSPORTATION, INC. | $ | 75.00 |
| ALLEGHENY WAREHOUSE AND CARTAG | 844 | 8001190 | JEVIC TRANSPORTATION, INC. | $ | 12,336.99 |
| ALLEN LUND COMPANY | 239 | | JEVIC TRANSPORTATION, INC. | $ | 5,812.50 |
| ALL-PAK, INC | 17 | | JEVIC HOLDING CORP. | $ | 4,023.94 |
| ALLSTATE INS. | 447 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 1,100.00 |
| ALLSTATE INSURANCE COMPANY A/S/O | 242 | | JEVIC HOLDING CORP. | $ | 4,153.11 |
| ALPHA EXPRESS | 928 | 8001250 | JEVIC TRANSPORTATION, INC. | $ | 1,350.00 |
| ALTAIRE PHARMACEUTICALS INC | | 8001260 | JEVIC TRANSPORTATION, INC. | $ | 20.16 |
| ALYAN PUMP COMPANY | | 8001310 | JEVIC TRANSPORTATION, INC. | $ | 466.67 |
| AMBASSADOR FIND FOODS / QZINA SPECIALTY | 153 | | JEVIC HOLDING CORP. | $ | 689.75 |
| AMBUCARE CLINIC | | 8001330 | JEVIC TRANSPORTATION, INC. | $ | 55.00 |
| AMCOR FLEXIBLES | | 8001340 | JEVIC TRANSPORTATION, INC. | $ | 2,223.00 |
| AMERENCILCO | 470 | | JEVIC HOLDING CORP. | $ | 10,206.28 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 159 | 8001420 | JEVIC HOLDING CORP. | $ | 512,783.34 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 160 | | Multiple Debtors | $ | 26,670.67 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 161 | | Multiple Debtors | $ | 13,280.81 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 162 | | JEVIC HOLDING CORP. | $ | 2,172.77 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 163 | | Multiple Debtors | $ | 1,916.71 |
| AMERICAN EXPRESS TRAVEL RELATED SVCS CO | 164 | | Multiple Debtors | $ | 785.43 |
| AMERICAN ROLAND FOOD CORP | | 8001490 | JEVIC TRANSPORTATION, INC. | $ | 71.50 |
| AMERICAN TRUCKING ASSOCIATIONS | | 8001510 | JEVIC TRANSPORTATION, INC. | $ | 2,000.00 |
| AMERICANA TIRE & WHEEL | | 8001530 | JEVIC TRANSPORTATION, INC. | $ | 54.75 |
| ANDERSON FORKLIFT SUPPLY INC | | 8001680 | JEVIC TRANSPORTATION, INC. | $ | 36.93 |
| ANDERSON UNIFORM CO INC | | 8001690 | JEVIC TRANSPORTATION, INC. | $ | 44.70 |
| ANGELA REID | | 8001710 | JEVIC TRANSPORTATION, INC. | $ | 114.12 |
| ANOFOL INTERNATIONAL | 1003 | | JEVIC HOLDING CORP. | $ | 18,450.00 |

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| ANOFOL INTERNATIONAL INC | 118 | | JEVIC HOLDING CORP. | $ 8,290.80 |
| APPLE TRAILER RENTAL CORP. | | 8001820 | JEVIC TRANSPORTATION, INC. | $ 242.55 |
| AQUARION WATER COMPANY OF MA | | 8001880 | JEVIC TRANSPORTATION, INC. | $ 453.35 |
| ARBILL | 444 | 8001910 | JEVIC HOLDING CORP. | $ 778.90 |
| ARBITRATION FORUM INC | | 8001920 | JEVIC TRANSPORTATION, INC. | $ 100.00 |
| ARBOR DAY FOUNDATION | | 8001930 | JEVIC TRANSPORTATION, INC. | $ 100.00 |
| ARKEMA INC | 922 | 8001960 | JEVIC TRANSPORTATION, INC. | $ 422.93 |
| ARROWHEAD | | 8001990 | JEVIC TRANSPORTATION, INC. | $ 26.84 |
| ART INSTITUTES INT'L MINNESOTA | | 8002020 | JEVIC TRANSPORTATION, INC. | $ 9,711.01 |
| ARTUR EXPRESS INC | 638 | 8002060 | JEVIC TRANSPORTATION, INC. | $ 1,900.00 |
| ASCENDIA BRANDS-LANDER | | 8002090 | JEVIC TRANSPORTATION, INC. | $ 650.16 |
| ASHLAND DISTRIBUTION CO | | 8002110 | JEVIC TRANSPORTATION, INC. | $ 187.86 |
| ASSOCIATED FUEL SYSTEM INC | | 8002140 | JEVIC TRANSPORTATION, INC. | $ 113.46 |
| AT&T | 60 | 8002200 | JEVIC HOLDING CORP. | $ 3,418.69 |
| AT&T CORP. | 105 | | JEVIC HOLDING CORP. | $ 63,488.17 |
| AT&T GLOBAL SERVICES | 58 | 2160, 8002170, 8002 | Multiple Debtors | $ 17,412.14 |
| ATL COURIER INC | | 8002260 | JEVIC TRANSPORTATION, INC. | $ 5,785.34 |
| ATLANTA COFFEE TIME | 725 | 8002280 | JEVIC TRANSPORTATION, INC. | $ 251.79 |
| ATLANTA FREIGHTLINER | 662 | 8002290 | NO DEBTOR ASSERTED BY CREDITOR | $ 1,350.47 |
| ATLANTA SCALES INC | | 8002300 | JEVIC TRANSPORTATION, INC. | $ 1,242.34 |
| ATLANTA TRAILER SERVICE | 635 | 8002320 | JEVIC TRANSPORTATION, INC. | $ 1,823.08 |
| ATLANTECH DISTRIBUTION | | 8002330 | JEVIC TRANSPORTATION, INC. | $ 101.76 |
| ATLANTIC COAST TRAILER SALES | | 8002340 | JEVIC TRANSPORTATION, INC. | $ 9,124.78 |
| ATLANTIC SWEETNER | | 8002380 | JEVIC TRANSPORTATION, INC. | $ 72.81 |
| ATLAS OIL COMPANY | 998 | 8002390 | JEVIC TRANSPORTATION, INC. | $ 70,167.76 |
| AUTOMATION AIDS INC | | 8002430 | JEVIC TRANSPORTATION, INC. | $ 7,130.90 |
| AUTOMOTIVE RENTALS INC | 983 | 8002440 | JEVIC TRANSPORTATION, INC. | $ 47,598.97 |
| AVERY WEIGH-TRONIX INC | 572 | 8002480 | NO DEBTOR ASSERTED BY CREDITOR | $ 911.50 |
| B & K EQUIPMENT COMPANY | 659 | 8002500 | JEVIC TRANSPORTATION, INC. | $ 676.97 |
| B & T PUMP AND LUBE SERVICE | | 8002510 | JEVIC TRANSPORTATION, INC. | $ 2,350.27 |
| B&C FIRE EQUIPMENT INC | | 8002650 | JEVIC TRANSPORTATION, INC. | $ 88.92 |
| B&G FOODS INC. | | 8002660 | JEVIC TRANSPORTATION, INC. | $ 430.00 |
| B&W TRAILER SERVICES, INC. | | 8002670 | JEVIC TRANSPORTATION, INC. | $ 1,449.83 |
| B2 PROMOTIONS, INC. | 804 | 8002680 | JEVIC TRANSPORTATION, INC. | $ 1,574.76 |
| BAKKER SERVICE INC | | 8002710 | JEVIC TRANSPORTATION, INC. | $ 392.66 |
| BALL & BALL TRUCKING CO., INC. | | 8002720 | JEVIC TRANSPORTATION, INC. | $ 7,413.17 |
| BALLARD SPAHR ANDREWS INGERSOL, LLP | 129 | 8002730 | JEVIC TRANSPORTATION, INC. | $ 3,380.23 |
| BARASSATIAN & ASSOCIATES, INC | 35 | 8002750 | JEVIC TRANSPORTATION, INC. | $ 71,673.00 |
| BARCELONA NUT CO | | 8002770 | JEVIC TRANSPORTATION, INC. | $ 779.95 |
| BAREFOOT OIL CO OF CONCORD | 47 | | JEVIC TRANSPORTATION, INC. | $ 328.26 |
| BARTH, SULLIVAN & BEHR, LLP | 728 | | JEVIC HOLDING CORP. | $ 2,289.71 |
| BARTH, SULLIVAN BEHR | | 8002830 | JEVIC TRANSPORTATION, INC. | $ 1,208.00 |
| BAY JOHNSON'S FIREPLACE &PATIO | | 8002920 | JEVIC TRANSPORTATION, INC. | $ 191.26 |
| BAYER MATERIAL SCIENCE | | 8002950 | JEVIC TRANSPORTATION, INC. | $ 7,680.00 |
| BC TOOL SERVICES | | 8002980 | JEVIC TRANSPORTATION, INC. | $ 798.88 |
| BEHNKE INC | 550 | 8003000 | JEVIC TRANSPORTATION, INC. | $ 550.00 |
| BELTS INTERMODAL CORP | | 8003040 | JEVIC TRANSPORTATION, INC. | $ 40.00 |
| BERRIOS, NAYSHA | 1153 | | JEVIC HOLDING CORP. | $ - |
| BERRIOS, NAYSHA, ADMINISTRATRIX OF THE | 1152 | | JEVIC HOLDING CORP. | $ - |
| BESTDRIVERSJOBS.COM | | 8003140 | JEVIC TRANSPORTATION, INC. | $ 500.00 |
| BETHESDA HEALTHCARE INC | | 8003150 | JEVIC TRANSPORTATION, INC. | $ 698.00 |
| BEVCO SERVICE INC | 939 | 8003180 | JEVIC TRANSPORTATION, INC. | $ 2,064.03 |
| BILLOWS ELECTRIC SUPPLY CO | | 8003230 | JEVIC TRANSPORTATION, INC. | $ 1,746.75 |
| BINGHAMTON-ITHACA EXPRESS INC | | 8003240 | JEVIC TRANSPORTATION, INC. | $ 2,774.00 |
| BLACK & DECKER | | 8003290 | JEVIC TRANSPORTATION, INC. | $ 2,940.00 |
| BLAINE BROTHER | 649 | 8003320 | JEVIC TRANSPORTATION, INC. | $ 3,258.41 |
| BLAKE HARDWARE & MILL SUPPLY | 830 | 8003330 | JEVIC TRANSPORTATION, INC. | $ 1,497.11 |
| BLUE BEACON INTERNATIONAL INC | 22 | 8003340 | JEVIC TRANSPORTATION, INC. | $ 1,592.71 |
| BNP MEDIA | 190 | 8003360 | JEVIC TRANSPORTATION, INC. | $ 18,000.00 |
| BOGERS CORP | | 8003370 | JEVIC TRANSPORTATION, INC. | $ 812.57 |
| BONDO CORPORATION | | 8003450 | JEVIC TRANSPORTATION, INC. | $ 3,371.27 |
| BONNIE SPEED DELIVERY INC | | 8003460 | JEVIC TRANSPORTATION, INC. | $ 3,699.91 |
| BORDEN, BRUCE | 803 | | NO DEBTOR ASSERTED BY CREDITOR | $ - |
| BOTTOMS UP | | 8003500 | JEVIC TRANSPORTATION, INC. | $ 480.00 |
| BRAINTREE LABS INC | | 8003570 | JEVIC TRANSPORTATION, INC. | $ 403.38 |
| BREAKER GROUP, INC. | 710 | | NO DEBTOR ASSERTED BY CREDITOR | $ 24,000.00 |

| Exhibit C | | | | |
|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | |
| Allowed Unsecured Claims FINAL | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Unsecured Amt** |
| BROADVIEW NETWORKS | 224 | | JEVIC HOLDING CORP. | $ 2,008.05 |
| BROWN PAPER GOODS | | 8003660 | JEVIC TRANSPORTATION, INC. | $ 131.52 |
| BRYAN CAVE LLP | | 8003710 | JEVIC TRANSPORTATION, INC. | $ 26,973.29 |
| BULLEN CHEMICAL | | 8003740 | JEVIC TRANSPORTATION, INC. | $ 711.00 |
| BURLEIGH'S PAINT AND PAPER INC | | 8003770 | JEVIC TRANSPORTATION, INC. | $ 164.40 |
| BUSINESS FUNDING CORPORATION | 30 | 8003820 | JEVIC TRANSPORTATION, INC. | $ 5,055.00 |
| BUTLER-STARKS, CLARICE L | 1050 | | Multiple Debtors | $ 1,200.00 |
| C & M FORWARDING CO INC | | 8003860 | JEVIC TRANSPORTATION, INC. | $ 3,115.15 |
| C H ROBINSON - ROSS DIVISION | | 8003930 | JEVIC TRANSPORTATION, INC. | $ 101.00 |
| C R T S INC | | 8003990 | JEVIC TRANSPORTATION, INC. | $ 544.94 |
| C S TRUCK & TRAILER REPAIR SER | 908 | | NO DEBTOR ASSERTED BY CREDITOR | $ 2,368.31 |
| C&L TOWING SERVICE, INC. | | 8004010 | JEVIC TRANSPORTATION, INC. | $ 641.50 |
| CAIN'S RAPID ROOTER INC | 526 | 8004030 | JEVIC TRANSPORTATION, INC. | $ 923.50 |
| CAL EAST NAT, LLC | 479 | 8004060, 8004070 | JEVIC TRANSPORTATION, INC. | $ 25,615.00 |
| CALI CHEM, INC. | | 8004110 | JEVIC TRANSPORTATION, INC. | $ 68.00 |
| CAL-LIFT INC | | 8004050 | JEVIC TRANSPORTATION, INC. | $ 6,355.13 |
| CAMBREX CHARLES CITY INC | | 8004210 | JEVIC TRANSPORTATION, INC. | $ 563.21 |
| CAMPBELL - BROWN INC | | 8004240 | JEVIC TRANSPORTATION, INC. | $ 3,355.26 |
| CAMPBELL FREIGHTLINER | 502 | 8004250 | JEVIC TRANSPORTATION, INC. | $ 30,902.62 |
| CANADA BORDER SERVICES AGENCY | | 8004260 | JEVIC TRANSPORTATION, INC. | $ 30.00 |
| CANUS EQ CORP | | 8004300 | JEVIC TRANSPORTATION, INC. | $ 125.00 |
| CAPITAL TRANSPORTATION LOGISTI | | 8004320 | JEVIC TRANSPORTATION, INC. | $ 1,675.26 |
| CAPITOL TRANSPORTATION SOLUTIO | | 8004330 | JEVIC TRANSPORTATION, INC. | $ 1,023.96 |
| CAREERBUILDER, LLC | 173 | 8004400 | JEVIC HOLDING CORP. | $ 7,768.50 |
| CARLTON INDUSTRIES, L.P. | | 8004480 | JEVIC TRANSPORTATION, INC. | $ 65.95 |
| CARLYLE COCOA COMPANY | | 8004500 | JEVIC TRANSPORTATION, INC. | $ 130.00 |
| CAROLINA CUTLERY | 647 | 8004520 | JEVIC TRANSPORTATION, INC. | $ 150.00 |
| CAROLINA DOOR SPECIALTIES INC | 530 | 8004530 | JEVIC TRANSPORTATION, INC. | $ 3,491.63 |
| CAROLINA INDUSTRIAL EQUIPMENT | 729 | 8004540 | JEVIC TRANSPORTATION, INC. | $ 682.27 |
| CAROLINA KOOLERS | | 8004550 | JEVIC TRANSPORTATION, INC. | $ 1,023.22 |
| CAROLINA TRACTOR | 622 | 8004560 | JEVIC TRANSPORTATION, INC. | $ 2,370.34 |
| CARON AUTO WORKS | | 8004570 | JEVIC TRANSPORTATION, INC. | $ 754.07 |
| CARR ELECTRIC HEATING &COOLING | | 8004600 | JEVIC TRANSPORTATION, INC. | $ 7,339.80 |
| CARRY ON TRUCKING INC | 671 | 8004620 | JEVIC TRANSPORTATION, INC. | $ 750.00 |
| CASS INFORMATION SYSTEMS, INC. | 247 | | JEVIC HOLDING CORP. | $ 5,666.37 |
| CATERING BY STEVE'S | | 8004740 | JEVIC TRANSPORTATION, INC. | $ 613.60 |
| CATERPILLAR FINANCIAL SERVICES CORP. | 1021 | | JEVIC TRANSPORTATION, INC. | $ 43,776.09 |
| CATERPILLAR FINANCIAL SERVICES CORP. DBA | 1135 | | JEVIC TRANSPORTATION, INC. | $ 10,000.00 |
| CATERPILLAR FINANCIAL SERVICES CORP. DBA | 1136 | | JEVIC HOLDING CORP. | $ 10,000.00 |
| CAVENDISH FARMS AKA MIDLAND TRANSPORT | 94 | | JEVIC HOLDING CORP. | $ 94,857.61 |
| CDW CORPORATION | 78 | | JEVIC TRANSPORTATION, INC. | $ 1,452.88 |
| CDW DIRECT LLC | | 8004750 | JEVIC TRANSPORTATION, INC. | $ 469.18 |
| CDW OF VIRGINIA INC | 713 | 8004760 | JEVIC TRANSPORTATION, INC. | $ 18,022.39 |
| CE DE CANDY | | 8004770 | JEVIC TRANSPORTATION, INC. | $ 68.46 |
| CENTRAL FREIGHT LINES | 192 | 8004890 | JEVIC TRANSPORTATION, INC. | $ 345,481.61 |
| CENTRAL WHSE SUPPLY | | 8004920 | JEVIC TRANSPORTATION, INC. | $ 27.33 |
| CENTRAL WIRE | | 8004930 | JEVIC TRANSPORTATION, INC. | $ 928.81 |
| CERASIS | | 8004970 | JEVIC TRANSPORTATION, INC. | $ 643.47 |
| CERVANTES, JOHNNY | 827 | 8014440 | JEVIC TRANSPORTATION, INC. | $ 4,338.96 |
| CH ROBINSON | | 8005000 | JEVIC TRANSPORTATION, INC. | $ 322.18 |
| CH ROBINSON | | 8005010 | JEVIC TRANSPORTATION, INC. | $ 279.59 |
| CHALLENGER FREIGHT SYSTEMS INC | | 8005020 | JEVIC TRANSPORTATION, INC. | $ 4,881.61 |
| CHAMBERLAIN EXTERMINATORS | 773 | 8005030 | JEVIC TRANSPORTATION, INC. | $ 240.00 |
| CHAMPION CHEMICAL COMPANY | | 8005050 | JEVIC TRANSPORTATION, INC. | $ 795.14 |
| CHARKIT CHEMICAL CORPORATION | | 8005080 | JEVIC TRANSPORTATION, INC. | $ 367.70 |
| CHARLIE'S TOWING SERVICES INC | | 8005120 | JEVIC TRANSPORTATION, INC. | $ 360.97 |
| CHEETAH SOFTWARE SYSTEMS, INC. | 233 | | JEVIC HOLDING CORP. | $ 1,116,016.04 |
| CHEMSOL | | 8005240 | JEVIC TRANSPORTATION, INC. | $ 344.85 |
| CHEMTREAT INC | | 8005260 | JEVIC TRANSPORTATION, INC. | $ 231.86 |
| CHESAPEAKE PRINTING & PKG | 742 | 8005320 | JEVIC TRANSPORTATION, INC. | $ 569.60 |
| CHEVRON PRODUCTS COMPANY | | 8005330 | JEVIC TRANSPORTATION, INC. | $ 37,756.08 |
| CHICAGO BEARS FOOTBALL CLUB | | 8005360 | JEVIC TRANSPORTATION, INC. | $ 6,104.00 |
| CHICAGO TIRE INC | | 8005370 | JEVIC TRANSPORTATION, INC. | $ 2,765.78 |
| CHICAGOLAND QUAD CITIES EXP | | 8005390 | JEVIC TRANSPORTATION, INC. | $ 84.00 |
| CHIP CASSIDY | 930 | 8005400 | JEVIC TRANSPORTATION, INC. | $ 1,249.80 |
| CHRISTINA KLEIN | | 8005410 | JEVIC TRANSPORTATION, INC. | $ 273.90 |

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| CICONTE & WASSERMAN, LLC | | 8005440 | JEVIC TRANSPORTATION, INC. | $ 47.00 |
| CINCINNATI BELL TELEPHONE | 29 | 8005450 | JEVIC HOLDING CORP. | $ 4,081.98 |
| CINERGY/CG&E | | 8005460 | JEVIC TRANSPORTATION, INC. | $ 3,975.75 |
| CINTAS CORP #061&#36 | | 8005470 | JEVIC TRANSPORTATION, INC. | $ 7,733.22 |
| CIRCLE K SERVICE | 89 | 8005490 | JEVIC HOLDING CORP. | $ 274.03 |
| CIT TECHNOLOGY FINANCING SERVICES, INC. | 96 | | JEVIC TRANSPORTATION, INC. | $ 83,428.48 |
| CIT TECHNOLOGY FINANCING SERVICES, INC. | 7 | | JEVIC TRANSPORTATION, INC. | $ 41,947.69 |
| CIT TECHNOLOGY FINANCING SERVICES, INC. | 6 | 8005510 | JEVIC TRANSPORTATION, INC. | $ 10,494.27 |
| CITY AUTO RADIATOR INC | | 8005530 | JEVIC TRANSPORTATION, INC. | $ 4,675.31 |
| CITY OF BROOK PARK | | 8005550 | JEVIC TRANSPORTATION, INC. | $ 375.00 |
| CITY OF CONCORD COLLECTIONS | | 8005600 | JEVIC TRANSPORTATION, INC. | $ 2,393.20 |
| CITY OF MANCHESTER OVB | | 8005630 | JEVIC TRANSPORTATION, INC. | $ 20.00 |
| CITY OF ONTARIO | 450 | 8005650 | JEVIC HOLDING CORP. | $ 1,758.74 |
| CLARION HOTEL | | 8005780 | JEVIC TRANSPORTATION, INC. | $ 5,858.10 |
| CLARK, RUSSELL L | 1041 | | JEVIC HOLDING CORP. | $ 5,599.32 |
| CLASSADRIVERS | | 8005800 | JEVIC TRANSPORTATION, INC. | $ 1,000.00 |
| CLAYTON COUNTY WATER AUTHORITY | 498 | 8005820 | NO DEBTOR ASSERTED BY CREDITOR | $ 2,006.51 |
| CLEAN CARE SERVICES LLC | 871 | 8005850 | JEVIC TRANSPORTATION, INC. | $ 3,225.00 |
| CLEMENT COMMUNICATIONS INC | | 8005870 | JEVIC TRANSPORTATION, INC. | $ 561.67 |
| CLEVELAND CHIROPRACTIC INC | | 8005890 | JEVIC TRANSPORTATION, INC. | $ 416.00 |
| CMC-NORTHEAST PHY. NETWORK INC | | 8005930 | JEVIC TRANSPORTATION, INC. | $ 2,969.00 |
| COGNIS CORP | | 8006020 | JEVIC TRANSPORTATION, INC. | $ 39.66 |
| COGNIS CORPORATION | | 8006040 | JEVIC TRANSPORTATION, INC. | $ 2,259.23 |
| COLLINS & AIKMAN FLOORCOVERING | | 8006060 | JEVIC TRANSPORTATION, INC. | $ 300.04 |
| COLLINS INK | | 8006070 | JEVIC TRANSPORTATION, INC. | $ 2,972.27 |
| COLORCRAFT SIGN COMPANY | | 8006090 | JEVIC TRANSPORTATION, INC. | $ 125.19 |
| COLUMBIAN DISTRIBUTION SERVICE | 833 | 8006110 | JEVIC TRANSPORTATION, INC. | $ 26,434.82 |
| COMBINED SALES CO | 556 | 8006140 | JEVIC TRANSPORTATION, INC. | $ 3,442.70 |
| COMCAST CABLEVISION | | 8006150 | JEVIC TRANSPORTATION, INC. | $ 162.36 |
| COMDATA NETWORK, INC. | 130 | 8006160 | JEVIC TRANSPORTATION, INC. | $ 26,329.99 |
| COMFORT INN | | 8006180 | JEVIC TRANSPORTATION, INC. | $ 177.53 |
| COMFORT INN & SUITES | | 8006190 | JEVIC TRANSPORTATION, INC. | $ 2,665.60 |
| COMFORT INN CONCORD | 529 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,204.41 |
| COMMERCIAL SNOW CONTROL INC | | 8006250 | JEVIC TRANSPORTATION, INC. | $ 7,060.00 |
| COMMERCIAL TRANS. ADJ. SVC. | | 8006260 | JEVIC TRANSPORTATION, INC. | $ - |
| COMMERCIAL VEHICLE SAFETY ALLI | | 8006270 | JEVIC TRANSPORTATION, INC. | $ 1,049.67 |
| COMMFLEET INC | | 8006280 | JEVIC TRANSPORTATION, INC. | $ 2,671.31 |
| COMMONWEALTH OF MASSACHUSETTS | 93 | | Multiple Debtors | $ 10,172.32 |
| COMMONWEALTH OF MASSACHUSETTS | 477 | | JEVIC TRANSPORTATION, INC. | $ 65.48 |
| COMMUNITY COFFEE COMPANY LLC | | 8006330 | JEVIC TRANSPORTATION, INC. | $ 153.25 |
| COMP MANAGEMENT, INC. | 609 | 8006340 | JEVIC TRANSPORTATION, INC. | $ 11,581.00 |
| COMPUNET CREDIT SERVICES, INC | | 8006380 | JEVIC TRANSPORTATION, INC. | $ 5,191.42 |
| CONCENTRA MEDICAL CENTERS | 789 | 8006420, 8006430 | NO DEBTOR ASSERTED BY CREDITOR | $ 1,344.47 |
| CONECTIV ENERGY SUPPLY, INC. | 171 | 8019960 | JEVIC TRANSPORTATION, INC. | $ 78,138.01 |
| CONTINENTAL AMERICAN INS. CO. | | 8006490 | JEVIC TRANSPORTATION, INC. | $ 10,993.32 |
| CONTINENTAL SEASONING INC | | 8006540 | JEVIC TRANSPORTATION, INC. | $ 18.90 |
| CON-WAY TRUCKLOAD INC | 634 | 8006400 | JEVIC TRANSPORTATION, INC. | $ 14,340.88 |
| COOK COUNTY COLLECTOR | | 8006570 | JEVIC TRANSPORTATION, INC. | $ 163,661.35 |
| CORNETT S TRUCK-N-TRAILER REPS | | 8006660 | JEVIC TRANSPORTATION, INC. | $ 829.45 |
| CORPORATE EXPRESS | | 8006670 | JEVIC TRANSPORTATION, INC. | $ 98.35 |
| CORPORATE EXPRESS DOC & PRINT | | 8006680 | JEVIC TRANSPORTATION, INC. | $ 12,261.33 |
| CORPORATE TELECOM SOLUTIONS | | 8006690 | JEVIC TRANSPORTATION, INC. | $ 32.43 |
| COSTELLO'S MOBILE TRUCK SVC. | | 8006720 | JEVIC TRANSPORTATION, INC. | $ 169.65 |
| COVERALL NORTH AMERICA, INC. | | 8006750 | JEVIC TRANSPORTATION, INC. | $ 1,017.55 |
| CRAWFORD & COMPANY | 996 | | JEVIC HOLDING CORP. | $ - |
| CREATIVE LOGISTICS SOLUTIONS | | 8006810 | JEVIC TRANSPORTATION, INC. | $ 1,049.88 |
| CREDIT CLEARING HOUSE INC | | 8006820 | JEVIC TRANSPORTATION, INC. | $ 1,256.40 |
| CRESCENT & SPRAGUE SUPPLY | | 8006830 | JEVIC TRANSPORTATION, INC. | $ 63.25 |
| CRESENT CARDBOARD | | 8006850 | JEVIC TRANSPORTATION, INC. | $ 4,205.04 |
| CROSBY DIESEL SERVICES | | 8006930 | JEVIC TRANSPORTATION, INC. | $ 7,738.75 |
| CROWN CORK DAYTON | | 8006990 | JEVIC TRANSPORTATION, INC. | $ 40.01 |
| CRTS, INC. | 522 | | JEVIC TRANSPORTATION, INC. | $ 544.94 |
| CRUCIBLE CHEMICAL COMPANY | | 8007010 | JEVIC TRANSPORTATION, INC. | $ 546.00 |
| CS TRAILER REPAIR SVC., INC. | | 8007030 | JEVIC TRANSPORTATION, INC. | $ 1,065.84 |
| CS TRUCK & TRAILER REPAIR SERV | | 8007040 | JEVIC TRANSPORTATION, INC. | $ 1,302.47 |
| CUMMINS ATLANTIC INC | | 8007070 | JEVIC TRANSPORTATION, INC. | $ 7,235.38 |

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| CUMMINS CENTRAL POWER | 774 | 8007080 | JEVIC TRANSPORTATION, INC. | $ 1,759.79 |
| CUMMINS NORTHEAST INC | | 8007090 | JEVIC TRANSPORTATION, INC. | $ 571.46 |
| CUMMINS POWER SOUTH, LLC | | 8007100 | JEVIC TRANSPORTATION, INC. | $ 621.82 |
| CUMMINS POWER SYSTEMS INC | | 8007110 | JEVIC TRANSPORTATION, INC. | $ 70,906.29 |
| CUMMINS/ONAN NORTHERN ILLINOIS | | 8007120 | JEVIC TRANSPORTATION, INC. | $ 7,514.46 |
| CURVED GLASS DISTRIBUTORS, INC | | 8007140 | JEVIC TRANSPORTATION, INC. | $ 9,559.00 |
| CUSTARD INSURANCE ADJUSTERS, INC. | 430 | 8007150 | JEVIC TRANSPORTATION, INC. | $ 3,706.43 |
| CUYAHOGA COUNTY TREASURER | 230 | | JEVIC HOLDING CORP. | $ 78.49 |
| CYTEC INDUSTRIES INC | | 8007280 | JEVIC TRANSPORTATION, INC. | $ 433.54 |
| D W L IND WINCO | | 8007390 | JEVIC TRANSPORTATION, INC. | $ 143.44 |
| DAC SERVICES | | 8007400 | JEVIC TRANSPORTATION, INC. | $ 175.00 |
| DAIMLER TRUCKS NORTH AMERICA LLC | 480 | 8007420 | JEVIC TRANSPORTATION, INC. | $ 87,298.07 |
| DANISE & ASSOCIATES | | 8007450 | JEVIC TRANSPORTATION, INC. | $ 99.12 |
| DATA2 LOGISTICS | | 8007490 | JEVIC TRANSPORTATION, INC. | $ 732.98 |
| DAVE MC DOWELL'S PURE PRESSURE | 856 | 8007530 | JEVIC TRANSPORTATION, INC. | $ 542.72 |
| DAVID BEINER | | 8007560 | JEVIC TRANSPORTATION, INC. | $ 1,558.41 |
| DAVID WILSON ASSOCIATES, INC. | | 8007580 | JEVIC TRANSPORTATION, INC. | $ 2,521.30 |
| DAVIS, RICHARD A | 1037 | | JEVIC HOLDING CORP. | $ 3,822.88 |
| DAYS INN | | 8007630 | JEVIC TRANSPORTATION, INC. | $ 501.78 |
| DAYS INN CINCINNATI/SHARONVILL | | 8007640 | JEVIC TRANSPORTATION, INC. | $ 34.80 |
| DAYS INN CLEVELAND AIRPORT | 243 | | JEVIC HOLDING CORP. | $ 2,503.76 |
| DEARBORN COUNTY HOSPITAL | | 8007670 | JEVIC TRANSPORTATION, INC. | $ 624.60 |
| DEARTH, JERRY L | 919 | | JEVIC TRANSPORTATION, INC. | $ 15,753.29 |
| DEB SBS INC. | | 8007700 | JEVIC TRANSPORTATION, INC. | $ 182.04 |
| DEER PARK SPRING WATER | | 8007720 | JEVIC TRANSPORTATION, INC. | $ 11.99 |
| DEGROATE PETROLEUM SERIVCE INC | | 8007730 | JEVIC TRANSPORTATION, INC. | $ 571.34 |
| DEGUSSA | | 8007740 | JEVIC TRANSPORTATION, INC. | $ 72.84 |
| DELAWARE VALLEY PACKAGING GROUP | 524 | 8007820 | JEVIC TRANSPORTATION, INC. | $ 8,142.49 |
| DELL MARKETING | | 8007840 | JEVIC TRANSPORTATION, INC. | $ 122,869.17 |
| DELTA APPAREL | | 8007860 | JEVIC TRANSPORTATION, INC. | $ 432.00 |
| DELVAL VALLEY MESSENGER | 689 | 8007900 | JEVIC TRANSPORTATION, INC. | $ 225.00 |
| DEMMING'S TRUCK SERVICE, INC. | | 8007920 | JEVIC TRANSPORTATION, INC. | $ 2,561.30 |
| DENIZ METIN PISKIN | | 8007940 | JEVIC TRANSPORTATION, INC. | $ 1,073.27 |
| DENNIS, WANDA L | 624 | | NO DEBTOR ASSERTED BY CREDITOR | $ 111.04 |
| DEPARTMENT OF THE TREASURY | 466 | | JEVIC HOLDING CORP. | $ 97,469.93 |
| DETAMORE, WINSTON | 1015 | | NO DEBTOR ASSERTED BY CREDITOR | $ 15,936.00 |
| DHL EXPRESS (USA), INC. | 448 | 8008030 | JEVIC HOLDING CORP. | $ 1,923.40 |
| DIAMOND TRUCK & TRAILER | | 8008060 | JEVIC TRANSPORTATION, INC. | $ 240.69 |
| DICKIE, MCCAMEY & CHILCOTE, P.C. | 1098 | | JEVIC HOLDING CORP. | $ 1,063.88 |
| DIGITAL DESIGNS, INC. | | 8008080 | JEVIC TRANSPORTATION, INC. | $ 1,050.00 |
| DIRECTV INC | | 8008090 | JEVIC TRANSPORTATION, INC. | $ 210.61 |
| DISCOUNT AUTO GLASS | | 8008100 | JEVIC TRANSPORTATION, INC. | $ 4,050.00 |
| DISH NETWORK | | 8008110 | JEVIC TRANSPORTATION, INC. | $ 6.83 |
| DISTRIBUTED SYSTEMS SERVICES | 600 | | NO DEBTOR ASSERTED BY CREDITOR | $ 2,330.62 |
| DISTRIBUTION SOLUTIONS INC | | 8008130 | JEVIC TRANSPORTATION, INC. | $ 709.57 |
| DIVINE ENTERPRISES | 748 | 8008160 | JEVIC TRANSPORTATION, INC. | $ 3,850.00 |
| DIVITO, AL | 429 | | JEVIC TRANSPORTATION, INC. | $ 97,957.00 |
| DOCC INC. | | 8008200 | JEVIC TRANSPORTATION, INC. | $ 75.02 |
| DOCUSAFE DATA & RECORDING MGMT | | 8008210 | JEVIC TRANSPORTATION, INC. | $ 1,327.10 |
| DOHRN TRANSFER COMPANY | 3 | 8008220 | JEVIC TRANSPORTATION, INC. | $ 44,697.05 |
| DOLE PACKAGE FOODS | | 8008230 | JEVIC TRANSPORTATION, INC. | $ 1,545.50 |
| DOMINION EAST OHIO | | 8008270 | JEVIC TRANSPORTATION, INC. | $ 1,437.01 |
| DONALD O'NEAL | | 8008310 | JEVIC TRANSPORTATION, INC. | $ 13,441.82 |
| DOOR SPECIALTIES | | 8008340 | JEVIC TRANSPORTATION, INC. | $ 204.00 |
| DOVER CHEMICAL | | 8008400 | JEVIC TRANSPORTATION, INC. | $ 1,090.92 |
| DRAFFEN'S WAREHOUSE & STORAGE | | 8008480 | JEVIC TRANSPORTATION, INC. | $ 816.00 |
| DUBELL LUMBER COMPANY | 77 | 8008530 | JEVIC HOLDING CORP. | $ 2,270.75 |
| DUBOIS REGIONAL MEDICAL CENTER | | 8008540 | JEVIC TRANSPORTATION, INC. | $ 90.00 |
| DUGGAN'S TRUCKING INC | 637 | 8008560 | JEVIC TRANSPORTATION, INC. | $ 378.00 |
| DUKE ENERGY CAROLINAS | 71 | 8008570 | JEVIC HOLDING CORP. | $ 4,705.12 |
| DUKE ENERGY OHIO | 238 | | JEVIC HOLDING CORP. | $ 8,145.57 |
| DUNKIN DONUTS | 899 | 8008600 | JEVIC TRANSPORTATION, INC. | $ 4,475.00 |
| DUTCH AMERICAN FOODS INC | | 8008650 | JEVIC TRANSPORTATION, INC. | $ 227.52 |
| DYSART'S SERVICE INC | | 8008700 | JEVIC TRANSPORTATION, INC. | $ 72.71 |
| E F R FIRE EQUIPMENT CO INC | | 8008740 | JEVIC TRANSPORTATION, INC. | $ 158.00 |
| EAGAN TRANSPORT INC | 947 | 8008770 | JEVIC TRANSPORTATION, INC. | $ 2,050.17 |

Page 5 of 16

| | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| Exhibit C | | | | |
| Jevic Holding Corp., et al. | | | | |
| Allowed Unsecured Claims FINAL | | | | |
| **Claimant Name** | | | | |
| EAGLE TRAFFIC SERVICES | | 8008810 | JEVIC TRANSPORTATION, INC. | $ 2,007.17 |
| EAGLE TRUCK REBUILDERS | | 8008820 | JEVIC TRANSPORTATION, INC. | $ 6,001.87 |
| EARTHBORNE | | 8008830 | JEVIC TRANSPORTATION, INC. | $ 151.05 |
| EASTERN LIFT TRUCK | 714 | 8008850 | JEVIC TRANSPORTATION, INC. | $ 19,269.05 |
| EASY LIFT EQUIPMENT CO INC | | 8008880 | JEVIC TRANSPORTATION, INC. | $ 824.22 |
| ECHO GLOBAL LOGISTICS | | 8008890 | JEVIC TRANSPORTATION, INC. | $ 272.88 |
| ECOLAB INC | | 8008960 | JEVIC TRANSPORTATION, INC. | $ 512.45 |
| ECONOLODGE | | 8008990 | JEVIC TRANSPORTATION, INC. | $ 1,027.98 |
| ED PERRY AUTO PARTS | | 8009010 | JEVIC TRANSPORTATION, INC. | $ 155.52 |
| EHRLICH | | 8009050 | JEVIC TRANSPORTATION, INC. | $ 536.07 |
| ELLIOTT DIST CO | 785 | 8009170 | JEVIC TRANSPORTATION, INC. | $ - |
| EM GRUPPE MEDIA LLC | | 8009180 | JEVIC TRANSPORTATION, INC. | $ 500.00 |
| EMERGENCY FLEET SERVICE | | 8009210 | JEVIC TRANSPORTATION, INC. | $ 2,365.51 |
| EMERGENCY PROF SVCS, INC. | | 8009220 | JEVIC TRANSPORTATION, INC. | $ 669.00 |
| EMERSON ELECTRIC CO | | 8009230 | JEVIC TRANSPORTATION, INC. | $ 459.58 |
| ENDURA PRODUCTS | 657 | | NO DEBTOR ASSERTED BY CREDITOR | $ 83.55 |
| ENPRO SERVICES, INC. | 262 | | JEVIC HOLDING CORP. | $ 1,228.88 |
| ENTEC POLYMERS LLC | | 8009330 | JEVIC TRANSPORTATION, INC. | $ 24.45 |
| ENTERPRISE LEASING CO.-DETROIT | | 8009340 | JEVIC TRANSPORTATION, INC. | $ 158.95 |
| ENTERPRISEID, INC | | 8009350 | JEVIC TRANSPORTATION, INC. | $ 21.32 |
| ENTWISTLE, JOHN H | 868 | | NO DEBTOR ASSERTED BY CREDITOR | $ 4,266.00 |
| EO HABHEGGER CO INC | | 8009400 | JEVIC TRANSPORTATION, INC. | $ 235.39 |
| EPATH LEARNING INC | 792 | | JEVIC TRANSPORTATION, INC. | $ 3,375.00 |
| EPS/ENGINEERED POLYMER SOLUTION | | 8009420 | JEVIC TRANSPORTATION, INC. | $ 162.66 |
| EQUIPMENT TRADE SERVICE CO INC | | 8009430 | JEVIC TRANSPORTATION, INC. | $ 1,258.32 |
| ESKO, RYAN | 1074 | | JEVIC HOLDING CORP. | $ - |
| EXEL TRANSPORTATION SERVICES, INC. | 131 | | JEVIC HOLDING CORP. | $ 26,485.00 |
| EXXON MOBIL CHEMICAL | | 8009600 | JEVIC TRANSPORTATION, INC. | $ 399.30 |
| F & R LANDSCAPING INC | | 8009690 | JEVIC TRANSPORTATION, INC. | $ 367.50 |
| F&R LANDSCAPING INC | | 8009770 | JEVIC TRANSPORTATION, INC. | $ 726.25 |
| FAIRBANKS SCALES INC | 670 | | NO DEBTOR ASSERTED BY CREDITOR | $ 746.71 |
| FALCOM FARM | 535 | 8009780 | JEVIC TRANSPORTATION, INC. | $ 55,150.00 |
| FALLON CLINIC INC | | 8009800 | JEVIC TRANSPORTATION, INC. | $ 955.00 |
| FALZONE'S TOWING SERVICE INC | 523 | 8009820 | JEVIC TRANSPORTATION, INC. | $ 1,591.69 |
| FARKAS, JACK | 218 | | JEVIC TRANSPORTATION, INC. | $ 820.92 |
| FATHER NATURE LANDSCAPING | 977 | 8009840 | JEVIC TRANSPORTATION, INC. | $ 17,032.66 |
| FCC EQUIPMENT FINANCING INC. | | 8009860 | JEVIC TRANSPORTATION, INC. | $ 81,672.51 |
| FEDEX CUSTOMER INFORMATION SERVICES | 49 | 8009890 | JEVIC TRANSPORTATION, INC. | $ 8,168.54 |
| FELLOWES MANUFACTURING | | 8009940 | JEVIC TRANSPORTATION, INC. | $ 300.55 |
| FIDELITY & DEPOSIT CO. OF MARYLAND | 231 | | JEVIC HOLDING CORP. | $ 251,372.25 |
| FIDELITY INVESTMENTS | | 8009990 | JEVIC TRANSPORTATION, INC. | $ 2,050.00 |
| FIRST ACCESS | 497 | 8010020 | JEVIC TRANSPORTATION, INC. | $ 4,275.26 |
| FIRST ADVANTAGE TAX CONSULTING SVCS. | 63 | 8010030 | JEVIC TRANSPORTATION, INC. | $ 13,956.20 |
| FIRST FLEET INC | 639 | | NO DEBTOR ASSERTED BY CREDITOR | $ 675.00 |
| FIRST INDUSTRIAL INVEST. INC. | 916 | 8010050 | JEVIC TRANSPORTATION, INC. | $ 3,244,203.84 |
| FIRST TRUCKING INC | 615 | 8010090 | JEVIC TRANSPORTATION, INC. | $ 9,920.00 |
| FISHER RUSHMER WERRENRATH DICKSON, ET AL | 617 | 8010100 | JEVIC TRANSPORTATION, INC. | $ 4,278.21 |
| FLEET SERVICES | 883 | 8010140 | JEVIC TRANSPORTATION, INC. | $ 1,420.42 |
| FLEETNET AMERICA INC | 72 | 8010150 | JEVIC TRANSPORTATION, INC. | $ 34,755.37 |
| FLEETPRIDE | | 8010160 | JEVIC TRANSPORTATION, INC. | $ 1,364.70 |
| FLEETSOURCE | 84 | 8010170 | JEVIC TRANSPORTATION, INC. | $ 3,809.68 |
| FLEETWASH | 545 | 8010180 | JEVIC TRANSPORTATION, INC. | $ 68,432.37 |
| FLEXIBLE MATERIALS INC | 509 | 8010190 | JEVIC TRANSPORTATION, INC. | $ 174.80 |
| FOCUS COMMUNICATIONS NJ | | 8010260 | JEVIC TRANSPORTATION, INC. | $ 503.00 |
| FORBO ADHESIVES | | 8010330 | JEVIC TRANSPORTATION, INC. | $ 174.16 |
| FORTRANS INC | 1006 | 8010410 | JEVIC TRANSPORTATION, INC. | $ 750.00 |
| FOSTER RADIATOR INC. | | 8010420 | JEVIC TRANSPORTATION, INC. | $ 675.00 |
| FRANK N. ABATE, INC. | 558 | 8010460 | JEVIC TRANSPORTATION, INC. | $ 555.75 |
| FRANKLIN CHEMICAL & EQUIPMENT | | 8010480 | JEVIC TRANSPORTATION, INC. | $ 859.90 |
| FRANKLIN INTERNATIONAL | | 8010490 | JEVIC TRANSPORTATION, INC. | $ 2,220.66 |
| FRANKLYN J SCOLA | | 8010510 | JEVIC TRANSPORTATION, INC. | $ 180.00 |
| FRED'S TRAILER PARTS CENTER, LLC | 449 | 8010530 | JEVIC TRANSPORTATION, INC. | $ 8,594.71 |
| FREIGHTLINER LLC | | 8010560 | JEVIC TRANSPORTATION, INC. | $ 20,832.67 |
| FREIGHTQUOTE.COM | | 8010590 | JEVIC TRANSPORTATION, INC. | $ 1,401.59 |
| G & W EQUIPMENT INC | 566 | 8010700 | JEVIC TRANSPORTATION, INC. | $ 1,906.77 |
| G M H TRANS LLC | 675 | 8010760 | JEVIC TRANSPORTATION, INC. | $ 1,050.00 |

Page 6 of 16

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| GATEWAY INDUSTRIAL POWER INC | 589 | 8010840 | JEVIC TRANSPORTATION, INC. | $ 13,845.37 |
| GAW ASSOCIATES | | 8010850 | JEVIC TRANSPORTATION, INC. | $ 1,007.29 |
| GB COLLECTS | 517 | 8010860 | JEVIC TRANSPORTATION, INC. | $ 2,341.48 |
| GE CAPITAL CORPORATION | 184 | 8010880, 8010890 | JEVIC TRANSPORTATION, INC. | $ 1,398.52 |
| GE CAPITAL CORPORATION | 183 | | JEVIC TRANSPORTATION, INC. | $ 834.68 |
| GE CAPITAL CORPORATION | 177 | | JEVIC TRANSPORTATION, INC. | $ 707.92 |
| GE CAPITAL CORPORATION | 181 | | JEVIC TRANSPORTATION, INC. | $ 418.57 |
| GE CAPITAL CORPORATION | 180 | | JEVIC TRANSPORTATION, INC. | $ 326.31 |
| GE CAPITAL CORPORATION | 182 | | JEVIC TRANSPORTATION, INC. | $ 155.30 |
| GE CAPITAL CORPORATION | 178 | | JEVIC TRANSPORTATION, INC. | $ 1,581.04 |
| GEICO A/S/O DEREK TONEY | 434 | | JEVIC HOLDING CORP. | $ 1,860.25 |
| GENERAL ELECTRIC CAPITAL CORPORATION | 172 | 8010910 | JEVIC TRANSPORTATION, INC. | $ 250,000.00 |
| GENERAL SESSIONS COURT CLERK | | 8011010 | JEVIC TRANSPORTATION, INC. | $ 243.00 |
| GEORGIA DEPARTMENT OF REVENUE | 168 | | JEVIC TRANSPORTATION, INC. | $ 1,247.76 |
| GEORGIA POWER COMPANY | 443 | 8011060 | JEVIC TRANSPORTATION, INC. | $ 8,976.62 |
| GERALD GOLD & ASSOCIATES LTD | | 8011090 | JEVIC TRANSPORTATION, INC. | $ 130.00 |
| GERRARD TIRE CO INC | | 8011100 | JEVIC TRANSPORTATION, INC. | $ 539.05 |
| GILES & RANSOME INC | | 8011120 | JEVIC TRANSPORTATION, INC. | $ 17,699.06 |
| GLOBAL CROSSING TELECOMMUNICATION | 898 | | NO DEBTOR ASSERTED BY CREDITOR | $ 142,259.01 |
| GMG TRANSPORTATION CORPORATION | | 8011230 | JEVIC TRANSPORTATION, INC. | $ 352.10 |
| GOCH & SONS TOWING | 528 | 8011260 | JEVIC TRANSPORTATION, INC. | $ 1,974.00 |
| GOODYEAR TIRE & RUBBER COMPANY, THE | 446 | 8011290 | JEVIC TRANSPORTATION, INC. | $ 298,608.28 |
| GORILLA PLASTIC & RUBBER GROUP | | 8011330 | JEVIC TRANSPORTATION, INC. | $ 3,063.43 |
| GORMAN, DAVID | 772 | | NO DEBTOR ASSERTED BY CREDITOR | $ 265,000.00 |
| GRAINGER | | 8011340 | JEVIC TRANSPORTATION, INC. | $ 6,516.84 |
| GRAND OOROOO | | 8011350 | JEVIC TRANSPORTATION, INC. | $ 1,088.56 |
| GREAT DANE TRAILERS | 741 | 8011410 | NO DEBTOR ASSERTED BY CREDITOR | $ 1,487.69 |
| GREAT LAKES TRUCK & EQUIP INC | | 8011430 | JEVIC TRANSPORTATION, INC. | $ 13,534.51 |
| GREAT NORTHERN LUMBER | | 8011440 | JEVIC TRANSPORTATION, INC. | $ 933.16 |
| GREAT WEST CASUALTY COMPANY | 157 | | JEVIC HOLDING CORP. | $ 3,728.65 |
| GREG MELLER CUSTODIAN OF PETTY | | 8011470 | JEVIC TRANSPORTATION, INC. | $ 229.97 |
| GROENEVELD TRANSPORT EFFICIENCY, INC. | 2 | 8011510 | JEVIC TRANSPORTATION, INC. | $ 16,356.65 |
| GROUP HEALTH ASSOCIATES | | 8011520 | JEVIC TRANSPORTATION, INC. | $ 600.00 |
| GROVE SUPPLY INC | | 8011550 | JEVIC TRANSPORTATION, INC. | $ 92.35 |
| GT&S, INC. | | 8011560 | JEVIC TRANSPORTATION, INC. | $ 1,382.57 |
| GUARANTY GLASS & MIRROR | 819 | 8011580 | JEVIC TRANSPORTATION, INC. | $ 3,733.68 |
| GUNDERSEN CLINIC LTD | 884 | | JEVIC TRANSPORTATION, INC. | $ 60.70 |
| GURSKY, WILLIAM C, JR | 740 | | NO DEBTOR ASSERTED BY CREDITOR | $ 7,948.00 |
| H B FULLER | | 8011650 | JEVIC TRANSPORTATION, INC. | $ 7,328.27 |
| H M H T T C | 505 | 8011700 | JEVIC TRANSPORTATION, INC. | $ 46,135.39 |
| HAINES TOWING INC | 536 | 8011740 | JEVIC TRANSPORTATION, INC. | $ 1,028.40 |
| HANSON CARTAGE INC | | 8011790 | JEVIC TRANSPORTATION, INC. | $ 61.25 |
| HAR ADHESIVES TECHNOLOGIES | | 8011820 | JEVIC TRANSPORTATION, INC. | $ 309.72 |
| HARBOR GRAPHICS CORPORATION | | 8011830 | JEVIC TRANSPORTATION, INC. | $ 7,886.27 |
| HARRIS BATTERY COMPANY | | 8011900 | JEVIC TRANSPORTATION, INC. | $ 597.84 |
| HARRIS TEA COMPANY | | 8011920 | JEVIC TRANSPORTATION, INC. | $ 18.33 |
| HARRISON SPECIALTY | | 8011930 | JEVIC TRANSPORTATION, INC. | $ 450.30 |
| HARRISONBURG FIRE DEPARTMENT | 579 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,346.70 |
| HART TRANSPORTATION | 520 | 8011960 | JEVIC TRANSPORTATION, INC. | $ 3,200.00 |
| HARTFORD FIRE INSURANCE COMPANY | 236 | | JEVIC TRANSPORTATION, INC. | $ 11,119.91 |
| HARTFORD INSURANCE CO. OF MIDWEST | 697 | | NO DEBTOR ASSERTED BY CREDITOR | $ 5,948.35 |
| HENRY, WILLIAM P., JR. | 92 | | JEVIC HOLDING CORP. | $ 500.00 |
| HENYAN, DOUGLAS | 839 | | NO DEBTOR ASSERTED BY CREDITOR | $ 20,580.56 |
| HENYAN, JOANN | 840 | | NO DEBTOR ASSERTED BY CREDITOR | $ 13,375.00 |
| HERCULES INC | | 8012170 | JEVIC TRANSPORTATION, INC. | $ 235.00 |
| HERNON MANUFACTURING INC. | | 8012220 | JEVIC TRANSPORTATION, INC. | $ 958.32 |
| HESS CORPORATION | 1133 | | JEVIC TRANSPORTATION, INC. | $ 170,000.00 |
| HETTINGER, INC. | | 8012240 | JEVIC TRANSPORTATION, INC. | $ 80.20 |
| HEVEATEX CORPORATION | | 8012250 | JEVIC TRANSPORTATION, INC. | $ 137.68 |
| HIGGINS HEATING & COOLING CORP | 560 | 8012290 | JEVIC TRANSPORTATION, INC. | $ 1,040.40 |
| HIGHTEC | 631 | 8012300 | JEVIC TRANSPORTATION, INC. | $ 7,425.11 |
| HILLARD ENERGY, LTD. HILLARD OFFICE | 194 | | JEVIC HOLDING CORP. | $ 831.65 |
| HIRAM WAKEMAN INC | | 8012320 | JEVIC TRANSPORTATION, INC. | $ 100.00 |
| HODGE PRODUCTS INC | | 8012370 | JEVIC TRANSPORTATION, INC. | $ 1,832.87 |
| HONEYWELL | | 8012450 | JEVIC TRANSPORTATION, INC. | $ 7,594.92 |
| HONEYWELL INT'L | | 8012470 | JEVIC TRANSPORTATION, INC. | $ 118.10 |

| Exhibit C | | | | | |
|---|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Unsecured Amt** |
| | | | | | |
| HOOSIER TRADEWINDS | 52 | 8012510 | JEVIC TRANSPORTATION, INC. | $ | 1,375.00 |
| HOSPITAL OF THE UNIVERSITY OF | 174 | | JEVIC TRANSPORTATION, INC. | $ | 1,646,711.17 |
| HOUSTON TRANSPORTATION INC. | 64 | | JEVIC HOLDING CORP. | $ | 2,900.00 |
| HOWARD JOHNSON NORTH | 632 | 8012580 | JEVIC TRANSPORTATION, INC. | $ | 788.80 |
| HSM ELECTRONIC PROYECTION SVCS | | 8012590 | JEVIC TRANSPORTATION, INC. | $ | 807.60 |
| HUGH WATER SERVICES | | 8012600 | JEVIC TRANSPORTATION, INC. | $ | 4,739.92 |
| HUTCHINSON | | 8012650 | JEVIC TRANSPORTATION, INC. | $ | 2,142.89 |
| HWY. 49 TRUCK & TRAILER REPAIR | | 8012660 | JEVIC TRANSPORTATION, INC. | $ | 414.81 |
| HYDRO TEK SYSTEMS, INC. | 133 | 8012680 | JEVIC TRANSPORTATION, INC. | $ | 2,520.40 |
| HYDROCARBON RECOVERY SVC. INC. | | 8012690 | JEVIC TRANSPORTATION, INC. | $ | 1,348.33 |
| HYDROX LABORATORIES | | 8012710 | JEVIC TRANSPORTATION, INC. | $ | 24.36 |
| ICC TRUCKING, INC. | 42 | 8012900 | JEVIC TRANSPORTATION, INC. | $ | 775.00 |
| ICO POLYMERS NORTH AMERICA | | 8012910 | JEVIC TRANSPORTATION, INC. | $ | 1,134.00 |
| ILLINOIS DEPARTMENT OF REVENUE | 154 | | JEVIC HOLDING CORP. | $ | 3,051.73 |
| ILLINOIS DEPARTMENT OF REVENUE | | 8012940 | JEVIC TRANSPORTATION, INC. | $ | 265.36 |
| ILLUMINATING COMPANY - CIE, THE | 698 | | JEVIC HOLDING CORP. | $ | 6,364.65 |
| ILT TOYOTA - LIFT | | 8012960 | JEVIC TRANSPORTATION, INC. | $ | 1,471.85 |
| INCE MOTOR FREIGHT | | 8013000 | JEVIC TRANSPORTATION, INC. | $ | 45.00 |
| INDUSTRIAL PAPER SHREDDERS | | 8013020 | JEVIC TRANSPORTATION, INC. | $ | 522.51 |
| INDUSTRIAL WEIGHING SYSTEMS | 616 | 8013040 | JEVIC TRANSPORTATION, INC. | $ | 3,288.93 |
| INTEGRATED LABELING SYSTEMS IN | | 8013150 | JEVIC TRANSPORTATION, INC. | $ | 858.70 |
| INTELOGISTIK LLC | | 8013170 | JEVIC TRANSPORTATION, INC. | $ | 1,000.74 |
| INTERFACE AMERICAS | | 8013220 | JEVIC TRANSPORTATION, INC. | $ | 131.56 |
| INTERFACE FLOORING SYSTEM | | 8013230 | JEVIC TRANSPORTATION, INC. | $ | 19,463.35 |
| INTERFACE FLOORING SYSTEMS | | 8013240 | JEVIC TRANSPORTATION, INC. | $ | 667.78 |
| INTERSTATE BATTERIES | | 8013500 | JEVIC TRANSPORTATION, INC. | $ | 10,768.15 |
| INTERSTATE BATTERY SYS CHICAGO | | 8013510 | JEVIC TRANSPORTATION, INC. | $ | 9,799.63 |
| INTERSTATE BATTERY SYSTEM EAST | 945 | 8013520 | JEVIC TRANSPORTATION, INC. | $ | 2,413.25 |
| INTERSTATE BATTERY-SYS CHARLOT | | 8013530 | JEVIC TRANSPORTATION, INC. | $ | 2,111.03 |
| INTERSTATE POWER SYSTEMS, INC | | 8013570 | JEVIC TRANSPORTATION, INC. | $ | 747.75 |
| INTERWIRE PRODUCTS | | 8013580 | JEVIC TRANSPORTATION, INC. | $ | 388.06 |
| INX INTERNATIOANL INK | | 8013680 | JEVIC TRANSPORTATION, INC. | $ | 483.91 |
| IRVING OIL CORPORATION | 235 | 8013700 | JEVIC TRANSPORTATION, INC. | $ | 323,277.81 |
| ITW TACC | | 8013760 | JEVIC TRANSPORTATION, INC. | $ | 960.12 |
| IV TRANSPORTATION | 1010 | 8013770 | JEVIC TRANSPORTATION, INC. | $ | 1,650.00 |
| IWX MOTOR FREIGHT | | 8013790 | JEVIC TRANSPORTATION, INC. | $ | 27,661.96 |
| J A KING & CO | | 8013800 | JEVIC TRANSPORTATION, INC. | $ | 232.75 |
| J F E SHOJI TRADE AMERICA INC | 736 | 8013820 | JEVIC TRANSPORTATION, INC. | $ | 200.00 |
| J MICHAEL LEVERETT INC. | | 8013860 | JEVIC TRANSPORTATION, INC. | $ | 32.22 |
| J.E. HERRING MOTOR COMPANY | | 8013890 | JEVIC TRANSPORTATION, INC. | $ | 1,570.74 |
| J.M. APPLIANCE SERVICE | | 8013910 | JEVIC TRANSPORTATION, INC. | $ | 424.00 |
| J.S.S.J.R. ENTERPRISES, INC. | | 8013920 | JEVIC TRANSPORTATION, INC. | $ | 485.81 |
| JACOB PRESS' SONS, INC | | 8013940 | JEVIC TRANSPORTATION, INC. | $ | 499.85 |
| JAN PRO CLEANING SYSTEMS | 938 | 8014000 | JEVIC TRANSPORTATION, INC. | $ | 37,947.25 |
| JANI KING OF CINCINNATI INC | | 8014020 | JEVIC TRANSPORTATION, INC. | $ | 3,671.38 |
| JANI KING OF CLEVELAND | | 8014030 | JEVIC TRANSPORTATION, INC. | $ | 2,187.32 |
| JANI-KING OF ATLANTA | 618 | 8014040 | JEVIC TRANSPORTATION, INC. | $ | 2,076.94 |
| JAN-PRO OF WESTERN MASS | | 8014010 | JEVIC TRANSPORTATION, INC. | $ | 3,590.00 |
| JAY'S COFFEE SERVICE | | 8014070 | JEVIC TRANSPORTATION, INC. | $ | 315.60 |
| JBF EXPRESS, INC. | | 8014080 | JEVIC TRANSPORTATION, INC. | $ | 62.51 |
| JC GRAPHIC SOLUTIONS | 570 | | JEVIC TRANSPORTATION, INC. | $ | 927.69 |
| JC GRAPHIC SOLUTIONS | 39 | 8014100 | JEVIC TRANSPORTATION, INC. | $ | - |
| JEFF ROBEY TRUCK LINES, INC. | | 8014110 | JEVIC TRANSPORTATION, INC. | $ | 797.76 |
| JENA TRANSPORT INC | | 8014140 | JEVIC TRANSPORTATION, INC. | $ | 2,313.37 |
| JEM CONTAINER CORP. | 228 | | JEVIC HOLDING CORP. | $ | 5,246.96 |
| JERICH USA INC | | 8014170 | JEVIC TRANSPORTATION, INC. | $ | 14.30 |
| JERRY'S LOCK AND SAFE CO | | 8014190 | JEVIC TRANSPORTATION, INC. | $ | 85.06 |
| JET REPAIR SERVICES | 532 | 8014210 | JEVIC TRANSPORTATION, INC. | $ | 234.16 |
| JETRO CASH & CARRY | | 8014220 | JEVIC TRANSPORTATION, INC. | $ | 859.70 |
| JEVIC TRANSPORTATION INC | | 8014240 | JEVIC TRANSPORTATION, INC. | $ | - |
| JJ BAFARO INC | | 8014260 | JEVIC TRANSPORTATION, INC. | $ | 975.22 |
| JJ KELLER | | 8014270 | JEVIC TRANSPORTATION, INC. | $ | 3,615.51 |
| JOHN BRILLINGE TIRE SALES | | 8014340 | JEVIC TRANSPORTATION, INC. | $ | 587.20 |
| JOHN J MCINTYRE SONS INC | | 8014380 | JEVIC TRANSPORTATION, INC. | $ | 1,822.25 |
| JOHN TRAILER REPAIR INC. | | 8014430 | JEVIC TRANSPORTATION, INC. | $ | 664.00 |
| JOHNS PLAZA WEST INC | 489 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 733.68 |

Page 8 of 16

| | | | | | |
|---|---|---|---|---|---|
| Exhibit C | | | | | |
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Unsecured Amt** |
| JOHNSON & TOWERS | | 8014460 | JEVIC TRANSPORTATION, INC. | $ | 65.84 |
| JOHNSON DIVERSEY | 677 | 8014500 | JEVIC TRANSPORTATION, INC. | $ | 6,489.52 |
| JOHNSON SPECIALIZED TRANSPORTA | 573 | 8014540 | JEVIC TRANSPORTATION, INC. | $ | 403.36 |
| JONES AND HARPER | 790 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 1,556.13 |
| JOSEPH DONALDSON | | 8014590 | JEVIC TRANSPORTATION, INC. | $ | 559.70 |
| JP #1 | | 8014620 | JEVIC TRANSPORTATION, INC. | $ | 275.00 |
| K.C. FLEET SERVICE, INC. | 485 | 8014710 | JEVIC TRANSPORTATION, INC. | $ | 2,442.93 |
| KANE MCKENNA & ASSC INC | | 8014730 | JEVIC TRANSPORTATION, INC. | $ | 2,628.75 |
| KEN MICHOLS | | 8014790 | JEVIC TRANSPORTATION, INC. | $ | 1,720.00 |
| KENNA METAL | | 8014800 | JEVIC TRANSPORTATION, INC. | $ | 261.00 |
| KENT INDUSTRIAL TRUCKS | 940 | 8014840 | JEVIC TRANSPORTATION, INC. | $ | 10,670.33 |
| KEYSTONE ADJUSTABLE CAP | | 8014900 | JEVIC TRANSPORTATION, INC. | $ | 3,185.37 |
| KINDERSLEY TRANSPORT LTD | 655 | 8014950 | JEVIC TRANSPORTATION, INC. | $ | 23,355.69 |
| KINGS EXPRESS INC | 97 | 8014990 | JEVIC TRANSPORTATION, INC. | $ | 800.00 |
| KINGS KLEANING | 716 | 8015000 | JEVIC TRANSPORTATION, INC. | $ | 3,598.00 |
| KIRKLAND AND ELLIS LLP | | 8015030 | JEVIC TRANSPORTATION, INC. | $ | 60,668.06 |
| KLATT EQUIPMENT INC | 608 | 8015050 | JEVIC TRANSPORTATION, INC. | $ | 17,298.09 |
| KLEHR, HARRISON, HARVEY, | | 8015060 | JEVIC TRANSPORTATION, INC. | $ | 94.00 |
| KLEINSCHMIDT INC | 626 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 2,758.35 |
| KOCH LOGISTICS | | 8015140 | JEVIC TRANSPORTATION, INC. | $ | 501.38 |
| KRAMER LEVIN NAFTALIS FRANKEL | | 8015230 | JEVIC TRANSPORTATION, INC. | $ | 1,185.00 |
| KRISTIN JACKAMONIS | | 8015240 | JEVIC TRANSPORTATION, INC. | $ | 34.02 |
| KRONOS INC. | | 8015250 | JEVIC TRANSPORTATION, INC. | $ | 1,387.50 |
| KULLMAN FIRM, THE | 495 | 8025760 | JEVIC TRANSPORTATION, INC. | $ | 4,557.00 |
| KUTOL PRODUCTS | | 8015280 | JEVIC TRANSPORTATION, INC. | $ | 1,541.50 |
| L & D COMMUNICATIONS INC | 557 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 444.05 |
| L A FASTENERS INC | | 8015300 | JEVIC TRANSPORTATION, INC. | $ | 2,428.90 |
| LABELMASTER | | 8015340 | JEVIC TRANSPORTATION, INC. | $ | 19,519.71 |
| LAGROU DISTRIBUTION SYSTEM | | 8015350 | JEVIC TRANSPORTATION, INC. | $ | 48.00 |
| LAND AIR EXPRESS OF NEW ENGLAND | 193 | 8015490 | NO DEBTOR ASSERTED BY CREDITOR | $ | 12,920.59 |
| LARRY'S AUTO ELECTRIC SERVICE | | 8015600 | JEVIC TRANSPORTATION, INC. | $ | 468.28 |
| LARRY'S TRUCK REPAIR & TOWING | | 8015610 | JEVIC TRANSPORTATION, INC. | $ | 165.00 |
| LAS VEGAS/L.A. EXPRESS INC. | 984 | | JEVIC HOLDING CORP. | $ | 414,235.00 |
| LERRO CANDY COMPANY | | 8015780 | JEVIC TRANSPORTATION, INC. | $ | 99.50 |
| LESAINT LOGISTICS | | 8015790 | JEVIC TRANSPORTATION, INC. | $ | 200.00 |
| LEUKEMIA LYMPHOMA SOCIETY | | 8015820 | JEVIC TRANSPORTATION, INC. | $ | 423.00 |
| LEVY HOME ENTERTAINMENT | | 8015840 | JEVIC TRANSPORTATION, INC. | $ | 238.47 |
| LEWIS-GOETZ & COMPANY INC | | 8015850 | JEVIC TRANSPORTATION, INC. | $ | 220.00 |
| LEXISNEXIS, A DIV OF REED ELSEVIER INC. | 757 | | JEVIC HOLDING CORP. | $ | 633.44 |
| LIBERTY KENWORTH | | 8015870 | JEVIC TRANSPORTATION, INC. | $ | 11,715.40 |
| LIFT INC | | 8015890 | JEVIC TRANSPORTATION, INC. | $ | 2,469.68 |
| LIFT PARTS SUPPLY CO | | 8015900 | JEVIC TRANSPORTATION, INC. | $ | 3,274.41 |
| LIGHTING LOCKERS | | 8015910 | JEVIC TRANSPORTATION, INC. | $ | 580.98 |
| LINDENWOLD TAXI FINANCIAL SVCS | | 8015940 | JEVIC TRANSPORTATION, INC. | $ | 100.00 |
| LINDNER LOGISTICS LLC | | 8015960 | JEVIC TRANSPORTATION, INC. | $ | 1,500.00 |
| LISTA INTERNATIONAL | | 8016010 | JEVIC TRANSPORTATION, INC. | $ | 3,760.69 |
| LITTLE HARDWARE COMPANY INC. | | 8016040 | JEVIC TRANSPORTATION, INC. | $ | 65.62 |
| LOBO, RAYMOND GEORGE | 968 | | JEVIC HOLDING CORP. | $ | 7,877.00 |
| LOUTAS CLEANING | | 8016100 | JEVIC TRANSPORTATION, INC. | $ | 823.73 |
| LONE STAR LIFT | | 8016110 | JEVIC TRANSPORTATION, INC. | $ | 1,423.85 |
| LORCO PETROLEUM SERVICES | | 8016150 | JEVIC TRANSPORTATION, INC. | $ | 1,915.30 |
| LOUISIANA DEPARTMENT OF REVENUE | 464 | | JEVIC HOLDING CORP. | $ | 10.70 |
| LOWES COMPANIES | | 8016250 | JEVIC TRANSPORTATION, INC. | $ | 14,032.66 |
| LOWE'S COMPANIES | | 8016220 | JEVIC TRANSPORTATION, INC. | $ | 1,776.96 |
| LUBRIZOL ADVANCED MATERIALS | | 8016280 | JEVIC TRANSPORTATION, INC. | $ | 1,204.08 |
| LUBRIZOL CORP | | 8016300 | JEVIC TRANSPORTATION, INC. | $ | 423.77 |
| LUCAS TRUCK SALES, INC. | | 8016320 | JEVIC TRANSPORTATION, INC. | $ | 893.45 |
| LUCKY STAR DEER PARK LLC | | 8016330 | JEVIC TRANSPORTATION, INC. | $ | 13,334.00 |
| M & M GLASS SERVICE | | 8016380 | JEVIC TRANSPORTATION, INC. | $ | 430.00 |
| M W TRAILER PARTS | 769 | 8016510 | JEVIC TRANSPORTATION, INC. | $ | 11,156.94 |
| M&K QUALITY TRUCK SALES | | 8016520 | JEVIC TRANSPORTATION, INC. | $ | 1,328.96 |
| MAGNUM LTL, INC. | 88 | 8016560, 8016570 | JEVIC TRANSPORTATION, INC. | $ | 67,357.59 |
| MANHATTAN HOSIERY | | 8016630 | JEVIC TRANSPORTATION, INC. | $ | 77.60 |
| MANNINGTON MILLS | 759 | 8016650 | JEVIC TRANSPORTATION, INC. | $ | 897.60 |
| MANN'S WRECKER SERVICE | | 8016640 | JEVIC TRANSPORTATION, INC. | $ | 1,377.38 |
| MARKETING & SALES ESSENTIALS | | 8016750 | JEVIC TRANSPORTATION, INC. | $ | 99.00 |

Page 9 of 16

| Exhibit C | | | | | |
|---|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Unsecured Amt** |
| MARLITE INC. | | 8016790 | JEVIC TRANSPORTATION, INC. | $ | 204.42 |
| MARSHALL DISTRIBUTING | | 8016820 | JEVIC TRANSPORTATION, INC. | $ | 29.46 |
| MARTEC INTERNATIONAL | | 8016840 | JEVIC TRANSPORTATION, INC. | $ | 4,704.89 |
| MATCO NORCA INC | | 8016880 | JEVIC TRANSPORTATION, INC. | $ | 1,443.28 |
| MATCO TOOLS | | 8016890 | JEVIC TRANSPORTATION, INC. | $ | 1,000.00 |
| MATT-A-GRAPHICS INC. DBA MGI FINANCE | 91 | | JEVIC HOLDING CORP. | $ | 1,300.00 |
| MAX TRUCKING, INC. | 75 | 8016950 | JEVIC TRANSPORTATION, INC. | $ | 5,595.35 |
| MCCARTHY TIRE SERVICE CCO INC | 484 | 8016960 | JEVIC TRANSPORTATION, INC. | $ | 3,406.30 |
| MCCASLIN, IMBUS & MCCASLIN | 189 | 8016970 | JEVIC TRANSPORTATION, INC. | $ | 11,048.58 |
| MCGINNIS LUMBER CO., INC., THE | 421 | | JEVIC TRANSPORTATION, INC. | $ | 8,130.15 |
| MCLEMORE & EDINGTON, PLLC | | 8017010 | JEVIC TRANSPORTATION, INC. | $ | 319.00 |
| MCMASTER CARR | | 8017020 | JEVIC TRANSPORTATION, INC. | $ | 2,240.42 |
| MCNEELY MEDIA, LLC | 1005 | 8017030 | JEVIC TRANSPORTATION, INC. | $ | 1,200.00 |
| MCQUAIDE INC | 544 | 8017040 | JEVIC TRANSPORTATION, INC. | $ | 600.00 |
| MEMPHIS SCALE WORKS, INC. | 132 | 8017100 | JEVIC TRANSPORTATION, INC. | $ | 314.63 |
| MENARD | | 8017110 | JEVIC TRANSPORTATION, INC. | $ | 430.90 |
| MERCYWORKS OCCUPATIONAL MED. | | 8017120 | JEVIC TRANSPORTATION, INC. | $ | 42.00 |
| MESCA FREIGHT CO-OPERATIVE | | 8017140 | JEVIC TRANSPORTATION, INC. | $ | 1,329.78 |
| METROPOLITAN REPORTING BUREAU | 487 | 8017200 | JEVIC TRANSPORTATION, INC. | $ | 405.65 |
| METROPOLITAN TRUCKING, INC | 597 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 2,850.00 |
| MICHAEL GOPEL/HUNTER ENGINEERI | | 8017230 | JEVIC TRANSPORTATION, INC. | $ | 420.02 |
| MICHELIN NORTH AMERICA INC | 104 | 8017270 | JEVIC TRANSPORTATION, INC. | $ | 68,356.12 |
| MICHIGAN DEPARTMENT OF TREASURY | 187 | | JEVIC TRANSPORTATION, INC. | $ | 14,260.51 |
| MICROCAST TECHNOLOGIES | | 8017290 | JEVIC TRANSPORTATION, INC. | $ | 16.57 |
| MICROFLEX CORP | | 8017320 | JEVIC TRANSPORTATION, INC. | $ | 4,777.43 |
| MIDLAND TRANSPORT LIMITED | 1132 | | JEVIC TRANSPORTATION, INC. | $ | 10,000.00 |
| MIDTOWN PETROLEUM | 750 | 8017360 | JEVIC TRANSPORTATION, INC. | $ | 179.53 |
| MIDWEST SYSTEMS | 519 | 8017400 | JEVIC TRANSPORTATION, INC. | $ | 79.54 |
| MILES MICHAEL DOTSON | | 8017450 | JEVIC TRANSPORTATION, INC. | $ | 2,650.00 |
| MILLIKEN & CO | | 8017460 | JEVIC TRANSPORTATION, INC. | $ | 250.00 |
| MINUTEMAN TOWING & REPAIRS | | 8017480 | JEVIC TRANSPORTATION, INC. | $ | 1,565.85 |
| MISSISSIPPI STATE TAX COMMISSION | 244 | | JEVIC TRANSPORTATION, INC. | $ | 18.75 |
| MITSUI SUMITOMO INSURANCE CO., LTD. | 149 | | JEVIC HOLDING CORP. | $ | 17,153.52 |
| MITSUI SUMITOMO INSURANCE CO., LTD. | 185 | | JEVIC HOLDING CORP. | $ | 946.51 |
| MLG INTERMODAL | 61 | | JEVIC HOLDING CORP. | $ | 1,200.00 |
| MMR LIFT TRUCK PARTS | | 8017560 | JEVIC TRANSPORTATION, INC. | $ | 401.85 |
| MOBILE AIR TRANSPORT, INC. | 499 | 8017580 | JEVIC TRANSPORTATION, INC. | $ | 1,584.04 |
| MORGAN, LEWIS, BOCKIUS LLP | 43 | 8017680 | JEVIC TRANSPORTATION, INC. | $ | 155,050.03 |
| MORGAN,BORNSTEIN & MORGAN | | 8017690 | JEVIC TRANSPORTATION, INC. | $ | 231.00 |
| MTI INSPECTION SERVICES, INC. | 87 | | JEVIC HOLDING CORP. | $ | 2,824.26 |
| MULTI COLOR SPECIALTIES INC. | | 8017770 | JEVIC TRANSPORTATION, INC. | $ | 768.96 |
| MW TRANSPORT SERVICES INC | | 8017800 | JEVIC TRANSPORTATION, INC. | $ | 41,597.50 |
| N E O R S D | | 8017840 | JEVIC TRANSPORTATION, INC. | $ | 271.65 |
| NACCO OF ILLINOIS INC | | 8017890 | JEVIC TRANSPORTATION, INC. | $ | 2,510.13 |
| NALCO COMPANY | | 8017940 | JEVIC TRANSPORTATION, INC. | $ | 2,303.88 |
| NANCY MILLER | | 8017950 | JEVIC TRANSPORTATION, INC. | $ | 170.27 |
| NAPA AUTO PARTS | | 8017980 | JEVIC TRANSPORTATION, INC. | $ | 413.30 |
| NAPA TRANSPORTATION INC | 492 | 8017990 | JEVIC TRANSPORTATION, INC. | $ | 800.00 |
| NAPCO STEEL INC | | 8018000 | JEVIC TRANSPORTATION, INC. | $ | 1,543.45 |
| NASSAU PARADISE ISL. PROMO.BRD | | 8018020 | JEVIC TRANSPORTATION, INC. | $ | 73.14 |
| NASSAU SUFFOLK TRUCK | | 8018030 | JEVIC TRANSPORTATION, INC. | $ | 592.69 |
| NATIONAL GRID | 611 | 8018060 | JEVIC TRANSPORTATION, INC. | $ | 18,268.91 |
| NATIONAL GRID | 610 | | JEVIC TRANSPORTATION, INC. | $ | 225.74 |
| NATIONAL PARKINSON FOUNDATION | | 8018080 | JEVIC TRANSPORTATION, INC. | $ | 422.25 |
| NATIONAL WELDERS SUPPLY CP INC | | 8018130 | JEVIC TRANSPORTATION, INC. | $ | 467.91 |
| NC DEPT OF STATE TREASURER | 858 | | JEVIC TRANSPORTATION, INC. | $ | 2,367.00 |
| NEHRING ELECTRICAL WORKS | | 8018220 | JEVIC TRANSPORTATION, INC. | $ | 3,738.18 |
| NELSON, AMMIE J | 745 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 343,000.00 |
| NEW ASIA LOGISTICS INC | 576 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 6,230.00 |
| NEW ASIA LOGISTICS INC | 425 | | JEVIC TRANSPORTATION, INC. | $ | 6,180.00 |
| NEW ENGLAND INDUSTRIAL TRK,INC | | 8018270 | JEVIC TRANSPORTATION, INC. | $ | 1,787.75 |
| NEW ENGLAND TRUCK STOP INC | | 8018290 | JEVIC TRANSPORTATION, INC. | $ | 26,755.62 |
| NEW JERSEY AMERICAN WATER CO | | 8018300 | JEVIC TRANSPORTATION, INC. | $ | 1,075.66 |
| NEW JERSEY BUSINESS & INDUSTRY | | 8018310 | JEVIC TRANSPORTATION, INC. | $ | 3,600.00 |
| NEW JERSEY TECH SUPPLY | 843 | 8018330 | JEVIC TRANSPORTATION, INC. | $ | 5,010.86 |
| NEW PIG CORP | | 8018350 | JEVIC TRANSPORTATION, INC. | $ | 511.02 |

Page 10 of 16

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| NEW YORK THRUWAY STATE AUTHORITY | 685 | | NO DEBTOR ASSERTED BY CREDITOR | $ 544.65 |
| NEXTRAN TRUCK CENTER | | 8018400 | JEVIC TRANSPORTATION, INC. | $ 185.34 |
| NICHOLE S. ROBINSON | | 8018420 | JEVIC TRANSPORTATION, INC. | $ 16.13 |
| NICOR GAS | 115 | 8018460 | JEVIC HOLDING CORP. | $ 7,916.51 |
| NJ MOTOR TRUCK ASSOCIATION | | 8018480 | JEVIC TRANSPORTATION, INC. | $ 600.00 |
| NJ MOTOR VEHICLE COMMISSION | | 8018490 | JEVIC TRANSPORTATION, INC. | $ 250.00 |
| NKP PROMOTIONS | 838 | 8018520 | JEVIC TRANSPORTATION, INC. | $ 3,512.30 |
| NORMAN'S GLASS & AUTO SERVICES | | 8018570 | JEVIC TRANSPORTATION, INC. | $ 861.00 |
| NORTH CAROLINA DEPARTMENT OF REVENUE | 156 | | JEVIC TRANSPORTATION, INC. | $ 4,187.21 |
| NORTH COAST PROPERTY MAINTENANCE | 784 | | JEVIC HOLDING CORP. | $ 740.35 |
| NORTH COAST VENDING SERVICES | | 8018650 | JEVIC TRANSPORTATION, INC. | $ 435.00 |
| NORTH STAR TRAFFIC SERVICES INC | 629 | 8018660 | JEVIC TRANSPORTATION, INC. | $ 12,565.00 |
| NORTHEAST GREAT DANE | | 8018680 | JEVIC TRANSPORTATION, INC. | $ 8,311.32 |
| NORTHLAND INSURANCE CO. AS SUBROGEE OF | 454 | | NO DEBTOR ASSERTED BY CREDITOR | $ 66,179.99 |
| NORTHWAY TRANSPORT REFRIGERATION | 102 | 8018710 | JEVIC TRANSPORTATION, INC. | $ 730.71 |
| NOVACARE INC | | 8018730 | JEVIC TRANSPORTATION, INC. | $ 2,052.00 |
| NOVACARE REHABILITATION | 142 | | JEVIC HOLDING CORP. | $ 456.00 |
| NUFARM AMERICAS, INC. | | 8018770 | JEVIC TRANSPORTATION, INC. | $ 34.00 |
| NY STATE DEPT OF TAXATION & FINANCE | 471 | | JEVIC TRANSPORTATION, INC. | $5,192.96 |
| NY STATE DEPT OF TAXATION & FINANCE | 1145 | | JEVIC TRANSPORTATION, INC. | $ 28,443.05 |
| NYC DEPARTMENT OF FINANCE | 855 | | NO DEBTOR ASSERTED BY CREDITOR | $ 465.00 |
| O. C. TANNER RECOGNITION COMPANY | 41 | | JEVIC HOLDING CORP. | $ 28,963.70 |
| OAK HARBOR FREIGHT LINES | 100 | | JEVIC HOLDING CORP. | $ 36,921.07 |
| OC TANNER | | 8018840 | JEVIC TRANSPORTATION, INC. | $ 26,796.35 |
| OCCUPATIONAL HEALTH CENTERS | | 8018860 | JEVIC TRANSPORTATION, INC. | $ 1,070.91 |
| OCCUPATIONAL HEALTH CENTERS | | 8018850 | JEVIC TRANSPORTATION, INC. | $ 138.00 |
| OCCUPATIONAL HEALTH CTR SW PA | | 8018880 | JEVIC TRANSPORTATION, INC. | $ 138.00 |
| OCCUPATIONAL HEALTH CTR SW PA | | 8018870 | JEVIC TRANSPORTATION, INC. | $ 50.00 |
| OCCUPATIONAL HEALTH CTRS OF GA | | 8018890 | JEVIC TRANSPORTATION, INC. | $ 284.00 |
| OCEAN STATE OIL | 569 | 8018900 | JEVIC TRANSPORTATION, INC. | $ 460.25 |
| ODYSSEY LOGISTICS | | 8018920 | JEVIC TRANSPORTATION, INC. | $ 24,790.29 |
| OFFICE DEPOT | 1 | 8018940 | JEVIC TRANSPORTATION, INC. | $ 18,076.82 |
| OGDEN FORKLIFTS LLC | | 8018950 | JEVIC TRANSPORTATION, INC. | $ 1,421.67 |
| OHIO BUSINESS SYSTEM | | 8018960 | JEVIC TRANSPORTATION, INC. | $ 2,500.00 |
| OHIO CAT | | 8018970 | JEVIC TRANSPORTATION, INC. | $ 19,049.93 |
| OHIO DEPARTMENT OF TAXATION | 455 | | JEVIC TRANSPORTATION, INC. | $ 7,886.55 |
| OHIO TURNPIKE COMMISSION | 144 | | JEVIC HOLDING CORP. | $ 5,946.09 |
| OHIO VALLEY HEALTH SERVICES | | 8019040 | JEVIC TRANSPORTATION, INC. | $ 380.86 |
| OLD CASTLE GLASS - TELEFORD | | 8019050 | JEVIC TRANSPORTATION, INC. | $ 312.33 |
| OLEON AMERICAS | | 8019090 | JEVIC TRANSPORTATION, INC. | $ 2,617.96 |
| ON SITE FUEL SERVICE INC | 673 | 8019120 | JEVIC TRANSPORTATION, INC. | $ 48,385.76 |
| O'NEILL, JAMIE | 1054 | | JEVIC HOLDING CORP. | $ 1,028.83 |
| OSBOURNE TRUCKING COMPANY (QTC | | 8019160 | JEVIC TRANSPORTATION, INC. | $ 600.00 |
| OSTENDOR, TATE, BARNETT & WELLS, LLP | 465 | 8019170 | JEVIC TRANSPORTATION, INC. | $ 11,642.40 |
| OVERHEAD DOOR CO. OF ATLANTA | | 8019180 | JEVIC TRANSPORTATION, INC. | $ 1,334.49 |
| P & V CANDLE EQUIPMENT SALES | | 8019230 | JEVIC TRANSPORTATION, INC. | $ 1,280.00 |
| PACIFIC TELEMANAGEMENT SERVICE | | 8019330 | JEVIC TRANSPORTATION, INC. | $ 550.44 |
| PALLETIZED TRUCKING INC | 165 | | JEVIC HOLDING CORP. | $ 271.13 |
| PAONE WOODWORKING CORPORATION | | 8019430 | JEVIC TRANSPORTATION, INC. | $ 925.47 |
| PAPER DIRECT | | 8019440 | JEVIC TRANSPORTATION, INC. | $ 1,184.07 |
| PARAMOUNT FENCE COMPANY | | 8019480 | JEVIC TRANSPORTATION, INC. | $ 1,500.00 |
| PARDO'S TRUCK SERVICE PARTS WHSE, INC | 207 | 8019490 | JEVIC TRANSPORTATION, INC. | $ 32,043.96 |
| PARIS DESIGN | 20 | | JEVIC TRANSPORTATION, INC. | $ 2,500.00 |
| PATRICK J KELLY DRUMS INC | 504 | 8019590 | JEVIC TRANSPORTATION, INC. | $ 1,499.00 |
| PATTEN INDUSTRIES INC | | 8019610 | JEVIC TRANSPORTATION, INC. | $ 4,840.52 |
| PAULAUR CORPORATION | | 8019680 | JEVIC TRANSPORTATION, INC. | $ 285.00 |
| PAUL'S CUSTOM AWARDS & TROPHIES | 525 | 8019660 | JEVIC TRANSPORTATION, INC. | $ 2,233.55 |
| PB HEAT LLC | 150 | | JEVIC HOLDING CORP. | $ 1,224.35 |
| PC MALL | | 8019720 | JEVIC TRANSPORTATION, INC. | $ 54,991.76 |
| PEACH STATE TRUCK CENTERS | | 8019740 | JEVIC TRANSPORTATION, INC. | $ 1,350.47 |
| PENN DETROIT DIESEL ALLISON | 245 | 8004610, 8019790 | JEVIC TRANSPORTATION, INC. | $ 7,121.39 |
| PENNSYLVANIA DEPARTMENT OF REVENUE | 179 | 8019800 | JEVIC TRANSPORTATION, INC. | $ 349.00 |
| PENNSYLVANIA TURNPIKE COMM | | 8019810 | JEVIC TRANSPORTATION, INC. | $ 83,383.35 |
| PEP DIRECT | | 8019820 | JEVIC TRANSPORTATION, INC. | $ 464.79 |
| PERFORMANCE ONE TOWING &REPAIR | | 8019830 | JEVIC TRANSPORTATION, INC. | $ 99.11 |
| PERRIGO COMPANY | | 8019900 | JEVIC TRANSPORTATION, INC. | $ 219.50 |

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| PEST TECHNOLOGIES INC | 651 | 8019910 | JEVIC TRANSPORTATION, INC. | $ 398.90 |
| PETE COSTELLO | | 8019920 | JEVIC TRANSPORTATION, INC. | $ 5,251.42 |
| PETER DOLAN WATER SYSTEMS | | 8019930 | JEVIC TRANSPORTATION, INC. | $ 450.00 |
| PETRO STOPPING CENTERS | | 8019950 | JEVIC TRANSPORTATION, INC. | $ 8,058.37 |
| PHILADELPHIA OCCUPATIONAL HLTH | | 8020010 | JEVIC TRANSPORTATION, INC. | $ 8,860.00 |
| PHILLIPS, JEFFREY A | 719 | | JEVIC HOLDING CORP. | $ 145.00 |
| PHYSICIANS TREATMENT CENTER | | 8020030 | JEVIC TRANSPORTATION, INC. | $ 45.00 |
| PIONEER SUPPLY | | 8020110 | JEVIC TRANSPORTATION, INC. | $ 682.85 |
| PIRTEK SOUTH HOLLAND | 644 | 8020120 | JEVIC TRANSPORTATION, INC. | $ 113.23 |
| PITNEY BOWES CREDIT CORPORATION | 225 | | JEVIC TRANSPORTATION, INC. | $ 125,464.25 |
| PITNEY BOWES CREDIT CORPORATION | 51 | | JEVIC TRANSPORTATION, INC. | $ 51,952.58 |
| PITNEY BOWES CREDIT CORPORATION | 101 | | JEVIC TRANSPORTATION, INC. | $ 2,770.00 |
| PITNEY BOWES GLOBAL FINANCIAL SERVICES | 1147 | | JEVIC TRANSPORTATION, INC. | $ 130,190.39 |
| PJAX INC | | 8020150 | JEVIC TRANSPORTATION, INC. | $ 3,000.00 |
| PMTA/SMC | | 8020230 | JEVIC TRANSPORTATION, INC. | $ 1,190.00 |
| POLMAN TRANSFER INC | 571 | 8020240 | JEVIC TRANSPORTATION, INC. | $ 2,500.00 |
| POMA DISTRIBUTING COMPANY INC | 513 | 8020320 | JEVIC TRANSPORTATION, INC. | $ 30,100.61 |
| PORTLAND AIR FREIGHT INC. | | 8020330 | JEVIC TRANSPORTATION, INC. | $ 2,627.13 |
| PORTMAN EQUIPMENT COMPANY | 612 | 8020340 | JEVIC TRANSPORTATION, INC. | $ 13,416.97 |
| PRAIRIE PACKAGING | | 8020360 | JEVIC TRANSPORTATION, INC. | $ 620.92 |
| PRAIRIE SUPPLY CO. | | 8020380 | JEVIC TRANSPORTATION, INC. | $ 58.55 |
| PRAXAIR DISTRIBUTION INC | | 8020390 | JEVIC TRANSPORTATION, INC. | $ 278.35 |
| PREMIER CARE INDUSTRIES | | 8020440 | JEVIC TRANSPORTATION, INC. | $ 272.00 |
| PREMIER PHYSICIANS CENTER | 458 | | JEVIC HOLDING CORP. | $ 3,190.00 |
| PREMIUM ENVIRONMENTAL SVC.,INC | 229 | 8020460 | JEVIC HOLDING CORP. | $ 73,772.21 |
| PREPASS | | 8020480 | JEVIC TRANSPORTATION, INC. | $ 2,321.02 |
| PRICE TRUCK LINE INC | 731 | 8020500, 8020510 | JEVIC TRANSPORTATION, INC. | $ 15,294.22 |
| PRIME LUBE INC | | 8020560 | JEVIC TRANSPORTATION, INC. | $ 2,095.06 |
| PRIME, INC. | 469 | 8020540 | JEVIC TRANSPORTATION, INC. | $ 146,051.81 |
| PRINTPACK | | 8020590 | JEVIC TRANSPORTATION, INC. | $ 160.48 |
| PROCURA MANAGEMENT INC | | 8020660 | JEVIC TRANSPORTATION, INC. | $ 719.93 |
| PROGRESSIVE ADHESIVES, INC. | | 8020670 | JEVIC TRANSPORTATION, INC. | $ 1,763.88 |
| PROPERTY DAMAGE APPRAISERS | | 8020690 | JEVIC TRANSPORTATION, INC. | $ 134.00 |
| PROPERTY PROTECTION MONITORING | | 8020700 | JEVIC TRANSPORTATION, INC. | $ 282.00 |
| PROSPECT SERVICE CENTER & TOWING | 208 | | JEVIC HOLDING CORP. | $ 365.00 |
| PROTECTIVE COATING CO. | | 8020710 | JEVIC TRANSPORTATION, INC. | $ 875.78 |
| PSI WATER SYSTEMS INC | | 8020750 | JEVIC TRANSPORTATION, INC. | $ 300.57 |
| PSS WAREHOUSE & JEVIC TRANS. | | 8020760 | JEVIC TRANSPORTATION, INC. | $ 6,577.23 |
| PUBLIC SERVICE ELECTRIC AND GAS COMPANY | 136 | 8020730, 8020740 | JEVIC HOLDING CORP. | $ 69,280.97 |
| PUBLIC UTILITIES COMMISSION OF | | 8020780 | JEVIC TRANSPORTATION, INC. | $ 1,110.00 |
| PUCEL ENTERPRISES INC | 935 | | NO DEBTOR ASSERTED BY CREDITOR | $ 893.55 |
| PURCHASE POWER | | 8020790 | JEVIC TRANSPORTATION, INC. | $ 49,999.99 |
| PUREWORKS, INC. | | 8020800 | JEVIC TRANSPORTATION, INC. | $ 2,970.00 |
| QUAKER COLOR | | 8020860 | JEVIC TRANSPORTATION, INC. | $ 967.50 |
| QUALCOMM INC | | 8020870 | JEVIC TRANSPORTATION, INC. | $ 108,973.23 |
| QUALITY DOOR TECH | | 8020890 | JEVIC TRANSPORTATION, INC. | $ 928.00 |
| QUALITY TOWING EQUIPMENT MOVIN | 565 | 8020900 | JEVIC TRANSPORTATION, INC. | $ 1,675.38 |
| QWEST CORPORATION | 805 | 8020960 | JEVIC HOLDING CORP. | $ 168.71 |
| R J CASEY INDUSTRIAL PARK | | 8020980 | JEVIC TRANSPORTATION, INC. | $ 778.00 |
| R W HIRD TRUCKING | 712 | 8021040 | JEVIC TRANSPORTATION, INC. | $ 1,300.00 |
| R.J. REYNOLDS TOBACCO COMPANY | | 8021060 | JEVIC TRANSPORTATION, INC. | $ 176.81 |
| R.L.R. INVESTMENTS, LLC | 98 | 8021660 | JEVIC TRANSPORTATION, INC. | $ 407,781.68 |
| RANDALLDRIVER RECRUITING.COM | | 8021110 | JEVIC TRANSPORTATION, INC. | $ 500.00 |
| RANDOLPH PRODUCTS COMPANY | 135 | | JEVIC HOLDING CORP. | $ 2,110.94 |
| RAPID ROVER | | 8021140 | JEVIC TRANSPORTATION, INC. | $ 601.00 |
| RARITAN RIVER GARAGE CO | | 8021150 | JEVIC TRANSPORTATION, INC. | $ 3,131.35 |
| RAYNOR OVERHEAD DOOR | 735 | 8021210 | JEVIC TRANSPORTATION, INC. | $ 1,852.88 |
| RE DO IT CORPORATION | | 8021220 | JEVIC TRANSPORTATION, INC. | $ 375.00 |
| RECEIVER GENERAL FOR CANADA, THE | 895 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,054.40 |
| REED BUSINESS INFORMATION | | 8021260 | JEVIC TRANSPORTATION, INC. | $ 23,900.00 |
| REED'S PHARMACY | | 8021280 | JEVIC TRANSPORTATION, INC. | $ 75.06 |
| REGIONS INTERSTATE BILLING SERVICE, INC. | 8 | | Multiple Debtors | $ 8,858.90 |
| REGSCAN INC | | 8021310 | JEVIC TRANSPORTATION, INC. | $ 12,600.00 |
| RELIABLE TRAILER PARTS INC | 496 | 8021350 | JEVIC TRANSPORTATION, INC. | $ 3,472.70 |
| RELIANT ENERGY | | 8021360 | JEVIC TRANSPORTATION, INC. | $ 1.19 |
| RENDEL'S GMC COLLISION SPEC. | 1001 | 8021400, 8021410 | JEVIC TRANSPORTATION, INC. | $ 52,771.80 |

Exhibit C
Jevic Holding Corp., et al.
Allowed Unsecured Claims FINAL

| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt |
|---|---|---|---|---|
| REPUBLIC SERVICES OF NJ INC | | 8021430 | JEVIC TRANSPORTATION, INC. | $ 28,777.47 |
| RHS SOLUTIONS | | 8021550 | JEVIC TRANSPORTATION, INC. | $ 3,396.00 |
| RICHMOND RECYCLING CO | | 8021600 | JEVIC TRANSPORTATION, INC. | $ 2,000.00 |
| RICH'S TOWING & SERVICE INC | | 8021570 | JEVIC TRANSPORTATION, INC. | $ 1,093.13 |
| ROADRUNNER RUBBER CORPORATION | | 8021690 | JEVIC TRANSPORTATION, INC. | $ 540.82 |
| ROBARB ENTERPRISES INC. | 683 | | JEVIC TRANSPORTATION, INC. | $ 3,450.32 |
| ROBERT S THOMPSON SNAP ON TOOL | | 8021750 | JEVIC TRANSPORTATION, INC. | $ 850.00 |
| ROB'S AUTOMOTIVE & COLLISION C | | 8021710 | JEVIC TRANSPORTATION, INC. | $ 25,482.42 |
| ROCKY MOUNTAIN DATA SVCS., INC | | 8021840 | JEVIC TRANSPORTATION, INC. | $ 427.00 |
| ROHM & HAAS COMPANY | 219 | 8021920 | JEVIC HOLDING CORP. | $ 74,204.93 |
| RONNIE MAYNOR | | 8022050 | JEVIC TRANSPORTATION, INC. | $ 1,535.00 |
| RON'S TRUCK REPAIR SERVICE | | 8022020 | JEVIC TRANSPORTATION, INC. | $ 242.48 |
| ROSEMARY LAMB-MOUREY | | 8022130 | JEVIC TRANSPORTATION, INC. | $ 862.25 |
| ROSS EXPRESS | | 8022150 | JEVIC TRANSPORTATION, INC. | $ 214.94 |
| ROYALTY PRESS INC | | 8022260 | JEVIC TRANSPORTATION, INC. | $ 13,400.06 |
| RUESCH INTERNATIONAL | | 8022290 | JEVIC TRANSPORTATION, INC. | $ 160.00 |
| RUSH TRANSPORTATION & LOGISTICS, INC. | 117 | 8022330 | JEVIC TRANSPORTATION, INC. | $ 1,236.04 |
| RUSSELL, LATROI & TIFFANY | 462 | | JEVIC TRANSPORTATION, INC. | $ 11,854.49 |
| RUSSO, FRANK | 802 | | NO DEBTOR ASSERTED BY CREDITOR | $ - |
| RYCOLINE PRODUCTS | | 8022390 | JEVIC TRANSPORTATION, INC. | $ 802.63 |
| RYDER TRUCK RENTAL | 257 | 8022400 | JEVIC TRANSPORTATION, INC. | $ 5,131.79 |
| S & E PRODUCTIONS LLC | 821 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,982.15 |
| S&W TOWING | | 8022490 | JEVIC TRANSPORTATION, INC. | $ 419.00 |
| SAFETY AUTO REPAIR | | 8022530 | JEVIC TRANSPORTATION, INC. | $ 1,337.67 |
| SAFETY INSURANCE ASO RACHAEL W | | 8022540 | JEVIC TRANSPORTATION, INC. | $ 2,790.79 |
| SAFETY-KLEEN | 934 | 8022550 | NO DEBTOR ASSERTED BY CREDITOR | $ 2,553.78 |
| SAIA MOTOR FREIGHT | 152 | | JEVIC HOLDING CORP. | $ 108,006.86 |
| SAINT GOBAIN HIGH PERFORMANCE | | 8022620 | JEVIC TRANSPORTATION, INC. | $ 2,322.56 |
| SALOV NORTH AMERICA CORP | | 8022640 | JEVIC TRANSPORTATION, INC. | $ 1,743.03 |
| SANDMEYER STEEL COMPANY | | 8022680 | JEVIC TRANSPORTATION, INC. | $ 266.41 |
| SANDVIK MATERIALS TECHNOLOGY NAFTA | 424 | | JEVIC HOLDING CORP. | $ 5,091.53 |
| SARGENT TRUCKING | 533 | | NO DEBTOR ASSERTED BY CREDITOR | $ 3,000.00 |
| SAXON FLEET SERVICES INC | 666 | 8022770 | JEVIC TRANSPORTATION, INC. | $ 602.20 |
| SAYREVILLE GJM | | 8022780 | JEVIC TRANSPORTATION, INC. | $ 400.00 |
| SBC GLOBAL SERVICES | 419 | | Multiple Debtors | $ 15,064.47 |
| SCHNEIDER NATIONAL, INC. | 217 | 8022800 | JEVIC TRANSPORTATION, INC. | $ 66,949.19 |
| SCHREIBER FOODS INTL INC. | | 8022810 | JEVIC TRANSPORTATION, INC. | $ 24.50 |
| SCIENTIFIC PLASTICS INC | 889 | | JEVIC HOLDING CORP. | $ 2,226.17 |
| SCOTT'S COMMERCIAL TRUCK SERVI | | 8022830 | JEVIC TRANSPORTATION, INC. | $ 406.26 |
| SCOTTS COMPANY LLC, THE | 439 | 8022840 | JEVIC TRANSPORTATION, INC. | $ 47,242.97 |
| SCULLY SIGNAL COMPANY | 79 | 8022870 | JEVIC TRANSPORTATION, INC. | $ 5,668.82 |
| SEALED AIR CORP | | 8022910 | JEVIC TRANSPORTATION, INC. | $ 123.27 |
| SEAN CRAWFORD | | 8022960 | JEVIC TRANSPORTATION, INC. | $ 2,341.67 |
| SELECT MEDICAL CORPORATION | 23 | | JEVIC HOLDING CORP. | $ 28,722.21 |
| SEMERMED | | 8023020 | JEVIC TRANSPORTATION, INC. | $ 290.50 |
| SENTRY SECURITY SYSTEMS, LLC | | 8023050 | JEVIC TRANSPORTATION, INC. | $ 1,600.00 |
| SERVICE ELECTRIC INC. | | 8023060 | JEVIC TRANSPORTATION, INC. | $ 185.96 |
| SERVICE MAX INC | 486 | 8023070 | JEVIC TRANSPORTATION, INC. | $ 12,646.04 |
| SERVICE TIRE TRUCK CENTERS | | 8023080 | JEVIC TRANSPORTATION, INC. | $ 2,746.79 |
| SET RITE | | 8023100 | JEVIC TRANSPORTATION, INC. | $ 4,416.41 |
| SHAMICH, YAKOV | 887 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,382.00 |
| SHANNON CHEMICAL CORP | | 8023140 | JEVIC TRANSPORTATION, INC. | $ 250.00 |
| SHARK TRANSPORT SERVICES, INC. | | 8023150 | JEVIC TRANSPORTATION, INC. | $ 2,041.50 |
| SHEFFIELD PLASTICS | | 8023180 | JEVIC TRANSPORTATION, INC. | $ 2,682.12 |
| SHERRY L WAJID | | 8023220 | JEVIC TRANSPORTATION, INC. | $ 130.89 |
| SIEMENS WATER TECHNOLOGIES COR | | 8023250 | JEVIC TRANSPORTATION, INC. | $ 889.35 |
| SIGNPOST, INC. | | 8023300 | JEVIC TRANSPORTATION, INC. | $ 997.00 |
| SIMPLEXGRINNELL | | 8023330 | JEVIC TRANSPORTATION, INC. | $ 2,000.00 |
| SKIDMORE SALES & DISTRIBUTING | | 8023370 | JEVIC TRANSPORTATION, INC. | $ 90.63 |
| SKYTEL | | 8023390 | JEVIC TRANSPORTATION, INC. | $ 188.14 |
| SKYTEL CORPORATION | 103 | | JEVIC HOLDING CORP. | $ 348.28 |
| SLADE, GARY R | 828 | | NO DEBTOR ASSERTED BY CREDITOR | $ 5,170.74 |
| SM FINANCIAL SERVICES CORPORATION AS | 205 | | JEVIC HOLDING CORP. | $ 9,378.60 |
| SMITH & LAMOUNTAIN SERVICE COR | 512 | 8023440 | JEVIC TRANSPORTATION, INC. | $ 10,336.59 |
| SMITH LEVISON CULLEN & AYLWARD | 661 | | NO DEBTOR ASSERTED BY CREDITOR | $ 1,301.56 |
| SMITHEREEN COMPANY | | 8023460 | JEVIC TRANSPORTATION, INC. | $ 157.00 |

| | | | | | |
|---|---|---|---|---|---|
| Exhibit C | | | | | |
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| | | | | | |
| Claimant Name | Claim # | Schedule # | Debtor | Unsecured Amt | |
| | | | | | |
| SNYDER, HOWARD M | 823 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 52,500.00 |
| SOLVAY SOLEXIS INC | | 8023520 | JEVIC TRANSPORTATION, INC. | $ | 238.82 |
| SOMERSET LEASING CORP., VII | 574 | | JEVIC TRANSPORTATION, INC. | $ | 600,212.75 |
| SONITROL SECURITY SERVICES INC | | 8023540 | JEVIC TRANSPORTATION, INC. | $ | 69.00 |
| SONWIL DISTRIBUTION CENTER INC | | 8023550 | JEVIC TRANSPORTATION, INC. | $ | 2,528.59 |
| SOUTHEAST INDUSTRIAL EQUIPMENT | 493 | 8023600 | JEVIC TRANSPORTATION, INC. | $ | 3,209.59 |
| SOUTHERN CALIFORNIA FLEET SERV | | 8023610 | JEVIC TRANSPORTATION, INC. | $ | 14,809.85 |
| SOUTHERN INDUSTRIAL TIRE INC. | | 8023640 | JEVIC TRANSPORTATION, INC. | $ | 1,598.93 |
| SOUTHERN PUMP & TANK COMPANY LLC | 32 | 8023650 | JEVIC HOLDING CORP. | $ | 1,493.83 |
| SOUTHWEST GENERAL | | 8023670 | JEVIC TRANSPORTATION, INC. | $ | 483.64 |
| SOUTHWEST SPRING | | 8023680 | JEVIC TRANSPORTATION, INC. | $ | 401.86 |
| SOUTHWIRE COMPANY | | 8023710 | JEVIC TRANSPORTATION, INC. | $ | 684.55 |
| SOUTHWORTH MILTON INC | | 8023720 | JEVIC TRANSPORTATION, INC. | $ | 1,540.24 |
| SPARKS EXHIBITS | | 8023730 | JEVIC TRANSPORTATION, INC. | $ | 253.50 |
| SPEED COMPLETE TRUCK & TRAILER REPAIR | 99 | 8023820 | JEVIC TRANSPORTATION, INC. | $ | 9,573.90 |
| SPRING ROAD PARTNERS LLC (DBA - ACTFAST) | 44 | 3000610 | JEVIC HOLDING CORP. | $ | 1,329.20 |
| SPRINT NEXTEL | 148 | 8023860, 8023870 | JEVIC HOLDING CORP. | $ | 157,239.32 |
| STAINLESS CORP. | | 8023920 | JEVIC TRANSPORTATION, INC. | $ | 398.00 |
| STALLION EXPRESS INC | 567 | 8023940 | JEVIC TRANSPORTATION, INC. | $ | 1,450.00 |
| STALLION EXPRESS, INC. | 438 | | JEVIC TRANSPORTATION, INC. | $ | 14,884.40 |
| STANLEY KOPALA | | 8023990 | JEVIC TRANSPORTATION, INC. | $ | 38.52 |
| STAR SNACKS | | 8024020 | JEVIC TRANSPORTATION, INC. | $ | 68.26 |
| STATE OF CALIFORNIA | 482 | | JEVIC HOLDING CORP. | $ | 203.07 |
| STATE OF CALIFORNIA | 250 | | JEVIC HOLDING CORP. | $ | 340.34 |
| STATE OF FLORIDA DEPT. OF REVENUE | 62 | | JEVIC TRANSPORTATION, INC. | $ | 171.75 |
| STATE OF LOUISIANA | 82 | | JEVIC TRANSPORTATION, INC. | $ | 198.50 |
| STATE OF MAINE | 126 | | JEVIC HOLDING CORP. | $ | 33.00 |
| STATE OF NC TAX | | 8024220 | JEVIC TRANSPORTATION, INC. | $ | 674.92 |
| STATE OF NEW MEXICO | 955 | | JEVIC HOLDING CORP. | $ | 870.60 |
| STERLING COMMERCE, INC. | 59 | | JEVIC HOLDING CORP. | $ | 2,721.64 |
| STEWART BUSINESS SYSTEMS | 684 | 8024500 | JEVIC TRANSPORTATION, INC. | $ | 16,380.87 |
| STINGER PEST SOLUTIONS INC | 754 | 8024510 | JEVIC TRANSPORTATION, INC. | $ | 375.00 |
| STRATEGIC FLOORING SERVICES | | 8024620 | JEVIC TRANSPORTATION, INC. | $ | 484.54 |
| STURDY STORE DISPLAYS | | 8024640 | JEVIC TRANSPORTATION, INC. | $ | 213.71 |
| SUN CAP. PARTNERS MGMT IV, LLC | | 8024700 | JEVIC TRANSPORTATION, INC. | $ | 250,000.00 |
| SUN CHEMICAL | | 8024720 | JEVIC TRANSPORTATION, INC. | $ | 60.00 |
| SUN LOGISTICS MIA, INC. | 214 | 8024750 | JEVIC TRANSPORTATION, INC. | $ | 14,217.10 |
| SUN LOGISTICS NYC, INC. | 215 | 8024760 | JEVIC TRANSPORTATION, INC. | $ | 124,468.24 |
| SUNGARD AVAILABILITY SERVICES LP | 34 | | JEVIC HOLDING CORP. | $ | 26,748.00 |
| SUNGARD AVAILABILITY SERVICES LP | 202 | 8024820 | JEVIC HOLDING CORP. | $ | 266,067.00 |
| SUPERGLASS WINDSHIELD REPAIR | | 8024900 | JEVIC TRANSPORTATION, INC. | $ | 105.00 |
| SUPERIOR EXPRESS, INC | 642 | 8024910 | JEVIC TRANSPORTATION, INC. | $ | 12,633.79 |
| SUPERIOR INDUSTRIAL SUPPLY CO. | 169 | 8024920 | JEVIC HOLDING CORP. | $ | 267.06 |
| SUPERIOR POOL PRODUCTS | | 8024940 | JEVIC TRANSPORTATION, INC. | $ | 120.00 |
| SUPERIOR QUALITY FOODS | | 8024970 | JEVIC TRANSPORTATION, INC. | $ | 115.19 |
| SURFACE ENGINEERING | | 8025010 | JEVIC TRANSPORTATION, INC. | $ | 6,000.00 |
| SURGE FRICTION PRODUCTS CO | 491 | 8025020 | JEVIC TRANSPORTATION, INC. | $ | 1,519.29 |
| SWAIN'S TRUCK CARE | | 8025030 | JEVIC TRANSPORTATION, INC. | $ | 230.25 |
| SWEET OVATIONS | | 8025060 | JEVIC TRANSPORTATION, INC. | $ | 88.00 |
| SWIFT TRANSPORTATION CO., INC. | 1064 | 8025070, 8025080 | JEVIC HOLDING CORP. | $ | 15,750.00 |
| SWISHER HYGIENE FRANCHISEE | | 8025110 | JEVIC TRANSPORTATION, INC. | $ | 758.06 |
| SWR LLC | | 8025120 | JEVIC TRANSPORTATION, INC. | $ | 800.00 |
| SYN-TECH SYSTEMS, INC. | | 8025140 | JEVIC TRANSPORTATION, INC. | $ | 10,007.80 |
| SYSTEMS, INC | | 8025170 | JEVIC TRANSPORTATION, INC. | $ | 2,538.77 |
| SZCZECHOWICZ, STANISLAW | 734 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 10,000.00 |
| TJ'S MOWING & MORE | | 8025260 | JEVIC TRANSPORTATION, INC. | $ | 12,013.20 |
| TACC INT'L CORP | | 8025370 | JEVIC TRANSPORTATION, INC. | $ | 1,361.59 |
| TALX CORP./THE WORK NUMBER | | 8025380 | JEVIC TRANSPORTATION, INC. | $ | 26.32 |
| TALX CORPORATION | | 8025390 | JEVIC TRANSPORTATION, INC. | $ | 1,800.00 |
| TARGET MEDIA PARTNERS INTERACT | 724 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 1,990.00 |
| T-CHEK SYSTEMS INC | | 8025320 | JEVIC TRANSPORTATION, INC. | $ | 1,564,402.74 |
| T-CHEK SYSTEMS, INC. | 1131 | | JEVIC TRANSPORTATION, INC. | $ | 475,000.00 |
| TECHALLOY COMPANY | | 8025470 | JEVIC TRANSPORTATION, INC. | $ | 1,300.50 |
| TEKLA | | 8025500 | JEVIC TRANSPORTATION, INC. | $ | 345.50 |
| TELEPHONE OPERATING SYSTEMS IN | | 8025530 | JEVIC TRANSPORTATION, INC. | $ | 137.00 |
| TELKA INC | | 8025540 | JEVIC TRANSPORTATION, INC. | $ | 344.07 |

| | | | | | |
|---|---|---|---|---|---|
| Exhibit C | | | | | |
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Unsecured Amt** |
| | | | | | |
| TENNANT | | 8025550 | JEVIC TRANSPORTATION, INC. | $ | 247.66 |
| TERLECKEY | 738 | 8025580 | JEVIC TRANSPORTATION, INC. | $ | 700.00 |
| TERMINAL MANAGEMENT INC | | 8025590 | JEVIC TRANSPORTATION, INC. | $ | 57,061.16 |
| TERMINIX INTERNATIONAL | | 8025600 | JEVIC TRANSPORTATION, INC. | $ | 107.26 |
| THE CASHION COMPANY | | 8025730 | JEVIC TRANSPORTATION, INC. | $ | 910.00 |
| THE ILLUMINATING COMPANY | | 8025750 | JEVIC TRANSPORTATION, INC. | $ | 5,017.92 |
| THE MCGINNIS LUMBER COMPANY | | 8025770 | JEVIC TRANSPORTATION, INC. | $ | 8,130.15 |
| THE TESTOR CORPORATION | | 8025780 | JEVIC TRANSPORTATION, INC. | $ | 540.60 |
| THERMWELL PRODUCTS | | 8025820 | JEVIC TRANSPORTATION, INC. | $ | 269.80 |
| THU TRAN | | 8025890 | JEVIC TRANSPORTATION, INC. | $ | 541.55 |
| THYSSEN ELEVATOR COMPANY | | 8025900 | JEVIC TRANSPORTATION, INC. | $ | 582.72 |
| TIARCO CHEMICAL | | 8025910 | JEVIC TRANSPORTATION, INC. | $ | 85.00 |
| TIER DE INC | 501 | 8025990 | JEVIC TRANSPORTATION, INC. | $ | 80,852.21 |
| TILL PAINT COMPANY | | 8026000 | JEVIC TRANSPORTATION, INC. | $ | 893.32 |
| TIRE CENTERS LLC | | 8026040 | JEVIC TRANSPORTATION, INC. | $ | 807.52 |
| TIRE CENTERS LLC | | 8026030 | JEVIC TRANSPORTATION, INC. | $ | 664.51 |
| TMI LOGISTICS | | 8026050 | JEVIC TRANSPORTATION, INC. | $ | 480.43 |
| TMI PLASTICS INDUSTRIES INC | | 8026060 | JEVIC TRANSPORTATION, INC. | $ | 350.28 |
| T-MOBILE USA, INC. | 138 | 8025340 | JEVIC TRANSPORTATION, INC. | $ | 4,343.43 |
| TOMASULO, VINCE | 606 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 5,229.84 |
| TOOL STORE | | 8026110 | JEVIC TRANSPORTATION, INC. | $ | 3,697.61 |
| TOOL WORLD DISTRIBUTORS | 623 | 8026120 | JEVIC TRANSPORTATION, INC. | $ | 2,004.12 |
| TORNADO TRANSPORTATION | 113 | | JEVIC TRANSPORTATION, INC. | $ | 1,900.00 |
| TOTO USA | | 8026180 | JEVIC TRANSPORTATION, INC. | $ | 224.78 |
| TOWERS PERRIN | 125 | | JEVIC HOLDING CORP. | $ | 18,855.84 |
| TOWNE AIR FREIGHT INC | | 8026200 | JEVIC TRANSPORTATION, INC. | $ | 6,077.02 |
| TOYOTA FORKLIFTS OF ATLANTA | | 8026240 | JEVIC TRANSPORTATION, INC. | $ | 80.51 |
| TRACEY ROAD EQUIPMENT, INC. | 818 | 8026250 | JEVIC TRANSPORTATION, INC. | $ | 613.29 |
| TRAFFIC BUREAU | | 8026260 | JEVIC TRANSPORTATION, INC. | $ | 90.00 |
| TRAFFIC WORLD | | 8026270 | JEVIC TRANSPORTATION, INC. | $ | 5,000.00 |
| TRAILER TECH | | 8026280 | JEVIC TRANSPORTATION, INC. | $ | 1,028.15 |
| TRAILWAY TRANSPORTS INC | | 8026290 | JEVIC TRANSPORTATION, INC. | $ | 675.00 |
| TRAMAT | 721 | 8026300 | JEVIC TRANSPORTATION, INC. | $ | 2,350.00 |
| TRANSAXLE CORPORATION | 503 | 8026340 | JEVIC TRANSPORTATION, INC. | $ | 6,106.24 |
| TRANS-AXLE INC | 548 | 8026330 | JEVIC TRANSPORTATION, INC. | $ | 1,767.03 |
| TRANSCORE #3801 | 727 | 8026360 | JEVIC TRANSPORTATION, INC. | $ | 111.78 |
| TRANSEND FREIGHT | 261 | 8026370 | JEVIC HOLDING CORP. | $ | 10,285.00 |
| TRANSETTLEMENTS INC | | 8026380 | JEVIC TRANSPORTATION, INC. | $ | 457.71 |
| TRANSITE TECHNOLOGY, INC. | | 8026400 | JEVIC TRANSPORTATION, INC. | $ | 47.00 |
| TRANSPORT REFRIGERATION INC | 656 | 8026430 | JEVIC TRANSPORTATION, INC. | $ | 849.96 |
| TRANSPORT SPECIALIST INC | | 8026440 | JEVIC TRANSPORTATION, INC. | $ | 1,004.26 |
| TRANSPORTATION SUPPORT GRP,INC | | 8026460 | JEVIC TRANSPORTATION, INC. | $ | 5,956.86 |
| TRAVELERS | | 8026490 | JEVIC TRANSPORTATION, INC. | $ | 1,628.18 |
| TREASURER - STATE OF NEW JERSE | | 8026500 | JEVIC TRANSPORTATION, INC. | $ | 292.00 |
| TRUCK CENTERS INC | 932 | 8026590 | JEVIC TRANSPORTATION, INC. | $ | 425.00 |
| TRUCK CITY OF GARY | | 8026600 | JEVIC TRANSPORTATION, INC. | $ | 28,252.96 |
| TRUCKERS EDGE | 543 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 111.78 |
| TTI ENVIRONMENTAL INC | | 8026630 | JEVIC TRANSPORTATION, INC. | $ | 3,904.34 |
| TTS SERVICES INC | | 8026640 | JEVIC TRANSPORTATION, INC. | $ | 679.86 |
| TUMINO'S TOWING | 488 | 8026650 | JEVIC TRANSPORTATION, INC. | $ | 10,814.89 |
| TURNER TRANSPORTATION GROUP INC | 472 | 8026660 | JEVIC HOLDING CORP. | $ | 1,145.00 |
| TYLER DISTRIBUTION CENTERS INC | | 8026740 | JEVIC TRANSPORTATION, INC. | $ | 680.00 |
| U S SECURITY ASSOC | 494 | 8026820 | JEVIC TRANSPORTATION, INC. | $ | 85,523.32 |
| UNIFIRST CORPORATION | 960 | 8026840 | JEVIC TRANSPORTATION, INC. | $ | 55,482.97 |
| UNIFORM INTERMODAL INTERCHANGE | | 8026850 | JEVIC TRANSPORTATION, INC. | $ | 275.00 |
| UNION COUNTY SEATING & SUPPLY | | 8026890 | JEVIC TRANSPORTATION, INC. | $ | 1,008.48 |
| UNITED HEALTHCARE INSURANCE CO | | 8027020 | JEVIC TRANSPORTATION, INC. | $ | 27,978.02 |
| UNITED PARCEL SERVICE | 16 | 8027040 | JEVIC TRANSPORTATION, INC. | $ | - |
| UNITED PUMP AND CONTROLS INC | | 8027050 | JEVIC TRANSPORTATION, INC. | $ | 459.30 |
| UNITED REFRIGERATION INC | | 8027070 | JEVIC TRANSPORTATION, INC. | $ | 82.14 |
| UNITED WORLD LOGISTICS | | 8027100 | JEVIC TRANSPORTATION, INC. | $ | 386.55 |
| UNIVERSAL GLASS & STOREFRONT | | 8027180 | JEVIC TRANSPORTATION, INC. | $ | 925.00 |
| UNIVERSAL OIL INC | 720 | 8027200 | JEVIC TRANSPORTATION, INC. | $ | 1,286.88 |
| UNIVERSITY OF CONNECTICUT | | 8027230 | JEVIC TRANSPORTATION, INC. | $ | 600.00 |
| UNLIMITED CARRIER INC | 592 | 8027240 | JEVIC TRANSPORTATION, INC. | $ | 1,000.00 |
| US EVALUATIONS INC | | 8027270 | JEVIC TRANSPORTATION, INC. | $ | 600.00 |

| Exhibit C | | | | | |
|---|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | | |
| Allowed Unsecured Claims FINAL | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | | **Unsecured Amt** |
| US HEALTHWORKS MEDICAL GRP OH | 970 | 8027280 | JEVIC TRANSPORTATION, INC. | $ | 68.00 |
| US REGIONAL II OF NJ | | 8027320 | JEVIC TRANSPORTATION, INC. | $ | 10,758.00 |
| US SPECIAL DELIVERY, INC. | 19 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 52,053.21 |
| US TRAILER PARTS & SUPPLY INC | | 8027330 | JEVIC TRANSPORTATION, INC. | $ | 3,487.11 |
| USA TRUCK, INC | 199 | 8027360 | JEVIC TRANSPORTATION, INC. | $ | 44,015.00 |
| USIS COMMERCIAL SERVICES, INC | | 8027380 | JEVIC TRANSPORTATION, INC. | $ | 5,346.56 |
| VALSPAR CORP | | 8027430 | JEVIC TRANSPORTATION, INC. | $ | 232.54 |
| VALUATION RESEARCH CORPORATION | | 8027460 | JEVIC TRANSPORTATION, INC. | $ | 25,775.00 |
| VANGUARD TRUCK CTR OF ALTANTA | 653 | 8027470 | JEVIC TRANSPORTATION, INC. | $ | 2,765.93 |
| VEEPAK, INC. | | 8027510 | JEVIC TRANSPORTATION, INC. | $ | 1,750.00 |
| VEHICARE LLC | | 8027520 | JEVIC TRANSPORTATION, INC. | $ | 550.73 |
| VERIZON | | 8027570 | JEVIC TRANSPORTATION, INC. | $ | 6,008.05 |
| VERIZON | | 8027560 | JEVIC TRANSPORTATION, INC. | $ | 1,269.72 |
| VERIZON | | 8027580 | JEVIC TRANSPORTATION, INC. | $ | 32.21 |
| VERIZON WIRELESS | | 8027600 | JEVIC TRANSPORTATION, INC. | $ | 3,715.42 |
| VERIZON WIRELESS - LA | | 8027610 | JEVIC TRANSPORTATION, INC. | $ | 570.83 |
| VERIZON WIRELESS NORTHEAST | 259 | 8027590 | JEVIC HOLDING CORP. | $ | 14,287.80 |
| VETERANS RADIATOR CO INC | | 8027650 | JEVIC TRANSPORTATION, INC. | $ | 198.00 |
| VFS LEASING CO. | 197 | 8027740 | JEVIC TRANSPORTATION, INC. | $ | 252,270.44 |
| VFS LEASING CO. | 196 | | JEVIC TRANSPORTATION, INC. | $ | 237,519.05 |
| VFS LEASING CO. | 195 | | JEVIC TRANSPORTATION, INC. | $ | 213,170.07 |
| VFS LEASING CO. | 127 | | JEVIC TRANSPORTATION, INC. | $ | 71,859.81 |
| W R GRACE & CO | | 8027860 | JEVIC TRANSPORTATION, INC. | $ | 790.80 |
| W R GRACE & CO. | | 8027870 | JEVIC TRANSPORTATION, INC. | $ | 150.11 |
| W.B. HILL, INC. | | 8027900 | JEVIC TRANSPORTATION, INC. | $ | 355.88 |
| W.W. GRAINGER INC | 120 | | Multiple Debtors | $ | 8,790.07 |
| WABASH NATIONAL TRAILER CTRS | 643 | 8027910 | JEVIC TRANSPORTATION, INC. | $ | 517.13 |
| WACKER CHEMICAL CORPORATION | | 8027940 | JEVIC TRANSPORTATION, INC. | $ | 335.10 |
| WARREN C SAUERS CO INC | 531 | 8027970 | JEVIC TRANSPORTATION, INC. | $ | 750.00 |
| WATCHTOWER BIBLE & TRACT SOCIE | | 8027980 | JEVIC TRANSPORTATION, INC. | $ | 402.12 |
| WEBSTER FABRIC | | 8028030 | JEVIC TRANSPORTATION, INC. | $ | 679.79 |
| WEL COMPANIES INC | 650 | 8028060 | JEVIC TRANSPORTATION, INC. | $ | 1,150.00 |
| WELDSTAR COMPANY | | 8028070 | JEVIC TRANSPORTATION, INC. | $ | 1,673.38 |
| WELLER AUTO & TRUCK | 552 | 8028080 | JEVIC TRANSPORTATION, INC. | $ | 525.00 |
| WH FITZGERALD INC | 665 | 8028130 | JEVIC TRANSPORTATION, INC. | $ | 600.00 |
| WHITEFORD KENWORTH | | 8028180 | JEVIC TRANSPORTATION, INC. | $ | 7,386.87 |
| WHITELEY TRUCKING LLC | | 8028200 | JEVIC TRANSPORTATION, INC. | $ | 112.60 |
| WHITLEY TRUCKING LLC | | 8028220 | JEVIC TRANSPORTATION, INC. | $ | 112.60 |
| WIKOFF COLOR CORP | | 8028260 | JEVIC TRANSPORTATION, INC. | $ | 943.89 |
| WILLIAMS SCOTSMAN, INC. | 204 | 8028390 | JEVIC TRANSPORTATION, INC. | $ | 1,043.35 |
| WILLIAMS, W W | 870 | 8027890 | JEVIC TRANSPORTATION, INC. | $ | 5,222.02 |
| WILSON & TUCKER AUTO GLASS INC | 717 | 8028430 | JEVIC TRANSPORTATION, INC. | $ | 2,086.14 |
| WINDSTREAM CONCORD TELEPHONE, | | 8028480 | JEVIC TRANSPORTATION, INC. | $ | 4,007.43 |
| WINGFOOT COMMERCIAL TIRE | | 8028500 | JEVIC TRANSPORTATION, INC. | $ | 1,098.79 |
| WINNEBAGO INDUSTRIES, INC. | 206 | 8028520 | JEVIC TRANSPORTATION, INC. | $ | 1,636.48 |
| WISDOM ADHESIVES | | 8028530 | JEVIC TRANSPORTATION, INC. | $ | 947.51 |
| WORCESTER SCALE CO INC | | 8028570 | JEVIC TRANSPORTATION, INC. | $ | 2,175.00 |
| WORTHINGTON FIRE PROTECTION | | 8028590 | JEVIC TRANSPORTATION, INC. | $ | 3,048.82 |
| WRE OWNERSHIP SERVICES LLC | | 8028600 | JEVIC TRANSPORTATION, INC. | $ | 5,570.98 |
| WYRE WYND | | 8028630 | JEVIC TRANSPORTATION, INC. | $ | 1,131.34 |
| XPEDX | | 8028660 | JEVIC TRANSPORTATION, INC. | $ | 724.00 |
| XROADS SOLUTIONS GROUP LLC | 1128 | 8028720 | JEVIC TRANSPORTATION, INC. | $ | 178,020.00 |
| XTIVIA INC. | | 8028740 | JEVIC TRANSPORTATION, INC. | $ | 4,680.00 |
| YARD TRUCK SPECIALISTS | | 8028770 | JEVIC TRANSPORTATION, INC. | $ | 111.95 |
| YULES & YULES, LLC | 37 | | JEVIC TRANSPORTATION, INC. | $ | 10,655.11 |
| ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER, | 451 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 1,872.38 |
| ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER, | 452 | | NO DEBTOR ASSERTED BY CREDITOR | $ | 578.90 |
| ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER, | 1156 | 08-11006 | JEVIC HOLDING CORP. | $ | 1,215.24 |
| ZEE MEDICAL, INC. (MCKESSON CORP) | 65 | 8028790 | JEVIC HOLDING CORP. | $ | 4,958.18 |
| ZEP MANUFACTURING COMPANY | | 8028820 | JEVIC TRANSPORTATION, INC. | $ | 1,910.04 |
| ZURICH AMERICAN INSURANCE COMPANY, ET AL | 66 | | JEVIC TRANSPORTATION, INC. | $ | - |
| | | | | | |
| Total Allowed Claims | | | | $ | 21,296,252.91 |

Page 16 of 16

**JA-169**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,<br><br>Debtors.<br>_____<br><br>Casimir Czyzewski, *et al.*,<br><br>Appellants,<br><br>- v. -<br><br>Jevic Holding Corp., *et al.*,<br><br>Appellees. | Chapter 11<br><br>Bankr. No. 08-11006 (BLS)<br>(Jointly Administered)<br><br>BAP Appeal Nos. 12-68 and 12-69<br><br>Adv. Pro. No. 08-51903 (BLS)<br><br><br><br>Civil Action Nos. 13-104 (SLR) and<br>13-105 (SLR)<br>(Consolidated) |

**AFFIDAVIT OF EDWARD T. GAVIN IN SUPPORT OF THE JOINT
MOTION OF THE DEBTORS, CIT AND SUN CAPITAL, AND THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISMISS
<u>APPEAL OF SETTLEMENT ORDER AS EQUITABLY MOOT</u>**

I, Edward T. Gavin, having been duly sworn on oath this 20th day of November 2013,

state as follows:

1.      I am a Certified Turnaround Professional and a Managing Director of

Gavin/Solmonese LLC.  I am the liquidating trustee (the "<u>Trustee</u>") of the Jevic Holding Corp.

Liquidating Trust (the "<u>Creditors Trust</u>") established pursuant to the Jevic Holding Corp.

Liquidating Trust Agreement (the "<u>Trust Agreement</u>"), dated as of August 19, 2013, by and

between Jevic Holding Corp., Jevic Transportation, Inc. and Creek Road Properties, LLC

(collectively, the "<u>Debtors</u>"), and me, as Trustee, to implement the Creditors Trust for the benefit

of holders of allowed general unsecured claims and allowed unsecured priority tax claims

pursuant to that certain Settlement Agreement and Release dated June 22, 2012 (the "<u>Settlement</u>

<u>Agreement</u>"),  by and among the Debtors, the Official Committee of Unsecured Creditors, Sun

B-1

Capital Partners IV, LP and Sun Capital Partners Management IV, LLC, and The CIT Group/Business Credit, Inc., as Agent, which agreement was approved by the *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order; (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Settlement Order") entered by the United States Bankruptcy Court for the District of Delaware on December 4, 2012.

2.      I make this declaration in support of the *Joint Motion of the Debtors, CIT and Sun Capital, and the Official Committee of Unsecured Creditors to Dismiss Appeal of Settlement Order as Equitably Moot*.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and my review of the Debtors' and Creditors Trust's books and records, relevant documents and other information prepared or collected at my direction.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

3.      Pursuant to the Settlement Agreement and Settlement Order, on October 1, 2013, the Creditors Trust received $1,169,740.82 in cash from the Debtors.

4.      The Creditors Trust has issued final distributions to all beneficiaries of the Creditors Trust.  Specifically, the Creditors Trust has issued 1,039 checks in the aggregate amount of $834,175.74 to holders of allowed general unsecured claims and 29 checks in the aggregate amount of $285,565.07 to holders of allowed unsecured priority tax claims.

5.      Of the 1,039 checks, 39 checks in the aggregate amount of $5,406.75 were returned to the Creditors Trust as undeliverable with no available forwarding address.  Accordingly, such checks are void and the distributions are forfeited pursuant to the Trust

B-2

Agreement.  As of November 19, 2013, the remaining distributed checks have been deposited by the creditors and cleared the Creditors Trust's bank account(s), except for $90,422.58, which consists of (i) 231 checks to holders of allowed general unsecured claims in the aggregate amount of $89,273.09 and (ii) one check to a holder of an allowed unsecured priority tax claim in the amount of $1,149.49. Checks continue to be presented on a daily basis and, therefore, these dollar amounts and number of checks outstanding decrease on a daily basis.

[Remainder of Page Intentionally Left Blank]

B-3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: November 20, 2013

Edward T. Gavin

STATE OF DELAWARE

COUNTY of NEW CASTLE, to-wit:

Subscribed and sworn before me by **EDWARD T. GAVIN**, liquidating trustee of the

Jevic Holding Corp. Liquidating Trust, this 20th day of November 2013.

By: _____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Judy L. Sacher, Notary Public
Norberth Boro, Montgomery County
My commission expires August 14, 2016

B-4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JEVIC HOLDING CORP., *et al.*, | Bankr. No. 08-11006 (BLS) |
| Debtors. | (Jointly Administered) |
| _____ | BAP Appeal Nos. 12-68 and 12-69 |
| Casimir Czyzewski, *et al.*, | Adv. Pro. No. 08-51903 (BLS) |
| Appellants, | |
| - v. - | |
| Jevic Holding Corp., *et al.*, | Civil Action Nos. 13-104 (SLR) and |
| Appellees. | 13-105 (SLR) |
| | (Consolidated) |

---

**APPENDIX A TO JOINT BRIEF IN SUPPORT OF JOINT MOTION
OF THE DEBTORS, CIT, SUN CAPITAL, AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS TO DISMISS APPEAL OF SETTLEMENT
ORDER AS EQUITABLY MOOT**

Dated: November 21, 2013

Robert J. Feinstein
Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bgrohsgal@pszjlaw.com
      rfeinstein@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

Domenic E. Pacitti (DE Bar No. 3989)
Linda Richenderfer (DE Bar No. 4138)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email: dpacitti@klehr.com
      lrichenderfer@klehr.com

*Counsel to the Debtors*

6814211

**JA-174**

Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone:    (302) 658-9200
Facsimile:    (302) 658-3989
Email: rdehney@mnat.com
        cmiller@mnat.com

-and-

James A. Stempel
James P. Gillespie, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone:    (312) 862-2440
Facsimile:    (312) 862-2000
Email: jstempel@kirkland.com
        james.gillespie@kirkland.com

*Counsel To Sun Capital Partners IV, LP, Sun
Capital Partners Management IV, LLC, And
Sun Capital Partners, Inc.*

Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:    (302) 888-6800
Facsimile:    (302) 571-1750
Email: smiller@morrisjames.com
        emonzo@morrisjames.com

-and-

Benjamin C. Ackerly
Richard P. Norton
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email: backerly@hunton.com
        rnorton@hunton.com

*Counsel To The CIT Group/Business Credit,
Inc., As Agent For The Lender Group*

2

# LIST OF ITEMS[1] FOR JUDICIAL NOTICE

1. The *Statement of Issues and Designation of Record on Appeal of Casimir Czyzewski, Melvin L. Myers, Jeffrey Oehlers, Arthur E. Perigard, and Daniel C. Richards, on Behalf of Themselves and All Others Similarly Situated* filed by the Appellants in the Bankruptcy Case on January 2, 2013 (D.I. 1547), and entered on the docket on January 17, 2013 in District Court Case Nos. 13-00104 and 13-00105 [Dist. Ct. D.I. 2], which have been consolidated under District Court Case No. 13-00104 (together, the "District Court Case").

2. The *Joint Counter-Designation of Items to Be Included in the Record on Appeal by the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors* filed by the Appellees in the Bankruptcy Case on January 16, 2013 (D.I. 1559), and entered on the docket on January 17, 2013 in the District Court Case [Dist. Ct. D.I. 3].

3. The *Stipulation of Voluntary Dismissal of Adversary Proceeding with Prejudice* [AP D.I. 88] filed on August 29, 2013, in Adversary Proceeding No. 08-51903 and attached hereto at Tab 1.[2]

4. The *Certification of Counsel Regarding Satisfaction of Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1741] filed on October 11, 2013, in Bankruptcy Case No. 08-11006 (the "Bankruptcy Case") and attached hereto at Tab 2.

5. The fact that the WARN Plaintiffs never filed a motion seeking to stay implementation of the Settlement Order in the United States District Court for the District of Delaware.

6. The transcript of the hearing held on February 20, 2013, before the United States Bankruptcy Court for the District of Delaware (D.I. 1743) and attached hereto at Tab 3.

7. The *Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1346], and all related exhibits thereto, filed on June 27, 2012, in the Bankruptcy Case.

8. *Exhibit E Relating to Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement*

---

[1] For the avoidance of doubt, each item referenced on Appendix A shall include any exhibits or attachments thereto.

[2] The Appellees have included in the tabbed exhibits to this Appendix A only the items that were not previously designated in the record.

6814211

*and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1353] filed on June 28, 2012, in the Bankruptcy Case.

9. The *Transcript Regarding Hearing Held 11/13/2012 Re: 9019 Motion/Motion to Dismiss* [D.I. 1514] filed on November 27, 2012, in the Bankruptcy Case.

10. The *Transcript Regarding Hearing Held 11/28/2012 Re: Ruling on the Motion to Approve Settlement* [D.I. 1519] filed on December 4, 2012, in the Bankruptcy Case.

11. The *Order Granting Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1520] filed on December 4, 2012, in the Bankruptcy Case.

12. The *Notice of Appeal of Order Granting Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1539] filed on December 18, 2012, in the Bankruptcy Case.

13. The *Motion for Stay Pending Appeal* [D.I. 1545] filed on January 2, 2013, in the Bankruptcy Case and attached hereto at Tab 4.

14. The *Order Denying Motion of Casimir Czyzewski, et al., on Behalf of Themselves and All Others Similarly Situated for a Stay Pending Appeal* [D.I. 1567] filed on January 23, 2013, in the Bankruptcy Case and attached hereto at Tab 5.

15. The *Transcript Regarding Hearing Held 1/18/2013 Re: Motion to Stay Pending Appeal* [D.I. 1599] filed on February 28, 2013, in the Bankruptcy Case and attached hereto at Tab 6.

16. The *Recommendation that Bankruptcy Appeal be Withdrawn from Mandatory Mediation* [13-105 (SLR), Dist. Ct. D.I. 7] entered on January 31, 2013, in the District Court Case.

17. The *Order Withdrawing the Bankruptcy Appeal from Mediation* [13-105 (SLR), Dist. Ct. D.I. 8] entered on February 5, 2013, in the District Court Case.

18. The *Appellees' Joint Brief* [13-104 (SLR), Dist. Ct. D.I. 11] filed on January 31, 2013, in the District Court Case.

[Signature Page to Follow]

6814211

2

Dated: November 21, 2013

/s/ Bruce Grohsgal

Robert J. Feinstein
Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email: bgrohsgal@pszjlaw.com
Email: rfeinstein@pszjlaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors*


/s/ Curtis S. Miller

Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone:      (302) 658-9200
Facsimile:      (302) 658-3989
Email: rdehney@mnat.com
          cmiller@mnat.com


-and-

James A. Stempel
James P. Gillespie, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone:      (312) 862-2440
Facsimile:      (312) 862-2000
Email: jstempel@kirkland.com
          james.gillespie@kirkland.com

*Counsel To Sun Capital Partners IV, LP, Sun*
*Capital Partners Management IV, LLC, And*
*Sun Capital Partners, Inc.*

/s/ Linda Richenderfer

Domenic E. Pacitti (DE Bar No. 3989)
Linda Richenderfer (DE Bar No. 4138)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193
Email: dpacitti@klehr.com
          lrichenderfer@klehr.com

*Counsel to the Debtors*


/s/ Stephen M. Miller

Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:      (302) 888-6800
Facsimile:      (302) 571-1750
Email: smiller@morrisjames.com
          emonzo@morrisjames.com


-and-

Benjamin C. Ackerly
Richard P. Norton
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:      (804) 788-8200
Facsimile:      (804) 788-8218
Email: backerly@hunton.com
          rnorton@hunton.com

*Counsel To The CIT Group/Business Credit,*
*Inc., As Agent For The Lender Group*

6814211

3

**JA-178**

Tab 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| JEVIC HOLDING CORP., et al., | Case No. 08-11006 (BLS) |
| | Jointly Administered |
| Debtors. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the bankruptcy estates of JEVIC HOLDING CORP., et al., | |
| Plaintiff, | |
| v. | Adv. Pro. No. 08-51903 (BLS) |
| THE CIT GROUP/BUSINESS CREDIT, INC., in its capacity as Agent, and SUN CAPITAL PARTNERS IV, LP, SUN CAPITAL PARTNERS MANAGEMENT IV, LLC, and SUN CAPITAL PARTNERS, INC., | |
| Defendants. | |

### STIPULATION OF VOLUNTARY DISMISSAL OF ADVERSARY
### PROCEEDING WITH PREJUDICE

IT IS HEREBY stipulated and agreed pursuant to the *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief*, entered on December 4, 2012, at D.I. #1520/AP D.I. #78 and Rule 41(a)(1) of the Federal Rules of Civil Procedure, which is incorporated by reference into Rule 7041 of the Federal Rules of Bankruptcy Procedure, by the above-captioned

6650316

Plaintiff and above-captioned Defendants, by and through their respective counsel, that the above-captioned adversary proceeding, in which answers have been filed, be dismissed with prejudice, without costs to either party as this matter has been settled, and this adversary proceeding is hereby closed.

Dated: August 29, 2013

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ *Bruce Grohsgal*
Bruce Grohsgal (Bar No. 3583)
Robert J. Feinstein (NY Bar No. RF-2836)
Beth E. Levine (NY Bar No. BL-6715)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: bgrohsgal@pszjlaw.com
E-mail: rfeinstein@pszjlaw.com
E-mail: blevine@pszjlaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

Dated: August 29, 2013

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ *Curtis S. Miller*
Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: rdehney@mnat.com
E-mail: cmiller@mnat.com

-and-

James A. Stempel, Esq.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2440
Facsimile: (312) 862-2000
E-mail: jstempel@kirkland.com

-and-

James P. Gillespie, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
E-mail: james.gillespie@kirkland.com

*Counsel for Sun Defendants*

6650316

3

Dated: August 29, 2013

**MORRIS JAMES LLP**

/s/ Stephen M. Miller
Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: smiller@morrisjames.com
E-mail: emonzo@morrisjames.com

-and-

Benjamin C. Ackerly, Esq.
Tara L. Elgie, Esq.
HUNTON & WILLIAMS LLP
Riverfront Plaza, Easter Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
E-mail: backerly@hunton.com
E-mail: telgie@hunton.com

Richard P. Norton, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, NY 10166-0005
Telephone: (212) 309-1000
E-mail: rnorton@hunton.com

*Attorneys for The CIT Group/Business
Credit, Inc., as Agent*

6650316

4

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JEVIC HOLDING CORP., et al., | ) | |
| | ) | Case No. 08-11006 (BLS) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, on behalf of the bankruptcy estates | ) | |
| of JEVIC HOLDING CORP., et al., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 08-51903 (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| CIT GROUP/BUSINESS CREDIT, INC., in its | ) | |
| capacity as Agent, and SUN CAPITAL PARTNERS | ) | |
| IV, LP, SUN CAPITAL PARTNERS | ) | |
| MANAGEMENT IV, LLC, and SUN CAPITAL | ) | |
| PARTNERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### AFFIDAVIT OF WILLIAM W. WELLER, PARALEGAL

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| | : SS: | |
| NEW CASTLE COUNTY | : | |

I, William W. Weller, certify that I am, and at all times during the service, have been an employee of Morris James LLP, not less than 18 years of age and not a party to the matter concerning which service was made. I certify further that on August 29, 2013, I caused service of the following:

### STIPULATION OF VOLUNTARY DISMISSAL OF ADVERSARY PROCEEDING WITH PREJUDICE

Service was completed upon the parties on the attached list as indicated thereon.

Date: August 29, 2013

_____
William W. Weller

SWORN TO AND SUBSCRIBED before me this 29th day of August, 2013.



NOTARY

My commission expires: 06/21/17

**VIA HAND DELIVERY**
Bruce Grohsgal, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
Facsimile: (302) 652-4400
[Counsel for the Plaintiff]

Robert J. Dehney, Esq.
Curtis S. Miller, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19801
Facsimile: (302) 425-4673
[Counsel for Sun Defendants]

**VIA FIRST CLASS MAIL**
Robert J. Feinstein, Esq.
Beth E. Levine, Esq.
Pachulski Stang Ziehl &
Jones LLP
780 Third Avenue, 36th Floor
New York, NY 10017
Facsimile: (212) 561-7777
[Counsel for the Plaintiff]

James P. Gillespie, P.C.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
Facsimile: (202) 879-5200
[Counsel for Sun Defendants]

James A. Stempel, Esq.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Facsimile: (312) 862-2000
[Counsel for Sun Defendants]

2

Tab 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | Case No. 08-11006 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, on behalf of the bankruptcy estates | ) | |
| of JEVIC HOLDING CORP., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | Adv. Pro. No. 08-51903 (BLS) |
| | ) | |
| The CIT GROUP/BUSINESS CREDIT, INC., in its | ) | |
| capacity as Agent, and SUN CAPITAL PARTNERS | ) | |
| IV, LP, SUN CAPITAL PARTNERS | ) | |
| MANAGEMENT IV, LLC, and SUN CAPITAL | ) | |
| PARTNERS, INC. | ) | |
| | ) | |
| Defendants. | ) | **Related to Docket No. 1520** |

**CERTIFICATION OF COUNSEL REGARDING SATISFACTION OF CONDITIONS IN
ORDER APPROVING JOINT MOTION OF THE DEBTORS, CIT, SUN CAPITAL AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11
U.S.C. § 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN
ORDER: (I) APPROVING SETTLEMENT AGREEMENT AND RELEASING CLAIMS;
(II) DISMISSING THE DEBTORS' CASES UPON IMPLEMENTATION
OF SETTLEMENT; AND (III) GRANTING RELATED RELIEF**

The undersigned hereby certifies that, on June 27, 2012, the above captioned debtors and

debtors-in-possession (collectively, the "Debtors"), The Official Committee of Unsecured Creditors

(the "Committee"), Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC and Sun

Capital Partners, Inc. (collectively, "Sun"); and The CIT Group/Business Credit, Inc. as agent

("CIT") for the lenders (the "Lender Group") under the loan facilities described in the complaint filed

in the above-captioned Adversary Proceeding (all hereinafter referred to as a "Party" or collectively,

the "Parties"), filed the Joint Motion of The Debtors, CIT, Sun Capital and the Official Committee of

Unsecured Creditors Pursuant to 11 U.S.C. § 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief [Docket No. 1346] (the "Joint Motion").

The undersigned further certifies that on December 4, 2012 the Court entered an order granting the Joint Motion [Docket No. 1520] (the "Settlement and Dismissal Order").

The undersigned further certifies all conditions to the Settlement and Dismissal Order have been satisfied, specifically: (a) that all quarterly fees of the U.S. Trustee have been paid in full; (b) that all Allowed Administrative Expense Claims[1] have been paid in full; (c) a schedule of all allowed 503(b)(9) Claims and allowed Admin Taxes that have been paid is attached hereto as Exhibit A; (d) a schedule of all Allowed Resolved Priority Claims is attached hereto as Exhibit B; (e) a schedule of all Allowed GUC Claims is attached hereto as Exhibit C; and (f) that all remaining funds in the estates, which are subject to Sun's lien, have been transferred to the Trust to make pro rata distributions to holders of Allowed Resolved Priority Claims and Allowed GUC Claims after dismissal of the Chapter 11 Cases, all as contemplated by the Settlement Agreement and the Settlement and Dismissal Order.

Dated: October 11, 2013  
Wilmington, Delaware

Respectfully Submitted,

KLEHR HARRISON HARVEYBRANZBURG LLP

By:   /s/ Michael W. Yurkewicz  
       Domenic E. Pacitti, Esq. (DE Bar No.3989)  
       Michael W. Yurkewicz, Esq. (DE Bar No. 4165)  
       919 Market Street, Suite 1000  
       Wilmington, DE 19801  
       Telephone: (302) 426-1189  
       Facsimile: (302) 426-9193

       *Counsel for the Debtors and Debtors-in-Possession*

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Joint Motion.

# Exhibit A

| Exhibit A | | | | |
| Jevic Holding Corp., et al. | | | | |
| Allowed 503(b)(9) Claims FINAL | | | | |
| | | | | |
| | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Admin Amt** |
| | | | | |
| **Allowed Claims:** | | | | |
| | | | | |
| GOODYEAR TIRE & RUBBER COMPANY, THE | 446 | 8011290 | JEVIC TRANSPORTATION, INC. | $ 41,115.33 |
| ACTION CALENDAR & SPECIALTY CO., INC. | 211 | 8021390 | JEVIC TRANSPORTATION, INC. | $ 6,818.30 |
| IRVING OIL CORPORATION | 234 | | JEVIC TRANSPORTATION, INC. | $ 126,803.09 |
| | | | | |
| Total Allowed Claims | | | | $ 174,736.72 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total 503(b)(9) Claims | | | | $ 174,736.72 |

Page 1 of 1

| Exhibit A | | | | | |
|-----------|---|---|---|---|---|
| Jevic Holding Corp., et al. | | | | | |
| Allowed Administrative Claims -FINAL | | | | | |
| | | | | | |
| | | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Admin Amt** | |
| | | | | | |
| **Allowed Claims:** | | | | | |
| | | | | | |
| NEW JERSEY DEPARTMENT OF LABOR AND | 853 | | JEVIC TRANSPORTATION, INC. | $ | 8,398.67 |
| STATE OF NEW JERSEY | 1137 | | JEVIC HOLDING CORP. | $ | 7,655.72 |
| DEPARTMENT OF THE TREASURY | 1141 | | JEVIC HOLDING CORP. | $ | 2,253.32 |
| INTERNAL REVENUE SERVICE | 1144 | | JEVIC HOLDING CORP. | $ | 120.36 |
| Ohio Department of Taxation | 1243 | | Jevic Transportation, Inc. | $ | 3,674.00 |
| | | | | | |
| Total Allowed Claims | | | | $ | 22,102.07 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total All Administrative Tax Claims | | | | $ | 22,102.07 |

Page 1 of 1

| Claimant Name | Claim # | Schedule # | Debtor | Admin Amt |
|---|---|---|---|---|
| Exhibit A | | | | |
| Jevic Holding Corp., et al. | | | | |
| Allowed Administrative Claims - Other FINAL | | | | |
| | | | | |
| **Claimant Name** | **Claim #** | **Schedule #** | **Debtor** | **Admin Amt** |
| | | | | |
| **Allowed Claims:** | | | | |
| | | | | |
| HARTFORD FIRE INSURANCE COMPANY | 237 | | JEVIC HOLDING CORP. | $ 8,562.61 |
| ILLUMINATING COMPANY, THE | 468 | | JEVIC TRANSPORTATION, INC. | $ 7,251.92 |
| PITNEY BOWES CREDIT CORPORATION | 1146 | | JEVIC TRANSPORTATION, INC. | $ 3,393.25 |
| WILLIAMS SCOTSMAN, INC. | 1225 | | JEVIC TRANSPORTATION, INC. | $ 804.23 |
| SUNGARD AVAILABILITY SERVICES LP | 34 | | JEVIC HOLDING CORP. | $ 36,856.00 |
| METROPOLITAN LIFE INSURANCE COMPANY | 1034 | 8017180 | JEVIC HOLDING CORP. | $ 14,705.74 |
| | | | | |
| Total Allowed Claims | | | | $ 71,573.75 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total All Administrative Other Claims | | | | $ 71,573.75 |

**Exhibit B**